Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Corinne F. Johnson (SBN 287385)
Jessica M. Levy (SBN 368289)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

*Attorneys for All Union and Non-Profit Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; NATIONAL FEDERATION OF FEDERAL EMPLOYEES, IAM, AFL-CIO; NATIONAL TREASURY EMPLOYEES UNION; COUNTY OF SANTA CLARA, CALIFORNIA; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; CITY OF BALTIMORE, MARYLAND; CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA; PRINCE GEORGE'S COUNTY, MARYLAND; ALLIANCE OF CROP, SOIL AND ENVIRONMENTAL SCIENCE SOCIETIES; AMERICAN GEOPHYSICAL UNION; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; NATURAL RESOURCES DEFENSE COUNCIL, INC.; AND WESTERN WATERSHEDS PROJECT,<br><br>Plaintiffs,<br><br>v. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture,

Defendants.

## INTRODUCTION

1. Defendants the United States Department of Agriculture ("USDA") and Secretary of Agriculture Brooke Rollins are engaging in an unprecedented reorganization of USDA, closing offices and relocating components across the country. USDA's Reorganization Plan forces thousands of experienced and knowledgeable USDA employees to choose between their families, communities, churches, and lives they have built, and their careers. USDA *knows and intends* these moves will cause significant attrition among existing USDA staff, depriving the agency of a wealth of knowledge, experience and the ability to perform its statutorily authorized and mandated functions.

2. Plaintiffs are a coalition of labor organizations, non-profit groups, and local governments that file this complaint to hold unlawful and stop the unlawful actions reflected in the USDA Reorganization Plan. Plaintiffs are the American Federation of Government Employees, AFL-CIO ("AFGE"); American Federation of State County and Municipal Employees, AFL-CIO ("AFSCME"); National Federation of Federal Employees, IAM, AFL-CIO ("NFFE"); National Treasury Employees Union ("NTEU"); the County of Santa Clara, California; Martin Luther King, Jr. County, Washington; the City of Baltimore, Maryland; the City and County of San Francisco, California, Prince George's County, Maryland; Alliance of Crop, Soil, and Environmental Science Societies; American Geophysical Union; Coalition to Protect America's National Parks; Natural Resources Defense Council; and Western Watersheds Project (collectively, "Plaintiffs").

3. USDA has commenced implementation of its Reorganization Plan in a piecemeal manner by USDA component over the spring and summer of 2026. The implementing actions that USDA is currently taking will restructure and downsize the agency across certain mission areas and component agencies. The important services provided by these components include programs that administer food and nutrition assistance to low-income women and children (the Food and Nutrition Administration, or "FNA," formerly known as the Food and Nutrition Service); protect and manage our national forests and other public lands (the United States Forest Service, or "USFS"); and conduct important agricultural, scientific, and economic research for the benefit of the nation (Research, Education, and Economics mission area). USDA's current implementation primarily

involves those three subcomponents, along with: the Foreign Agricultural Service, the Rural Development mission area, Farm Production and Conservation ("FPAC") mission area, and USDA's Office of the General Counsel and Office of the Assistant Secretary for Civil Rights. Across these components, thousands of USDA employees are being forced to relocate from the D.C. area, where their offices and facilities are currently based, to other parts of the country, or from one state to another.[1]

4. USDA first announced this Reorganization Plan in July 2025, but did not immediately implement the Plan. Instead, USDA sought congressional authorization through the appropriations process, which Congress rejected. But Congress went beyond rejecting the Administration's budget proposal that reflected the reorganized and downsized USDA, and expressly prohibited the reorganization of the agency without further congressional approval.

5. In particular, section 716 of the Fiscal Year 2026 Appropriations Act for USDA states that "[n]one of the funds" appropriated by the act or previously appropriated "shall be available for obligation or expenditure through a reprogramming, transfer of funds, or reimbursements" that "*eliminates a program, project, or activity*;" "*relocates an office or employees*;" or "*reorganizes offices, programs, or activities*;" amongst other things, "unless the Secretary of Agriculture … notifies in writing and receives approval from the Committees on Appropriations of both Houses of Congress at least 30 days in advance of the reprogramming." Pub. L. No. 119-37, §716(a), 139 Stat. 495, 544 (2025) (emphasis added).

6. Congress also enacted further prohibitions on the use of appropriated funds for specified reorganization action or other uses, without both written notification and prior approval of both appropriation committees. USDA must obtain further congressional approval before funds "may be used to close or consolidate the resources or locations of any existing Agricultural Research Service laboratories and facilities," *id*. §771; before funds may be used to "close Natural Resources Conservation Service or Rural Development mission area field offices or to permanently relocate any

[1] USDA documents often refer to the D.C. area as the "national capital region" or "NCR." *See* 40 U.S.C. §71(b) (defining NCR).

field-based employees of those agencies that would result in an office with two or fewer employees," §779; before funds may be used to permanently relocate Farm Service Agency county based employees resulting in an office with two or fewer employees, 139 Stat. 518; and before funds may be reprogrammed or transferred in a way that "reduces by 10 percent funding for any existing program, project, or activity, or numbers of personnel by 10 percent as approved by Congress" or that "results from any general savings from a reduction in personnel which would result in a change in existing programs, activities, or projects as approved by Congress," §716(b)(2), (3).

7. Congress enacted similar appropriations conditions for the USFS in January 2026. Pub. L. No. 119-74, §421, 140 Stat. 5, 163 (2026) ("None of the funds made available in this Act, in this and prior fiscal years, may be reprogrammed without the advance notification and approval of the House and Senate Committees on Appropriations"). Congress defined "reprogramming" for the USFS as "all proposed reorganizations or other workforce actions detailed below which affect a total of 10 staff members or 10 percent of the staffing of an affected program or office, whichever is less" and that definition applies "to proposed reorganizations, workforce restructure, reshaping, transfer of functions, or bureau-wide downsizing and include[s] closures, consolidations, and relocations of offices, facilities, and laboratories." 172 Cong. Rec. H472 (Jan 8, 2026).

8. The closure of offices and forced relocation of thousands of federal employees required by USDA's Reorganization Plan are actions that are directly contrary to statutory authority, including the Fiscal Year 2026 Appropriations Acts for USDA and USFS, in which Congress prohibited the very Reorganization Plan USDA is now implementing.

9. USDA's actions are also arbitrary and capricious: by its own admission, USDA made the decision to close offices and force relocations without having conducted *any analysis* of the impact of the forced (and intended) attrition on agency functions and ability to meet its statutory mandates.

10. USDA has continued to roll out the component-level implementing actions over the course of the spring and summer of 2026. USDA first notified Congress of the specific closures and relocations by component agency, and began impact-only bargaining with unions representing

employees (including Plaintiffs) with respect to those components. USDA refused to bargain over the fact of the reorganization, including the decision to reorganize, the closure of offices, and the relocation of employees, asserting that those issues are not subject to collective bargaining. USDA has more recently begun to send “Management Directed Reassignment” (“MDR”) letters ordering employees to: 1) decide by a short deadline whether to accept relocation to a new location; and 2) appear for work in that location, often in a different state or across the country. Those employees who refuse will be terminated. The deadline for the first set of employees to report to a new location is September 21, 2026, and other employees have deadlines soon after.

11. Following the announcement of implementation, Plaintiffs swiftly challenged the USDA Reorganization Plan as unlawful as part of ongoing litigation in this Court, *AFGE v. Trump*, No. 25-cv- 03698-SI (N.D. Cal.). On July 1, 2026, Plaintiffs moved in that case to file a Second Supplemental Complaint adding claims arising from the USDA Reorganization Plan, and for a preliminary injunction. The Court set those motions for hearing on September 1, 2026, and on September 2, 2026, denied Plaintiffs’ motion to supplement the complaint. *Id*. Dkt. 486 (“For the reasons set forth below, the Court concludes that the claims plaintiffs seek to bring regarding the USDA reorganization involve new and distinct causes of action that should be the subject of a separate lawsuit.”). Plaintiffs immediately prepared this lawsuit and filed this new case.

12. Plaintiffs have also filed an accompanying renewed motion for preliminary injunction, because USDA’s Reorganization Plan and implementing actions are harming and will continue to harm USDA employees impacted by the reorganizing and downsizing, including employees represented by Union Plaintiffs, as well as local governments and non-profit Plaintiffs and their members that rely on the services, research, and other functions of the department.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

14. Venue is appropriate in this district under 28 U.S.C. §1391(e). Plaintiffs AFGE, NTEU, and NFFE represent USDA employees whose place of employment is within the Northern

District of California. Plaintiffs the City and County of San Francisco and the County of Santa Clara are located within the Northern District of California.

15. Intradistrict assignment is appropriate in the San Francisco/Oakland division of this Court.

**PARTIES**

16. Plaintiff AFGE is a labor organization and unincorporated association headquartered at 80 F Street N.W., Washington, D.C. 20001. AFGE, the largest union of federal employees, represents approximately 800,000 federal civilian employees through its affiliated councils and locals at 192 Departments, agencies and sub-agencies of the federal government, and in every state in the United States. AFGE and its affiliates represent employees at USDA, including employees at FNA; USFS, in the Research, Education, and Economics, Rural Development mission area, Farm Production and Conservation mission area; and in the staff offices, including employees in the San Francisco office of the Office of General Counsel. AFGE advocates on behalf of its members, and its core functions include providing support, guidance, and resources to its affiliates, which are the officially recognized exclusive representatives of federal employees in various bargaining units, and these bargaining unit employees.

17. Plaintiff AFSCME is a labor organization and unincorporated association headquartered at 1625 L Street, N.W., Washington, D.C. 20036. AFSCME is the largest trade union of public employees in the United States, with 1.4 million members organized into approximately 3,400 local unions, 58 councils and other affiliates in 46 states, the District of Columbia, and Puerto Rico. AFSCME and its affiliates represent employees at USDA as their certified collective bargaining agent pursuant to federal statute, including but not limited to bargaining units of employees in the Foreign Agricultural Service and the RD mission area and FPAC mission area. AFSCME's mission is to advocate for and promote better terms and conditions of employment and the related interests of all AFSCME members and members of the bargaining unit AFSCME represents in their federal employment. Core functions of the Union include providing other support, guidance, and resources to bargaining unit employees.

18. Plaintiff NFFE is an unincorporated association headquartered in Washington, D.C. NFFE, the nation's first federal union, is a national labor union representing approximately 110,000 professional and non-professional federal government workers across the United States. NFFE is an affiliate of the International Association of Machinists and Aerospace Workers (IAM). NFFE and its affiliates represent the majority of the USFS employees, from the Washington Office to the Research Stations, to each of the nine Regional Offices, including employees in the USFS Region 5 office in Vallejo, CA. NFFE has four bargaining units at the USFS within the Northern District of California. The union's core functions include providing advice, support, and resources to bargaining unit employees.

19. Plaintiff NTEU is the second largest union of federal workers. It is the exclusive bargaining representative of federal employees in 38 federal departments and agencies. NTEU and its affiliates represent USDA employees at the FNA, including employees at the Western Regional Office in San Francisco, California. NTEU is an unincorporated association with its principal place of business at 800 K Street, N.W., Washington, D.C. 20001, and with eight field offices across the country including in Oakland, California. NTEU's core activities include negotiating collective bargaining agreements with agency employers, advocating for bargaining unit employees, and litigating disputes involving federal employees' rights. NTEU is the exclusive bargaining representative of more than 160,000 federal employees in 38 federal departments and agencies. NTEU and its affiliates represent USDA employees at the FNA, including employees at the Western Regional Office in San Francisco, California.

20. Together, AFGE, AFSCME, NFFE, and NTEU are the "Union Plaintiffs." The Union Plaintiffs are each proceeding on their own behalf as an organization, including based on injury to their core mission and organizational activities, as well as on a representative basis, based on injury to the employees they represent.

21. Plaintiff County of Santa Clara, California ("Santa Clara") is a charter county and political subdivision of the State of California.

22. Plaintiff Martin Luther King, Jr. County ("King County") is a home rule charter county organized and existing under and by virtue of the constitution and laws of the State of Washington.

23. Plaintiff the Mayor and City Council of Baltimore ("Baltimore") is the corporate identity of the Plaintiff City of Baltimore, Maryland, a home-rule jurisdiction created by the Baltimore City Charter as an entity that may sue and be sued.

24. Plaintiff the City and County of San Francisco ("San Francisco") is a municipal corporation organized and existing under and by virtue of the laws of the State of California and is a charter city and county.

25. Plaintiff Prince George's County, Maryland ("Prince George's County") is the second-most populous county in the state of Maryland. Prince George's County is home to the Beltsville Agricultural Research Center ("BARC"), a unit of USDA's Agricultural Research Service.

26. Together, Santa Clara, King County, Baltimore, San Francisco, and Prince George's County are the "Local Government Plaintiffs."

27. Plaintiff Alliance of Crop, Soil and Environmental Science Societies ("the Alliance") is a 501(c)(3) non-profit organization that manages and supports three membership associations: the American Society of Agronomy, Crop Science Society of America, and Soil Science Society of America. These Science Societies have approximately 7,500 members, including employees of the USDA and other scientific contributors in university, non-profit, and industry settings. The Alliance works to advance the fields of agriculture, food, environment, and natural resources, in part by facilitating collaboration amongst and bolstering communication between agronomic, crop, and soil professionals, in order to grow science-based knowledge in these fields.

28. Plaintiff American Geophysical Union ("AGU") is a 501(c)(3) membership association for Earth and space scientists who work in academia, government agencies, and the private sector. The organization, founded in 1919, pursues a mission "to support and inspire a global community of individuals and organizations interested in advancing discovery in Earth and space sciences and its benefit for humanity and the environment." At the end of 2025, AGU had more than

35,000 dues-paying members worldwide, including 24,500 members residing in the United States. AGU has members who work in agencies across the federal government, including in research agencies in the Department of Agriculture and in the U.S. Forest Service. In addition to traditional career support provided by an association, AGU publishes a portfolio of 24 high-impact scholarly journals and convenes regular scientific meetings, including its Annual Meeting, which had more than 30,000 attendees in 2024.

29. Plaintiff Coalition to Protect America's National Parks ("Parks Coalition") is a non-profit organization made up of over 4,000 members, all of whom are current, former, and retired employees and volunteers of the National Park Service. Together, they have accumulated over 50,000 years of experience caring for America's most valuable natural and cultural resources. The Coalition's goal is to support the preservation and protection of the National Park System and the mission-related programs of the National Park Service ("NPS") to ensure the survival of the park system for generations to come. The Coalition's members are regular and avid users of the National Park System as well as National Forests and other public lands, for recreation and conservation activities

30. Plaintiff Natural Resources Defense Council, Inc. ("NRDC") is a not-for-profit environmental and public health membership organization that works to ensure the rights of all people to clean air, clean water, and healthy communities. NRDC has many hundreds of thousands of members throughout the United States. NRDC engages in research, policy analysis, advocacy, public education, and litigation to protect public health and the environment. As part of its work, NRDC petitions federal agencies for rulemaking and other actions to protect the environment and human health, comments on proposed regulations issued by federal agencies, researches and informs its members about important environmental and public health issues, and publishes scientific papers and advocacy briefs to inform the scientific community, policymakers, and the public.

31. Plaintiff Western Watersheds Project ("WWP") is a non-profit environmental conservation group that works to influence and improve public lands management throughout the western United States to protect native species and conserve and restore the habitats they depend on.

WWP's primary focus is on the negative impacts of livestock grazing, including harm to ecological, biological, cultural, historic, archeological, scenic resources, wilderness values, roadless areas, Wilderness Study Areas, and designated Wilderness. WWP was founded in 1993 and has more than 14,000 members and supporters and field offices in Colorado, Utah, Idaho, Montana, Wyoming, Arizona, Nevada, and Oregon, and has numerous members within the Northern District of California. WWP covers over 250 million acres of public land spanning all of the western states.

32. Together, the Alliance, AGU, Parks Coalition, NRDC, and WWP are the "Non-Profit Plaintiffs." The Non-Profit Plaintiffs are all proceeding on their own behalf as an organization, including based on injury to their core mission activities, as well as on a representative or associational basis, based on injury to their members.

33. Defendant United States Department of Agriculture ("USDA" or "Agriculture") is a federal agency headquartered in Washington, D.C. USDA is a federal agency within the meaning of the APA, 5 U.S.C. §701(b)(1).

34. Defendant Brooke Rollins is the Secretary of Agriculture and is sued in her official capacity.

## FACTUAL ALLEGATIONS

### I. USDA's Reorganization Plan

35. On July 24, 2025, Secretary Rollins announced the "USDA Department Reorganization Plan" ("Reorganization Plan" or the "Plan"). That Plan calls for USDA to relocate many programs and offices out of its Washington D.C. headquarters and to consolidate and move programs and offices across the country. Secretary Rollins issued a Secretary Memorandum that set forth the Reorganization Plan, organized by four "Pillars" described as: workforce reduction; moving staff out of Washington, D.C.; eliminating management layers; and consolidating support functions. That memorandum is attached hereto as Exhibit A to this Complaint.

36. The Reorganization Plan described the reorganization as "another step of the Department's process of reducing its workforce." The Reorganization Plan includes significant forced relocations for USDA employees, as USDA restructures its component agencies and programs.

37. USDA did not immediately implement the Plan, and instead invited public comment.

38. USDA received overwhelmingly negative comments opposing the actions USDA set forth in the Secretary Memorandum. It received 46,845 comments, the "overwhelming majority" (82%) of which "expressed negative sentiment." *See* "USDA Reorganization: Summary and Analysis of Feedback" (Dec. 8, 2025) (describing comments from agency alumni, employees, unions, former chiefs, Congress, tribes, local governments, academics, and citizens). Key themes included that reorganization would lead to workforce attrition and "reduced operational capacity," such as "erod[ing] the Forest Service's capacity to manage public lands and resources," "stifl[ing] scientific progress," and ignoring the "profound ecological and scientific consequences" of eliminating research facilities. *Id.* Union Plaintiffs and others submitted comments explaining in particular why the proposed Plan would cause significant attrition among experienced and knowledgeable staff, with direct negative impacts on the ability of USDA to perform its statutory functions, among other harms. Many comments reminded USDA that previous forced relocations of USDA employees resulted in significant rates of attrition and harmed the agency's ability to perform statutory functions.

39. USDA issued a December 2025 report summarizing the comments without responding to them.

40. Meanwhile, USDA sought authorization for the actions in this Reorganization Plan through the budget process for Fiscal Year 2026, proposing an agency budget that reflected the workforce reduction goals in this Plan. The Fiscal Year ended on September 30, 2025, without the enactment of appropriations statutes, including for USDA, and the government entered what would become an unprecedentedly long government shutdown.

41. Congress enacted appropriations statutes, including for USDA, to end that shutdown. Congress, and in particular the committees that provide oversight for USDA, was aware of the USDA Reorganization Plan at that time, having held hearings and requested information from USDA about the Plan. In the appropriations statutes for Fiscal Year 2026 (cited above), Congress specifically directed USDA and USFS *not* to take actions restructuring the agency or downsizing staff without further congressional approval.

42. USDA was also blocked from implementing further workforce reduction efforts through injunctions and acts of Congress throughout 2025 and well into 2026.

43. USDA delayed implementation of the Reorganization Plan until 2026.

44. In February 2026, USDA confirmed to the Office of Personnel Management ("OPM") that it would be engaging in "large-scale, workforce restructuring" under the Plan and that the Plan had been delayed. At the time, USDA requested authority to offer employees subject to the Plan incentives to retire. That request was not made public.

45. In late spring 2026, USDA began releasing public information regarding imminent actions to implement the Reorganization Plan. In April and June 2026, USDA also notified Congressional committees with oversight authority over particular components of USDA of its actions to implement the Reorganization Plan. USDA conceded in those letters that its actions triggered the prohibitions in the Appropriations Acts.

46. USDA also offered impact and implementation (impact) bargaining to some of the unions representing USDA employees at the impacted components. USDA refused to bargain over the Reorganization Plan in general, or its decisions to reorganize, to close offices, to relocate employees, or which employees to relocate. USDA, in general, bargained only over logistics such as form and timing of employee notices. The Union Plaintiff that engaged in impact bargaining reserved all legal rights to challenge the legality of the Reorganization Plan.

47. To date, USDA has rolled out implementation at several component mission areas and agencies. Those actions include forcing large numbers of USDA employees currently working in the Washington, D.C. area to relocate to new "hub" locations throughout the country, as well as other forced relocations from regional and other offices of the various USDA component agencies and programs.

48. USDA has begun to, and will imminently at a much larger scale, effectuate the forced relocation of USDA employees by using MDR letters. Those MDR letters inform individual employees of their assigned relocation location; the date by which the employee must decide whether

to accept relocation; and the date by which the employee must relocate. These forced relocations will cause widespread attrition.

49. To date, a fraction of the USDA employees who will be relocated under the Reorganization Plan have received their MDR letters, and the rest are imminent. Of those employees who have received MDR letters, employees have been given relatively short windows to first decide whether to relocate (usually 30 days but sometimes shorter), and then to report to their new location (usually another 30 days). The earliest known deadline for relocation is September 21, 2026, with other relocation deadlines occurring shortly thereafter. Additionally, under the Reorganization Plan, hundreds or thousands more MDR letters are forthcoming.

50. USDA knew, and continues to know, that the office closures and forced relocations caused by the USDA Reorganization Plan will cause substantial employee attrition. USDA's intent in taking these actions is to cause significant workforce reduction. Prior to making the decision to engage in and implement these actions, USDA did not assess the effect of the employee attrition on agency functions and ability to perform statutory mandates.

## II. Current and Ongoing Implementation Actions by USDA Component

### A. Food and Nutrition Administration ("FNA")

51. FNA administers 16 statutory nutrition assistance programs that help millions of people. The largest, the Supplemental Nutrition Assistance Program ("SNAP"), provides federal food benefits to 40 million low-income Americans monthly. Another main program, the Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC"), provides nutrition support, breastfeeding resources, referrals to health care, and food assistance to low-income pregnant and postpartum women, infants, and children up to age five. WIC serves more than 40% of the infants in the United States, and distributes benefits to nearly 7 million people per month.

52. FNA staff work closely with a wide range of stakeholders including states, local governments, clinics, schools, food banks, and tribal nations (including the Local Government Plaintiffs), to successfully implement these statutory programs. For instance, FNA staff allocate funding and provide oversight and support, technical assistance, quality control, legal compliance,

evaluations, and policy expertise for the state and local agencies that administer SNAP and Child Nutrition Programs. FNA actively administers WIC in close connection with state and local agencies, including allocating and distributing quarterly WIC funding (a highly technical and time-sensitive process) and conducting reviews, on-site clinic visits, and vendor oversight.

53. FNA currently consists of a National Office in the D.C. area, seven Regional Offices, and the Retailer Operations and Compliance Office. Each Regional Office has staff located throughout the several states that comprise the region, so that they can easily interface with nearby state, local, and tribal governments and other stakeholders. National Office staff work on overarching rulemakings, guidance documents, policy decisions, and annual funding determinations, and Retailer Operations and Compliance staff oversee retailers.

54. On April 30, 2026, USDA notified Congress that it would reorganize FNA.

55. USDA is closing all seven Regional Offices (including San Francisco, CA). It is relocating and consolidating regional employees into "five new office hubs" across the country (Kansas City, MO, Indianapolis, IN, Raleigh, NC, Denver, CO, and Dallas, TX). The new hub cities are, for the most part, located far away from where most regional employees and offices are currently distributed (and the states and local communities they serve).

56. USDA is also consolidating and relocating the currently remote Retail Operations and Compliance ("ROC") staff into four offices in Atlanta, GA, Dallas, TX, Los Angeles, CA, and New York, NY.

57. All of the employees of the Regional Offices, ROC, and the employees who work remotely for the National Office will receive Management Directed Reassignment letters. The National Office staff whose official duty station was previously 1320 Braddock Place in Alexandria, Virginia have received MDRs relocating the employees to new offices in D.C. and Maryland.

58. Union Plaintiffs AFGE and NTEU represent employees at FNA. The Local Governments Plaintiffs benefit from services provided by FNA.

**B. Research, Education, and Economics Mission Area**

59. USDA houses several agencies that conduct important agricultural, economic and scientific research, and that are slated for reorganization and forced relocation, including the Agricultural Research Service, Economic Research Service, National Agricultural Statistics Service ("NASS"), and National Institute of Food and Agriculture ("NIFA").

60. These USDA programs are responsible for providing credible scientific research, economic data, statistical analysis, and scientific guidance. The Agricultural Research Service is USDA's chief scientific in-house research agency, and it includes the Beltsville Agricultural Research Center ("BARC"), which is the nation's premier agricultural research facility, and among the world's largest and most diversified agricultural research complexes. The Economic Research Service is USDA's principal social science research agency. NASS is the USDA agency responsible for providing official statistics on U.S. agriculture. NIFA funds and oversees USDA's external agricultural research, including research conducted by land-grant universities.

61. On April 23, 2026, USDA notified Congress that it would reorganize these agencies and close down BARC.

62. On the same day, April 23, 2026, USDA issued a press release announcing that the Reorganization would relocate some Economic Research Service and NIFA employees from the Washington, D.C. area to Kansas City, some NASS employees from the Washington, D.C. area to St. Louis, and relocate BARC research across the country.

63. All of BARC's research laboratories are scheduled to be vacated, and scientific and other staff relocated to other facilities around the country, including to Albany, California; Ames, Iowa; Grand Forks, North Dakota; Kearneysville, West Virginia; Kerrville, Texas; Miami, Florida; and Stoneville, Mississippi.

64. USDA issued MDR letters to most of BARC's staff (namely, the scientists and research support staff) in June and July 2026, requiring them to relocate to their new locations as early as September 21, 2026, with most research staff required to relocate by on or before October 5, 2026. The remaining BARC staff have been notified that they will receive MDRs later.

65. Union Plaintiff AFGE represents employees in the Research, Education, and Economics mission area, including the Economic Research Service, NIFA, and BARC. Local Government Plaintiff Prince George's County benefits from services provided by BARC. Local Governments Plaintiffs Santa Clara County and King County as well as non-profit Plaintiffs Alliance, AGU, and NRDC rely on REE research and Alliance and AGU members are employed at research agencies, including the Agricultural Research Service, BARC, NIFA, and Economic Research Service.

**C. Forest Service ("USFS")**

66. The USFS manages 154 national forests and 193 million acres of national forests and grasslands.

67. The USFS is currently organized into nine Regional Offices and a D.C. headquarters.

68. The headquarters staff work on the overall planning of Forest Service programs, formulate policy affecting national forests, develop legislative proposals and responses to legislative changes, create public reports including as required by statutes and regulations, and engage in interagency collaborations and environmental coordination. Each Regional Office oversees the national forests located within its region, providing specialized expertise and technical assistance for the forest- and district-level staff it supports. Regional Office teams are made up of many highly technical and specialized positions, including engineers; fire and aviation management teams; and recreation, lands, heritage, and mineral specialists, with expertise that often does not exist at the forest- or district-level offices. Regional Offices handle and coordinate region-wide policies and projects that cut across states and national forests and provide oversight, assistance, reviews, and support for the most complicated forest-level projects, including fire management and fuel reduction, bridge design and inspection, and wildfire response. Many Regional Office staff are certified to be part of incident command teams that respond to the largest wildfires.

69. The USFS also maintains five Research Stations covering the following areas: Northern, Pacific Northwest, Pacific Southwest, Rocky Mountain, and Southern. Under the umbrella of those stations are a variety of research offices, labs, institutes, and experimental forests.

Researchers conduct location-specific research, including studies of wildfire, invasive species, climate change, weather patterns, and vegetation, used by USFS in making land management decisions.

70. On March 31, 2026, USDA publicly announced its intent to restructure the USFS. The USFS sent letters alerting approximately 6,500 employees that they *might* be affected by the reorganization, including letters to around 500 employees in Regions 6 (Pacific Northwest), 8 (Southern), and 9 (Eastern, Great Lakes area) and the D.C. headquarters informing those employees that they would be relocated.

71. On March 31 and April 2, 2026, USDA provided oral notification to Congress of the Forest Service reorganization plans.

72. USDA subsequently confirmed (including in June 2026 letters to Congress), that the Reorganization Plan for USFS will: move the headquarters from Washington, D.C. to Salt Lake City, Utah; close all nine Regional Offices and move staff to significantly smaller "state-based" offices or a few new, nationwide "service centers"; and will close 23 research locations and consolidate research operations under one Research Station in Fort Collins, Colorado.

73. The Forest Service will close research locations in: Huntsville, AL; Chico, CA; Fresno, CA; Hat Creek, CA; Anderson, CA; Ansonia, CT; Hamden, CT; Tallahassee, FL; Evanston, IL; Baltimore, MD; East Lansing, MI; Wellston/Harrietta, MI; Albuquerque, NM; Cortland, NY; Lakeville, NY; McArthur, OH; Portland, OR; Long Pond, PA; York, PA; Nacogdoches, TX; Prairie Du Chien, WI; Wisconsin Rapids, WI; Princeton, WV, impacting many USFS research employees.

74. To date, some USFS employees in the D.C. headquarters have received individual MDR letters requiring them to relocate to Salt Lake City, Utah by September 21, 2026. The issuance of additional letters to employees in Regional Offices is imminent.

75. Union Plaintiff NFFE represents employees at the USFS. Local Government Plaintiffs Santa Clara County, King County, City of Baltimore, and City of San Francisco, and Non-Profit Plaintiffs Alliance, AGU, NRDC, WWP, and Parks Coalition benefit from services provided by the USFS. Non-Profit Plaintiff Alliance represents employees at the USFS.

**D. Foreign Agricultural Service**

76. The Foreign Agricultural Service is the foreign affairs arm of the USDA. Its primary mission is to enhance export opportunities for farmers and producers in the United States and to enhance global food security. Its employees work to advance opportunities for U.S. agriculture across the globe, to enhance export opportunities for U.S. farmers and producers, and improve global food security.

77. The Foreign Agricultural Service has always been located in Washington, DC, near to the other foreign relations agencies and offices of the federal government.

78. On June 17, 2026, USDA announced publicly and separately informed Congress that it was reorganizing the Foreign Agricultural Service by opening a new operational support hub in Kansas City, Missouri, and by relocating most employees away from its Washington, D.C. location to Kansas City, with a smaller number relocating to Beltsville, Maryland.

79. To date, USDA has not issued any MDR letters, but USDA has already notified more than a hundred employees that they will receive MDR letters this fall.

80. Union Plaintiff AFSCME represents employees at the Foreign Agricultural Service.

**E. Rural Development Mission Area**

81. USDA's Rural Development mission area includes the Rural Utilities Service, the Rural Business and Cooperative Service, and the Rural Housing Service, among other agencies and offices. The agencies work to improve the economy and quality of life in rural America. For example, the Rural Utilities Service agency provides financing for infrastructure improvements to rural communities, including water and waste treatment, electric power, telecommunication and broadband services. The Rural Business and Cooperative Service provides financial assistance, technical support, and resources to help rural businesses. The Rural Housing Service provides loans and financing for rural housing.

82. Although approximately 90% of the Rural Development mission area staff is located outside the D.C. area, there are some offices and employees in the D.C. region.

83. On June 17, 2026, USDA publicly announced and separately notified Congress that it would reorganize these agencies. USDA informed Congress that it would establish two National Office Centers: one in St. Louis, Missouri to serve as Rural Development's primary office for national functions, and one in Dallas-Fort Worth, Texas to serve as the primary hub for Rural Development's Business Programs and Utilities Programs. D.C.-based staff will be required to relocate to these new locations.

84. To date, at least 380 Rural Development employees have been notified that they will be impacted by the Reorganization, and at least 60 have been notified that they will be relocated to St. Louis or Dallas-Fort Worth. USDA has not yet issued any MDR letters to these employees, but their issuance is imminent.

85. Union Plaintiffs AFGE and AFSCME represent employees in the Rural Development mission area.

**F. Farm Production and Conservation Mission Area**

86. The Farm Production and Conservation mission area includes the Farm Service Agency, Risk Management Agency, Natural Resources Conservation Service, and a Business Center that coordinates administrative operations for all mission area agencies. The Farm Service Agency ("FSA") and the Farm Production and Conservation Business Center are the primary agencies responsible for administering the Commodity Credit Corporation on behalf of USDA. The Farm Service Agency also implements agricultural policy, administers credit and loan programs, and manages conservation, commodity, disaster, and farm marketing programs. The Risk Management Agency ("RMA") manages the Federal Crop Insurance Corporation that provides insurance protection to U.S. farmers and agricultural entities. The Natural Resources Conservation Service ("NRCS") administers programs to address natural resources, wetlands restoration, and farmland protection.

87. This mission area includes offices and employees in the D.C. area in addition to many FSA county offices, NRCS field offices, and RMA state offices.

88. On June 17, USDA publicly announced and separately notified Congress of "organizational realignments" for FPAC. After the Reorganization, the remaining FPAC Business Center staff will "provide services from one of the established five regional hubs" and other FPAC offices, with a "small staff" remaining in the D.C. area. At NRCS, USDA will relocate national headquarters staff and some other staff to regional hubs in Fort Collins, Colorado; Indianapolis, Indiana; Raleigh, North Carolina; Lincoln, Nebraska; and Fort Worth, Texas.

89. USDA will also close offices and programs, including: NRCS's Equity Team, Climate Team, Center for Sustainable Commodities, and Office of the Regional Conservationists.

90. To date, USDA has not issued MDRs, but USDA recently notified some FPAC Business Center workers that they will be "realigned" to NRCS and then mandatorily relocated. These employees were told they must inform the agency if they will voluntarily accept a relocation assignment or take early retirement by September 14, 2026.

91. Union Plaintiffs AFGE and AFSCME, and Non-Profit Plaintiff Alliance, represent employees in the Farm Production and Conservation mission area.

**G. USDA Office of the Assistant Secretary for Civil Rights ("OCR")**

92. OCR works to ensure the fair treatment of USDA customers and employees, while also enforcing federal civil rights laws in all programs and activities. This office is currently located in the National Capital Region.

93. On June 17, 2026, USDA publicly announced and separately notified Congress that it would be consolidating the civil rights functions currently spread throughout USDA into one operation, entirely within OCR. USDA will move operations out of the Washington, D.C. area and into two hubs: one in Raleigh, North Carolina, and one in Fort Collins, Colorado.

94. To date, USDA has notified at least 21 employees that they will be required to relocate to Fort Collins and at least 15 employees that they will be required to relocate to Raleigh. MDR letters reflecting these relocations are forthcoming this fall.

95. Union Plaintiff AFGE represents employees at OCR.

**H. USDA Office of the General Counsel ("OGC")**

96. OGC provides legal advice and legal services to the Secretary of Agriculture and other department officials and programs.

97. OGC staff currently work at offices across the country.

98. On April 30, 2026, USDA notified Congress that it would be reorganizing OGC. USDA will consolidate OGC's field operations, closing five offices in Temple, Texas; Little Rock, Arkansas; Albuquerque, New Mexico; Portland, Oregon; and San Francisco, California, and relocating employees to other existing offices and a new office in Davis, California.

99. To date, USDA has issued at least 19 MDR letters requiring OGC employees to relocate by September 21, 2026.

100. Plaintiff Union AFGE represents employees at the OGC.

## I. Workforce Attrition and Impacts

101. Many of the employees who are being required to relocate at the USDA components described above cannot do so, due to both personal and financial reasons. Those employees will therefore be separated from their federal employment, resulting in substantial staffing losses at all offices or components that are being relocated.

102. The preliminary attrition rate reported by USDA based on initial accept/decline responses to the more than 700 MDRs issued this summer shows that at least 36% of relocated workers have already declined relocation. In other words, at least one out of three relocated employees is leaving the agency rather than relocating. That rate substantially understates the actual number of workers who will ultimately be unable to report to their new locations for a variety of reasons, including because it does not include workers who are unable to relocate but initially "accepted" relocation in order to pursue hardship exemptions or reasonable accommodations to avoid moving (which have largely not been granted).

103. Attrition from the closures and relocations will lead to tremendous loss of institutional knowledge and expertise at each of these components, as highly experienced employees are being forced out of their jobs. Moreover, all components described above are already severely understaffed, having lost large percentages of employees (including one-third of FNA employees)

since January 2025 due to the Administration's Deferred Resignation Program, Voluntary Early Retirement Authority, and threat of large-scale reductions in force ("RIFs").[2] This reduced staffing is already impacting or impeding operations at the very offices and programs from which employees are now being relocated.

104. USDA will not hire to replace relocated employees, their positions, and functions, at these components.

105. The impending loss of substantial numbers of employees, including highly experienced employees, at these agency components due to the reorganization will necessarily impact those components' ability to perform their statutory authorized and mandated functions, including the functions and services relied on by Local Government Plaintiffs and Non-Profit Plaintiffs. Workforce attrition caused by the reorganization's closures and relocations will cause delays, reductions, and degradation of services and functions at each of the components and offices from which employees are being relocated.

## III. Ongoing and Imminent Harm to Plaintiffs From USDA's Reorganization

106. The above ongoing and imminent actions taken by USDA will cause harm, including irreparable harm, to Plaintiffs, their members, and others, including but not limited to the following:

107. The Union Plaintiffs each represent, and have as members, USDA employees who will be involuntarily separated as a result of the closure of offices and forced relocation of USDA employees under USDA's Reorganization Plan, because they are unable to relocate to the new offices to which they have been or will be reassigned. Those federal employees will lose their income, their health benefits, and other incidents of employment, as well as their careers after spending years if not decades in public service, thereby causing severe irreparable harm to them, their families, and their communities.

---

[2] Those programs are designed to cause workforce reduction, offering workers better severance benefits if they quit now rather than wait to be involuntarily separated by USDA's threatened large-scale reductions in force ("RIFs").

108. The Union Plaintiffs each represent, and have as members, USDA employees who will be forced to uproot their lives and move far from their homes, on short notice and under the duress of becoming unemployed, as a result of the closure of offices and forced relocation of USDA employees under USDA's Reorganization Plan, causing severe harm to them, their families, and their communities.

109. The Union Plaintiffs each represent, and have as members, USDA employees who, if they keep their job, will be subject to a Reorganization that makes doing their job more difficult due to resulting attrition. Each USDA employee who remains will be required to do more to meet the agency's statutory mission and obligations.

110. Each of the Union Plaintiffs has the core function of representing employees, including those in federal bargaining units, in collective bargaining and providing counseling, advice, and representation to employees in the event of adverse employment actions. Each Union Plaintiff will be imminently prevented by the Reorganization's closure of offices and relocation of employees from exercising those core functions as employee representatives. USDA's closure of offices and forced relocation of USDA employees will move employees out of the geographic scope of the union's bargaining units, directly affecting and interfering with the Union Plaintiffs' core organizational activities.

111. Each Union Plaintiff will be harmed in other ways by the closure of offices and forced relocation of USDA employees, including by the loss of dues income and bargaining power.

112. Non-Profit Plaintiffs Alliance and AGU have as members USDA employees in the components that are reorganizing who face job loss because they are unable to relocate or increased workloads due to the attrition of their colleagues. They also have members who rely on NIFA-distributed funding who will be harmed by loss or disruption of research and research funding when attrition at NIFA causes delays or disruption in NIFA grant processing and awards. They also have members whose research relies on collaborating with USDA researchers at the components being reorganized, who will be harmed when those researchers are separated from their jobs and unable to continue with their research due to the reorganization.

113. Non-Profit Plaintiffs NRDC and WWP face imminent harm to their organizations' core research and advocacy functions as the result of delays and reduction in services provided by the USDA component agencies and offices, including at the USFS and within the Research, Education, and Economics mission area, on which they rely. For example, NRDC researchers rely on ongoing BARC and Economic Research Service research on soil nitrogen pollution for a long-running NRDC advocacy campaign. Attrition of researchers due to relocations will likely halt or delay that irreplaceable research, which will significantly hinder NRDC's core advocacy activities. Attrition from the closure of Forest Service research offices will likewise delay and make more difficult NRDC's own environmental research and advocacy on forest management issues, which rely on Forest Service data and research. WWP relies on collaboration with Forest Service regional offices and research from Forest Service research offices in order to advocate for sustainable land management and address environmental problems caused by livestock grazing. The closure of regional offices and research offices, and the attrition of Forest Service employees at these offices, will impair WWP's core business activities of advocating for and addressing these issues.

114. The members of all Non-Profit Plaintiffs will imminently suffer actual and ongoing harm as a result of the implementation of the office closures and forced relocations of USDA employees under this Reorganization Plan as the direct result of delays, degradation, and reduction in services provided by the USDA component agencies and offices on which they rely.

115. The Reorganization of the USFS will leave thousands of members of Non-Profit Plaintiffs NRDC, WWP, and Parks Coalition without the services performed by regional offices, the Washington Office, and research stations to protect the National Forest habitats in which those members recreate against wildfires and environmental degradation. Attrition caused by the closure of USFS offices and relocation of employees will impair the Forest Service's ability to perform its public land management functions (including fulfilling multiple-use and environmental mandates) as well as its wildfire response and prevention functions. There will be fewer "red card certified" incident management team employees ready to response to wildfires, and fewer employees available to perform critical conservation, infrastructure, and habitat protection tasks. Members of these Non-

Profit Plaintiffs live near and recreate in national forests across the country. The environmental deterioration that will result from Forest Service employee attrition will harm their use and enjoyment of those forests.

116. Members of Non-Profit Plaintiffs will be adversely impacted by office closures and forced relocations of USDA employees under this Reorganization Plan across the country, and the harms caused by the attrition of staff will not be limited to a defined and particular geographic area.

117. Each Local Government Plaintiff will imminently suffer actual and ongoing harm as a result of the office closures and forced relocations of USDA employees under this Reorganization Plan as the direct result of delays and reduction in services provided by the USDA agencies and offices on which they rely.

118. The Local Government Plaintiffs will be adversely impacted by the attrition of staff and reduction in services both within and outside their borders, as the local governments often depend on staff performing work in locations across the country not within the geographic borders of the local government.

119. Plaintiff Santa Clara relies on FNA having adequate staffing and proper functioning to issue and administer SNAP funding, including by providing Santa Clara with programmatic, technical, and other support regarding the SNAP program. Santa Clara relies on this funding and support to implement CalFresh, which helps approximately 130,000 Santa Clara County residents feed their families. Disruption to SNAP funding and support likely to be caused by decreased personnel at FNA will impose costs on Santa Clara to address the shortfall, including by potentially increasing funding to local food banks that CalFresh enrollees turn to for emergency food assistance. Santa Clara also relies on the research performed by personnel in the Research, Education, and Economics mission area, including research developing responses to new and emerging threats to agriculture and food security. The impending loss and disruption of agricultural research projects from staff attrition at this mission area will increase the burden on Santa Clara to monitor agricultural activity in the county for diseases and food safety threats. Attrition at the Forest Service will harm Santa Clara's emergency response offices, which will incur costs and need to dedicate additional

resources to provide services to residents because the Forest Service's diminished ability to prevent and respond to wildfires materially increases the wildfires and wildfire smoke in Santa Clara County. Agency attrition also causes immediate costs because emergency offices need to plan and allocate resources *now* based on the resources they understand USFS will (or will not) contribute to mutual aid arrangements in the event of a wildfire emergency

120. Plaintiffs San Francisco and Santa Clara rely on the USFS's fire prevention and response activities that will be diminished by the attrition caused by the reorganization. California has large areas of federal land that fall under the primary jurisdiction of the federal fire agencies, including the Forest Service. The USFS performs essential work to manage federal public lands, to mitigate the risks of wildfire, and to fight wildfires when they occur. California localities, including Plaintiffs San Francisco and Santa Clara, are part of a system of mutual aid that depends substantially on the Forest Service's wildfire resources in those federal areas, as fires spread between that federal land and land that local and state firefighters protect. When the USFS's fire response and prevention functions are degraded by the reorganization, that will impose significant costs on San Francisco, Santa Clara, and other localities that need to fill the gap. For instance, loss of USFS regional office staffing will require the San Francisco Fire Department to carry more of the burden of responding to wildfires and go without the assistance on which it often relies. It will also increase the monetary cost to San Francisco because the mutual aid system requires San Francisco to provide firefighters and to spend city funds to support firefighting efforts across the state of California.

121. Attrition at FNA and the closure of the USFS Baltimore Research Station will harm Plaintiff Baltimore. Baltimore relies on services provided by those component offices to fight chronic food insecurity, manage environmental challenges in the urban context, and otherwise promote the health and wellbeing of Baltimore residents. For instance, Baltimore depends on FNA staff for the operation of its B'more Fresh program for SNAP beneficiaries. FNA staff authorize participants, certify marketplaces, and assist Baltimore in meeting other strict technical requirements, so disruptions to FNA staff availability that will be caused by the reorganization will impair Baltimore's ability to run or the program and will substantially increase the administrative and

operational burden on Baltimore. Disruptions to FNA programs caused by staff attrition will also threaten the food security of thousands of Baltimore residents, increase demand on Baltimore's emergency resources and requiring Baltimore to expend its own funds to cover food programs and WIC clinics. The imminent closure of USFS's Urban Field Station in Baltimore under the Reorganization Plan will directly harm the city. For nearly thirty years, Baltimore has worked with and relied on the Field Station to promote important urban forestry and ecology work in the city, which stimulate the city's economy and promote sustainability. Baltimore cannot replace the loss of the research programming and research scientists from this Station, and will incur increased operational burdens to manage its urban forests in the Station's absence.

122. Attrition from the force relocation directives at FNA, USFS, and Research, Education, and Economics mission area will harm Plaintiff King County. King County relies on FNA's The Emergency Food Assistance Program ("TEFAP") for county programs that distribute food at no cost to hungry lower-income children, adults, elderly, and homeless individuals and families. Disruptions to TEFAP from reduced FNA staff due to the relocations will result in reduced quantities of USDA foods reaching King County residents, which will increase demand on County-supported food assistance and public health programs, greater reliance on County funding, and increased County administrative burdens. King County and its agricultural economy also relies on research, data, technical expertise, and funding generated through the Agricultural Research Service, Economic Research Service, and NIFA. These sub-agencies provide and support foundational research regarding soil health, water quality, irrigation management, food safety, climate adaptation, pest management, sustainable farming systems, and other agricultural issues, which is used by King County itself in addition to King County residents. Additionally, approximately 350,000 acres within King County are managed by the Forest Service and provide important recreational, environmental, and economic benefits to County residents. Reducing USFS Regional Office staffing will diminish federal oversight of recreation, infrastructure, timber harvesting, habitat protection, water quality, and fire prevention and response on those lands, which will degrade those lands and could spread to and

impact adjacent county lands, and reduce the timber-harvest revenues generated from these lands that contribute to King County operations.

123. Plaintiff Prince George's County is home to the Beltsville Agricultural Research Center. BARC's operations, its collaborations with the University of Maryland, its commercial contracts, and its employees support the Prince George's County economy and provide a significant source of County revenue in the form of income taxes and consumer spending. BARC's permanent closure will reduce the state of Maryland's GDP by an estimated $450 million, and Prince George's County will bear much of that loss. BARC staff are also responsible for the maintenance of certain environmental obligations that protect Prince George's County's land in the Beltsville area. Without staff at BARC, Prince George's County will have to expend its own resources to prevent the spread of environmental hazards to county land and incur costs for wetland restoration and maintenance.

## CLAIMS FOR RELIEF

### Claim I:

**Administrative Procedure Act, 5 U.S.C. §706(2)(A), (B), and (C)**
**Against Defendants USDA and Secretary Rollins**
**(Action Not in Accordance with Law and Exceeding Constitutional and Statutory Authority)**

124. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

125. Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law," 5 U.S.C. §706(2)(A), "contrary to constitutional right, power, privilege, or immunity," *id.* §706(2)(B), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *Id.* §706(2)(C).

126. USDA is an agency subject to the APA. 5 U.S.C. §701.

127. The closure of offices and facilities and forced relocation of USDA employees under the USDA Reorganization Plan are final agency actions for the purposes of APA review.

128. The closure of offices and facilities and forced relocation of USDA employees under the USDA Reorganization Plan are contrary to law and exceed USDA's constitutional and statutory authority, including because they violate Congress's express prohibitions on reorganization and

downsizing as set forth in, *inter alia*, Pub. L. No. 119-37, §716, §771 (2025) and Pub. L. No. 119-74, §421 (2026).

129. The actions of USDA Secretary Rollins and USDA therefore violate the Administrative Procedure Act because they are not in accordance with law and exceed agency authority in violation of 5 U.S.C. §706(2)(A), (B), and (C).

**Claim II**
***Ultra Vires* Unlawful and Unconstitutional Governmental Action**
**Against Defendants USDA and Secretary Rollins**

130. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

131. Plaintiffs have a non-statutory right of action to enjoin and declare unlawful official action that is *ultra vires*.

132. The Appropriations Clause provides that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress. U.S. Const. art. I, § 9, cl. 7. The executive branch lacks independent constitutional authority to use funds in violation of congressional appropriations.

133. The closure of offices and facilities and forced relocation of USDA employees under the USDA Reorganization Plan are unconstitutional and contrary to law because they violate Congress's express prohibitions on reorganization and downsizing as set forth in, *inter alia*, Pub. L. No. 119-37, §716, §771 (2025) and Pub. L. No. 119-74, §421 (2026), and thereby also exceed the executive branch's Article II authority, usurp Congress's Article I legislative authority, and violate the separation of powers principles embodied in the U.S. Constitution.

134. The actions of USDA and Secretary Rollins are therefore contrary to statute and the Constitution and are thus *ultra vires*.

**Claim III**
**Administrative Procedure Act, 5 U.S.C. §706(2)(A)**
**Against Defendants USDA and Secretary Rollins**
**(Arbitrary and Capricious Agency Action)**

135. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

136. The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

137. The closure of offices and facilities and forced relocation of USDA employees under the USDA Reorganization Plan are final agency actions for the purposes of APA review.

138. The APA requires that an agency provide "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). An action is also arbitrary and capricious if the agency "failed to consider . . . important aspects of the problem" before it, *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 25 (2020) (quoting *State Farm*, 463 U.S. at 43), "or offers an explanation for its decision that runs counter to the evidence before the agency,'" *Center for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 67 F.4th 1027, 1035 (9th Cir. 2023) (quoting *State Farm*, 463 U.S. at 43).

139. USDA's decision to close offices and facilities and force the relocation of USDA employees under the USDA Reorganization Plan have been undertaken without considering the impact of attrition on the agency's ability to perform its statutory functions and other necessarily relevant and important aspects of the issue; without properly considering the reliance interests of affected employees and those relying on USDA services; and without any rational connection between the actions taken and the reasons given (or lack thereof), and are therefore arbitrary and capricious final agency actions.

140. The actions of USDA and USDA Secretary Rollins therefore violate the APA because they are arbitrary and capricious under 5 U.S.C. §706(2)(A).

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that this Court:

141. Declare that Defendants Secretary Rollins and USDA have acted contrary to statutory law and in excess of constitutional and statutory authority, and acted in an unlawful arbitrary and

capricious manner, by and through the closure of offices and facilities and forced relocation of USDA employees under the USDA Reorganization Plan.

142. Preliminarily and permanently enjoin, vacate, hold unlawful, set aside, and/or stay the closure of offices and facilities and forced relocation of USDA employees under the USDA Reorganization Plan, including under 5 U.S.C. §§705 and 706.

143. Award Plaintiffs their costs, reasonable attorneys' fees, and other disbursements as appropriate.

144. Grant such other relief as this Court may deem proper.

DATED: September 8, 2026

Respectfully submitted,

Barbara J. Chisholm
Danielle E. Leonard
Corinne F. Johnson
Jessica M. Levy
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

By: */s/ Corinne F. Johnson*

*Attorneys for All Union and Non-Profit Plaintiffs*

Elena Goldstein (*pro hac vice app. forthcoming*)
Tsuki Hoshijima (*pro hac vice app. forthcoming*)
Andrea Matthews (*pro hac vice app. forthcoming*)
Gregory M. Cumming (*pro hac vice app. forthcoming*)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
egoldstein@democracyforward.org
thoshijima@democracyforward.org
amatthews@democracyforward.org

gcumming@democracyforward.org

By: */s/ Tsuki Hoshijima*

*Attorneys for All Union Plaintiffs*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiff American Federation of Government Employees, AFL-CIO (AFGE)*

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice app. forthcoming*)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Yvette M. Piacsek (*pro hac vice app. forthcoming*)
General Counsel
National Federation of Federal Employees, IAM, AFL-CIO
1225 New York Ave. N.W., Suite 450
Washington, D.C. 20005
202-216-4428
ypiacsek@nffe.org

By: */s/ Yvette M. Piacsek*

*Attorneys for National Federation of Federal Employees, IAM, AFL-CIO (NFFE)*

PARAS N. SHAH (*pro hac vice app. forthcoming*)
General Counsel
KATHRYN W. BAILEY (*pro hac vice app. forthcoming*)
Assistant Counsel
NATIONAL TREASURY EMPLOYEES UNION
800 K Street, NW
Suite 1000
Washington, DC 20001
(202) 572-5500
paras.shah@nteu.org
kathryn.bailey@nteu.org

By: _/s/ Paras N. Shah_

*Attorneys for National Treasury Employees Union (NTEU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: _/s/ David Chiu_

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)

OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Sharanya Mohan (SBN 350675)
Kayla Svihovec (*pro hac vice app. forthcoming*)
Toby Merrill (*pro hac vice app. forthcoming*)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
kayla.svihovec@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Kayla Svihovec*

*Attorneys for Plaintiffs Baltimore, MD, Chicago, IL, Martin Luther King, Jr. County, WA, Prince George's County, MD*

Christopher Sanders (WA SBN: 47518 (*pro hac vice app. forthcoming*))
General Counsel & Chief Legal Advisor to King County Executive Girmay Zahilay
Mika Rothman (WA SBN: 55870 (*pro hac vice app forthcoming*))
Deputy General Counsel to King County Executive Girmay Zahilay
Erin King-Clancy (CA SBN: 249197, WA SBN: 57259)
Senior Deputy Prosecuting Attorney
Office of King County Prosecuting Attorney Leesa Manion
401 5th Avenue, Ste. 800
Seattle, WA 98104
(206) 477-9483
ChrSanders@kingcounty.gov

mrothman@kingcounty.gov
EClancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for King County*

Ebony M. Thompson (*pro hac vice app. forthcoming*)
Baltimore City Solicitor
Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (443) 610-8859
christopher.sousa@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*

Anthony D. Jones (*pro hac vice app. forthcoming*)
Prince George's County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
Tel: (301) 925-5225
adjones@princegeorgescountymd.gov

By: */s/ Anthony D. Jones*

*Attorney for Plaintiff Prince George's County*