Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Corinne F. Johnson (SBN 287385)
Jessica M. Levy (SBN 368289)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

*Attorneys for All Union and Non-Profit Plaintiffs*

[Additional counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture,<br><br>Defendants. | Case No. 3:26-cv-09976<br><br>**DECLARATION OF GEORGE IVERSON** |

Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchishom@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*
[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DECLARATION OF GEORGE C. IVERSON** |

**DECLARATION OF GEORGE C. IVERSON**

I, George Christopher Iverson, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am a retired United States Forest Service ("USFS") employee with more than 29 years of experience at the agency. I have worked across numerous levels of USFS and in different roles during that time.

3. I began my USFS career as a Forest Wildlife Biologist in Tongass National Forest in Juneau, AK, and then spent ten years as the Regional Ecology Program Leader for the Alaska Region. I then served as the Assistant Director for Wildlife and Fisheries in the Washington, DC headquarters office for nearly 12 years. I then served as a Deputy Regional Forester in Ogden, UT for the Intermountain Region for three and a half years, and as an Acting Deputy Regional Forester in Milwaukee, WI for the Eastern Region. In the last two years of my USFS career I served as the Acting Director for Ecosystem Coordination and as the Acting Associate Deputy Chief for Research and Development in the Washington, DC headquarters office before retiring in 2018. As my background reflects, I have worked at the forest, regional, and headquarters levels of USFS in a variety of roles and am intimately familiar with the agency, its functions, and its organization.

4. USFS is currently organized into nine regions, each with a regional office that provides oversight, policy consistency, technical assistance, and accountability, ensuring that national priorities are properly implemented by forest supervisors and the districts they oversee. The large majority of day-to-day decisions about timber sales, grazing permits, and recreational permits are made at district offices in national forests around the country, with forest supervisor offices assisting with more complex decisions. Regional offices often review and conduct oversight of those locally directed decisions, as well as provide technical support or inter-forest coordination for complicated decisions and projects. Regional offices can also take the lead on larger or more complex, region-wide or interstate policies and projects. In addition, regional offices each have highly specialized staff that many districts and forests do not have or cannot

afford, including experts on National Environmental Policy Act ("NEPA") compliance, land transfer specialists, surveyors, and engineers, among other job functions. These critical offices serve as a layer of both support and oversight between the Chief of USFS and the 154 national forests across the country.

5. The proposed reorganization of USFS would eliminate all nine regional offices, replacing them with 15 state offices. Based on publicly available information, I understand USFS leadership is attempting to get decision-making "closer to the ground" and also to create budget savings. However, these rationales are illogical and reflect a deep misunderstanding of USFS, its organization, and the role of regional offices. As discussed above, the vast majority of decisions (such as permits and timber sales) are already made "on the ground" at the district level, with support and oversight from forest supervisors and regional offices. Moving regional office staff to a mixture of state offices and "operations service centers" will do nothing to get decision-making "closer to the ground" but will instead lead to a fracturing of the functions that are currently provided by regional offices. This change will simply result in experts at service centers being further away from the forests they serve, undermining the local understanding and relationships currently facilitated by the regional model.

6. For example, region-wide projects such as the 1994 Northwest Forest Plan, which was a response to the 1990 listing of the Northern Spotted Owl as a threatened species, rely on extensive work and coordination by the regional offices. The Portland regional office played an essential role in helping 19 national forests revise their forest plans to provide consistent compliance with the conservation goals and statutory mandates of the Endangered Species Act. I was also personally involved in a multi-forest, region-wide effort to amend 16 national forest and grassland plans to conserve sage-grouse while serving as the Deputy Regional Forester for the Intermountain Region. These complex projects that impact numerous national forests rely on the expertise, coordination, and consistency that regional offices provide.

7. Under the reorganization plan, forest planning support would move to the six new operations service centers, which will be very far from many of the forests they serve. In both the Intermountain Region, where I used to serve as Deputy Regional Forester, and the Pacific

Northwest Region, there will be no operations service center. The critical support those regions received in implementing complex, region-wide forest plan revisions will now be moved to offices further away and with less expertise in the local ecosystems and species in the regions' forests. Taking these critical functions out of the regional offices and into a small number of geographically dispersed operations centers moves analysis and decision-making further, not closer, to the ground.

8. Moreover, USFS has not, to my knowledge, published a cost benefit analysis and it is wholly unclear how the reorganization will produce budget savings. The only explanation I can gather is that the forced relocations contemplated by the reorganization are expected and intended to result in many USFS regional office employees resigning or retiring. If that is indeed the plan, there will be a tremendous loss of institutional knowledge and expertise that will be enormously difficult to replace. Districts and forests will lose the advice, oversight, and accountability they currently receive from their regional offices, and may also lose access to the specialized skillsets of land transfer specialists, NEPA compliance experts, and other technical positions that have no equivalent at the district or supervisor levels. When the Bureau of Land Management engaged in a similar reorganization and transfer of its headquarters from Washington, DC to Grand Junction, CO in 2019 and 2020, 77% of staff resigned rather than relocate. Attrition is likely to be similarly high if USFS engages in its planned reorganization. This will likely reduce the quality of decision-making for the districts and forest supervisors who rely on regional office support to manage their forests.

9. Based on my knowledge and contacts at USFS regional offices, the mid-to-high level employees are the ones most likely to leave if forced to relocate. This will include many of the specialized roles mentioned above. When I was a USFS Deputy Regional Forester, we had certified engineers in regional offices who would work on complex bridge designs and inspections, which forests and districts lacked the expertise for. Many districts and forests can't afford or don't have access to these specialty functions. If such specialists were to leave, the forests and districts within the region would have no one to turn to for certified engineering guidance and support or have to wait for support from a distant service center. This will lead to

lower quality decisions, which will harm rather than help USFS and could undermine public safety.

10. Regional office staff also play an essential role in USFS fire response. Each regional office has a fire director that provides essential leadership for large, complex fires, regional planning and coordination for "fire hire," and important training for these personnel. As a fire grows, a larger and more complex team will be assembled, pulling in staff from the district, forest, or regional level. For the largest fires (known as "Type 1" fires), the chain of command runs directly through the Regional Forester, who will provide oversight of the incident command structure.

11. The reorganization poses at least two substantial risks to the current fire response system. First, the likely attrition of regional office personnel created by forced relocations is likely to result in numerous specialized fire response employees leaving the agency. Because the incident command teams, commonly referred to as "militia," are often comprised of employees from across regions and offices, particularly for the most complex Type 1 fires, personnel losses at *any* of the regional offices will have negative consequences for fire response nationwide. USFS only has a limited number of certified personnel, who have been specially trained to perform specific functions during fires (such as logistics, operations, fire analysis, etc.) Attrition at the regional office will reduce the number of qualified fire response staffers to choose from for filling out the incident command teams. Second, the current incident command structure, including the Boise interagency fire office, has a great track record at coordinating responses to fires on USFS land. Large, Type 1 fires require extensive coordination between the Boise office, the affected regional offices, and USFS headquarters in Washington DC. This is a highly complex, technical system that has been honed through years of practice. Disrupting that system during the shift to state offices, when paired with the likely loss of key fire personnel, will undermine USFS fire response capacity and poses substantial risks to the people, animals, and ecosystems on and near USFS lands.

12. Additionally, the USFS research stations conduct critical, applied research on local ecosystems that actively inform land management practices put in place at the forest level. When I

was working on Tongass National Forest Plan revision, the Pacific Northwest Research Station was indispensable, giving us scientific guidance and lending their expertise on species- and ecosystem-specific land management best practices. For example, the research station helped us design specific, multi-scale guidelines for protecting and conserving salmon based on evidence-based practices for management of streams and rivers of varying sizes. These research stations also help review forest plans to ensure they cite the newest and most relevant science, protecting these plans against administrative objections and litigation challenges. The scientists in the Pacific Northwest Research Station were also essential in the revision of 19 forest plans following the Northern Spotted Owl listing as a threatened species, integrating and coordinating scientifically credible conservation best practices across all the impacted forests. This research station, along with others, is being evaluated for closure under the reorganization plan, which could jeopardize the scientific quality and credibility of forest plans.

13. The critical research conducted at these stations cannot simply be moved to any remaining research stations under the reorganization plan. The research stations are highly specialized in issues affecting local ecosystems and species, and are often co-located with the forests they study. For example, experts in Douglas fir old-growth forest research can't simply be moved to Fort Collins to study a new issue—their expertise and experience is highly technical and specialized. The forced relocation of these researchers will cause attrition and an associated loss of scientific knowledge, and also reshuffle any remaining researchers around inefficiently. This undermines USFS research capacity and credibility, and the associated benefits it brings to the regional offices, forests, and districts who use the research of these stations to more effectively manage the lands within their jurisdictions.

14. Each element of the USFS reorganization plan reflects a fundamental misunderstanding of the agency's current operations. Eliminating regional offices and shifting to a model of state offices and operations service centers will move support for complex decisions further from the ground level decision-makers in the forests and districts. It will also result in the loss of talented specialists, weakening USFS as a whole. Fire response will likely be undermined by the restructuring, resulting in fewer qualified staff members available for fire response. And the

elimination of dozens of research stations will undercut the ability for USFS employees throughout the organization to engage in science-based land management. This reorganization plan makes little sense and directly contradicts the USFS leadership's stated rationale, as it contributes nothing to get decisions "closer to the ground." But when paired with the likely loss of numerous long-time employees this reorganization plan is likely to threaten the ability of USFS to effectively manage its nearly 200 million acres of national forest system public lands.

15. I am a member of Western Watersheds Project. I live in Northern Michigan near the Huron-Manistee National Forest. I frequently fish for salmon in the Manistee River, which is in the national forest. I also visit and recreate on those national forest lands and will continue to do so in the future.

16. I live within a quarter mile of the border of the Pere Marquette State Forest, and I recreate on those lands every fall. This state forest is one of many within the state of Michigan, the conservation of which is supported by USFS grants and staff including the State, Private, and Tribal Forestry branch of USFS. If the closure of the Region 9 regional office results in a loss of staff and support that impairs the areas of Michigan's national and state forests that I visit, it will harm my ability to enjoy those public lands.

17. Additionally, I own property in Juneau, AK, and I frequently visit the Tongass National Forest to fish and recreate. While visiting my son this fall, we intend to go to the Tongass National Forest on November 1, 2026. Given my frequent visits to this national forest and my personal affinity for these public lands, it will hinder my enjoyment of those lands and interfere with my future plans if the reorganization of USFS degraded the Tongass National Forest.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 1st day of July 2026, in Lake City, Michigan.

George Christopher Iverson

George Christopher Iverson