# EXHIBIT 7

**MEMORANDUM OF UNDERSTANDING**
**IMPACTS OF THE REORGANIZATION ON THE BELTSVILLE AGRICULTURAL RESEARCH CENTER AND U.S. NATIONAL ARBORETUM**

BETWEEN:

THE AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES (AFGE) LOCAL 3147

AND

THE BELTSVILLE AGRICULTURAL RESEARCH CENTER (BARC) & US NATIONAL ARBORETUM (USNA), AGRICULTURAL RESEARCH SERVICE (ARS), UNITED STATES DEPARTMENT OF AGRICULTURE (USDA)

**I. <u>General</u>**

A. This Memorandum of Understanding (MOU) is entered into between the Beltsville Agricultural Research Center (BARC) and the U.S. National Arboretum (USNA), United States Department of Agriculture (collectively, the "Agency"), and the American Federation of Government Employees (AFGE) Local 3147 (the “Union”), collectively referred to as "the Parties."

B. This MOU constitutes the agreement between the Parties regarding the relocation of bargaining unit employees (BUE or employee(s)) to their Management Directed Reassignment Location (MDRL) within and outside the National Capital Region (NCR). This MOU supplements but does not supersede the Parties' Collective Bargaining Agreement (CBA) effective March 21, 2025.

**II. <u>Scope and Application</u>**

A. This MOU applies to all BUE of BARC and USNA covered under the CBA and who are impacted by the relocation due to the USDA Reorganization. This MOU supplements the CBA and shall remain in effect from the date of Agency Head Approval (AHA) through the resolution of all matters arising from the reorganization.

**III. <u>General Protections</u>**

A. The Agency does not anticipate a Reduction in Force (RIF) as a result of the relocation and reorganization. In the event that a RIF subsequently occurs, the Agency will fulfill all bargaining obligations under the CBA prior to implementation.

B. Existing reasonable accommodation determinations will not be uniformly rescinded as a result of the relocation. Any reevaluation of existing accommodations will proceed through the interactive process in accordance with applicable law and regulations.

C. Existing Flexible Work Schedules (FWS), which include Maxiflex as outlined in the CBA will not be uniformly rescinded as a result of the relocation. Individual agreements remain in effect unless modified through the procedures set forth in the CBA.

D. In the event of a lapse in fiscal year 2027 appropriations, all funding associated with the relocation is fiscal year 2026 and relocation support will continue.

## IV. Reorganization

A. The Agency confirms that the duties, essential functions, and reporting relationships for bargaining unit employees have not changed and will not change with issuance of a management directed reassignment (MDR) to relocate to the MDRL. A change in duty station location alone does not constitute a change in duties, essential functions, or reporting relationships for the purposes of this MOU.

B. The Agency will provide written notification to the Union prior to any changes in BUE duties, essential functions, and reporting relationships.

C. Changes to position descriptions and work reassignments will be conducted in accordance with applicable articles in the Parties' existing CBA.

1. Any modifications to Performance Plans must adhere to applicable articles in the Parties' existing CBA.
2. The Agency recognizes that simultaneous work and/or home relocation can affect an employee's ability to meet established performance expectations. Accordingly, rating officials will document and account for adjustments to newly assigned and/or modified duties, logistical challenges, and delays in access to necessary resources when evaluating performance during the transition period.
3. The Agency recognizes that employees may require schedule flexibilities in order to reestablish a functioning home and work environment.
4. The supervisor may authorize situational telework on a case-by-case basis.

## V. MDR Letter and Decision Period

A. Upon issuance of the MDR letter, employees will be provided with a minimum of 30 calendar days to respond with a decision to accept or decline the reassignment.

B. Each MDR letter will include, at minimum:

1. The specific location of the reassignment, including street address, city, and state;
2. The REE Reorganization email, and/or all applicable email addresses, for inquiries and relevant links (general questions related to HR, relocation, etc.);
3. Information regarding the Voluntary Early Retirement Authority (VERA) and the Voluntary Separation Incentive Program (VSIP) (eligibility will be determined on a case-by-case basis);
4. An email address in order to be assigned a relocation coordinator;
5. An email address in order to be assigned a retirement and benefits specialist;
6. An email address for the Union (afge.local3147@gmail.com) will be included in the email accompanying the MDR letter.

C. Employees retain the right to change their decision to accept or decline the MDR at any time prior to the Friday before the report date.

D. Employees may utilize the hardship request process to request an extension of the decision period in writing. These requests will be considered on a case-by-case basis under the Department hardship process.

E. If an employee has a Reasonable Accommodation or Hardship Request, they may request an application by sending an email to the REE Reorganization email address and they will be provided with a link to the application.

## VI. Employees Who Decline the Relocation

A. Employees may select a separation or retirement effective date before the report date for the purposes of severance or retirement.

B. An employee who declines the relocation will remain in duty status and receive their regular salary from MDR issuance through: (i) the report date, or (ii) the employee's selected termination or retirement date, whichever is earlier.

C. Nothing in this MOU prevents the Agency from initiating adverse action proceedings prior to the report date in accordance with law, regulation, and the Parties' existing CBA; however, an employee shall not be separated from service before the report date unless the employee authorizes it. Under most circumstances, the SF-50 will reflect voluntary separation.

D. If removal proceedings have not been concluded by the report date, the employee will be placed in an Absent Without Leave (AWOL) status until the adverse action removal has concluded. The employee's FEHB enrollment may continue during this period and the employee will be responsible for paying both the employee and employer premiums.

## VII. Personal Hardship due to MDR

### A. Personal Hardship Scope and Definition

1. A personal hardship is a situation or condition(s) outside of the employee's reasonable ability to control that affects the employee and/or family members as defined in 5 C.F.R. § 630.201.
2. Any employee may request a personal hardship consideration. Personal hardships are situations outside of the employee's reasonable ability to control that affect the employee and/or family member as defined in 5 CFR § 630.201.
3. The provisions of this MOU will not interfere with the rights of employees under any statutes, laws, or regulations as it relates to requests for a Reasonable Accommodation. Unlike a Personal Hardship, Reasonable Accommodations are modifications to a job or existing work environment that enables a qualified person with a disability to perform the duties of their job.
4. Management will provide CTAP and ICTAP information and any relevant documentation to eligible employees.
5. In accordance with the Parties' current CBA, Management will establish a process under which BUE can submit requests for relief from personal hardship arising from their MDR and the Department reorganization.

6. Confidentiality (HIPAA, Privacy Rights, etc.) regarding an employee's hardship situation, application, and documentation will be maintained to the fullest extent possible throughout the entire process. Information shared in connection with a hardship request will not be disclosed beyond individuals required for the purpose of processing the request.
7. After accepting their MDR, employees may submit hardship requests within 30 calendar days of receiving their specific MDR. Until a decision is rendered on the hardship relief, the employee will remain at the current duty station.
8. The Parties agree that every Personal Hardship Request may not be satisfied, however, Management will ensure that every employee is given due consideration of their specific circumstances and how impactful these may be on their ability to perform their duties.
9. If a meeting concerning Personal Hardship or Reasonable Accommodation should occur, employees retain the right to request the presence of a Union representative. The Union may submit written authorization to Management from the employee to request the employee's Personal Hardship and/or Reasonable Accommodation status and any other authorized reorganization related information that would be provided to the employee.
10. Requests submitted after the deadline may be considered at Management's discretion where circumstances have changed or could not reasonably have been identified earlier.
11. Employees may send in a Personal Hardship request for a delayed relocation due to an employee's upcoming retirement.

**B. Requests for a Personal Hardship Consideration**

1. Any BUE who receives an MDR letter may submit a request via REE.reorganization@usda.gov for information on how to submit a Personal Hardship.
2. Personal Hardships will be reviewed through the Department's hardship process and additional documentation from the employee may be requested during the hardship review process.
3. Management will notify the employee in writing normally within 30 calendar days of receipt of their submission. If a hardship decision is not made within the 30-calendar day decision window, Management will adjust the report timeline accordingly.
4. The written initial decision from Management will include:
    a. determination of whether a hardship exists (approval or denial);
        i. if approved, what accommodation(s) will be afforded to the BUE;
    b. the Union email: afge.local3147@gmail.com (located in email body);
    c. Programs for which the employee may qualify (i.e. CTAP, ICTAP, etc.) (located in email body);
5. Employees will remain at their current duty station (BARC) until a final decision is rendered.
6. Whether a Personal Hardship request or Reasonable Accommodation that could delay or prevent relocation is approved or denied, the employee will be provided with a revised report date. The revised date will be the later of either:
    a. the report date provided in the MDR letter; or

b. 60 calendar days after the employee receives a final written hardship determination. During the period a hardship request remains pending, the employee shall not be subject to an AWOL designation or separation (reflected on the SF-50 as an adverse action) solely on the basis of not-reporting to the duty station stated in the MDR.

7. Employees retain the right to submit a Reasonable Accommodation request at the MDRL.

## VIII. Relocation Financial Support

**A.** Employees are encouraged to work with a relocation specialist prior to making any decisions regarding a relocation package.

**B. Election of Relocation Package**

1. Generally, within 30 calendar days of MDR issuance, each accepting employee will elect either:
   a. the traditional Federal Travel Regulation (FTR) relocation package, **OR**
   b. the USDA Lump Sum Relocation Program (LSRP)
2. There will be case-by-case counseling services and tools available, generally prior to the election deadline, to assist employees with the decision-making process.
3. The election is binding once the employee's relocation authorization payment is received.
4. Employees who accept the relocation and receive relocation payment under the FTR or lump sum program shall serve a 12-month service agreement. Employees may serve the agreement with any USDA agency in any duty station or with any other Federal Government Agency. If an employee leaves the Agency before the end of their service agreement, the authorizing official will determine whether repayment is required, taking into account whether circumstances were outside the employee's control. During the service agreement period, employees who accept the lump sum will be responsible for providing proof that they have moved to the new duty station.

**C. Traditional FTR Package (12-month service agreement)**

1. Employees who select the traditional FTR package are entitled to the following:
   a. En route travel expenses, including per diem for the employee and accompanying family members as defined in 41 C.F.R. § 300.103, during travel to the new duty station;
   b. Miscellaneous moving expenses;
      i. $905 (no dependents) or the equivalent of one week's basic gross pay, whichever is the lesser amount, or;
      ii. $1,810 (with dependents) or the equivalent of two weeks' basic gross pay, whichever is the lesser amount.
   c. Household goods shipment of up to 18,000 lbs.;
   d. Storage in transit (SIT) of household goods, for up to 90 calendar days;
   e. One (1) house hunting trip not to exceed 10 calendar days, including rental car;
   f. Sell and buy residence transaction expenses or lease termination expenses;
   g. Up to 10 percent of the actual sales price for the sale of a residence at the old official duty station;

h. Up to 5 percent of the actual purchase price for the purchase of a residence at the new official duty station;
i. Reimbursement for lease-termination expenses at actual cost, with proper documentation;
j. Property management services for up to 12 months;
k. Shipment of one (1) privately owned vehicle (POV);
l. Withholding Tax Allowance (WTA) and Relocation Income Tax Allowance (RITA) payments to offset actual tax liability;
m. 60 calendar days of approved Temporary Quarters Subsistence Expenses (TQSE), with extensions authorized by the Agency up to a maximum of 120 calendar days; extensions beyond 60 calendar days are authorized at the Agency level and will be determined on a case-by-case basis.

## D. Lump Sum Relocation Program (LSRP) and Incentive

1. The USDA Lump Sum Relocation Test is a four-year program that provides eligible employees with one upfront relocation payment, followed, where applicable, by subsequent payment(s) for residence transactions.
   a. The total lump-sum amount will be calculated with a relocation specialist using the employee's situational information.
2. With no relocation incentive there is a 12-month service agreement;
3. With a relocation incentive there is a 24-month service agreement;
   a. The Agency will offer a $20,000 or $15,000 (depending on the state to which the employee is relocated) relocation incentive to employees who select the lump sum relocation program. If the vacancy rate in the MDRL is above the 5% housing vacancy rate threshold for the lump sum authorization, then the employee is not eligible for 60 calendar days of temporary housing and the increased incentive payment will help offset that difference.
   b. Should the employee decline their MDR after receiving incentive funds, the incentive must be paid back to the Agency on a timeline determined on a needs-based basis.
4. The service agreement is transferable to any USDA agency regardless of duty station location. Employees who voluntarily separate or transfer from USDA service prior to completion of their service agreement shall be required to repay the relocation incentive on a pro-rated basis.

## E. Lump Sum Versus Traditional Relocation Allowances

| **Lump Sum Method** | **Traditional Method** |
|---|---|
| **En Route Travel** | |
| Paid using standard per diem rates; no lodging receipts required | Reimbursed for actual lodging costs (with receipts), up to the CONUS rate |
| **Miscellaneous Moving Expenses** | |

| | |
|---|---|
| Flat payment - 905 (single) or 1,810 (with dependents) | Same lump sum or a higher reimbursable amount with documentation (up to one week of salary for singles / two weeks with family) |
| **Household Goods (HHG) Shipment** | |
| Payment is based on USDA's historical averages and scaled by distance and home size; no receipts required | Employee chooses between commuted rate reimbursement or agency-arranged actual expense method |
| **Residence Transactions (Sale, Purchase, Lease Break)** | |
| -Sale: 8% of prior year assessed property value.<br>– Purchase: 3% of the median home price at the new duty station.<br>– Lease Break: 80% of two months' fair market rent.<br>*Documentation required for all.* | - Sale: Up to 10% of actual sale price (allowable expenses).<br>– Purchase: Up to 5% of actual purchase price.<br>– Lease Break: Reimbursement based on itemized, documented expenses |
| **Taxes** | |
| Tax impacts are built in using fixed federal (24%) and state (5%) rates | Employees receive Withholding Tax Allowance (WTA) and Relocation Income Tax Allowance (RITA) payments to offset actual tax liability |
| **Temporary Quarters Subsistence Expense (TQSE)** | |
| Allowed only in housing-constrained markets (vacancy < 5%); 60-day fixed; no receipts required | Reimbursable for up to 120 calendar days; lodging receipts required. Actual expenses reimbursed |
| **Storage of Household Goods (SIT)** | |
| Provided only if TQSE is authorized; amount based on historical averages | Up to 60 calendar days initially, extendable to 150 calendar days with approval |

## F. Situational Telework and Leave for Relocation Purposes

1. Employees may request situational telework to address operational circumstances arising from the relocation transition when telework is more practicable than reporting in person. Situational telework may be appropriate during periods such as temporary housing arrangements or reduced access to the employee's permanent duty workspace. However, situational telework hours are not automatically approved. All situational telework must be specifically requested by the employee and approved by the supervisor's designee.
2. Employees must submit situational telework requests through their agency's established process as per the Parties' existing CBA.
3. Accepting employees will be credited with 80 hours of administrative leave, available for use from the MDR issuance through 60 calendar days after the report date. The 80-hour time allotment may be used to perform any relocation purposes to include but not limited to house hunting purposes, packing, supervising movers, and similar activities. Administrative leave under this Section (Relocation and Financial Support) is separate from, and in addition to, any Leave Without Pay authorized under the reorganization.

4. Employees may request leave with or without pay in excess of the 80-hour administrative leave allotment defined in this Section for relocation purposes at any point after MDR issuance.
5. An accepting employee may also request annual leave or Leave Without Pay (LWOP) for a period of up to 30 calendar days after the report date to allow additional time for any relocation impacts. These requests should be approved unless there is a mission-critical need to decline them.

### G. Report Date and Personnel Action Protections

1. The report date shall not be earlier than October 5th, 2026 or 90 calendar days from the date of the MDR issuance, whichever is later. The effective date shall not be earlier than October 4th, 2026 unless an employee requests this date to be sooner.
2. Personnel actions reflecting the MDRL shall not be processed before the report date, or the employee begins reporting to MDRL, whichever is sooner.
3. The Employee's SF-50 will reflect their current locality pay through the day before the report date, or the day before beginning to report to MDRL whichever is sooner.

### H. Equivalent Relocation Support

1. BUE subject to an MDR who accept a different position within the bargaining unit that is also located in MDRL will receive equivalent relocation support, subject to applicable personnel regulations.
2. The Agency confirms that funding for FTR and LSRP entitlements will be available for employees whose relocation occurs after October 5th, 2026, including those whose relocation is delayed due to an approved Personal Hardship request or pending Reasonable Accommodation determination. The availability of funding shall not limit any employees' entitlement to relocation benefits under this MOU.

## IX. <u>Separation and Retirement Support</u>

### A. VERA/VSIP

1. The Agency will open an election window for the impacted employee from the date of MDR issuance through 30 calendar days after MDR issuance.
2. The maximum Voluntary Separation Incentive Payment (VSIP) is $25,000, pursuant to 5 U.S.C. § 3523(b)(2)(B).

### B. Career Transition Assistance Plan (CTAP)

1. Employees who decline the relocation and receive a notice of proposed removal for declining a directed reassignment to another local commuting area, are entitled to Career Transition Assistance Plan (CTAP) selection priority if they satisfy CTAP candidate requirements and are deemed "well qualified" for the job. Management agrees that open positions advertised by ARS will be open to CTAP candidates resulting from this reorganization beyond the local commuting area.
2. The Agency will provide each declining employee with written documentation supporting involuntary separation status at or before the effective date of separation.

3. Employees who decline the relocation and are separated as a result will be eligible for Interagency Career Transition Assistance Plan (ICTAP) selection priority in accordance with applicable law and regulation.

**C. Career Transition Services**

1. The Agency will provide group information sessions covering CTAP, ICTAP, VSIP, VERA, resume writing, and retirement planning. These sessions will occur on duty time. Employees will reasonably be excused from regular duties to attend training sessions.

2. Consistent with the Parties' existing CBA, and as an appropriate arrangement under 5 U.S.C. § 7106(b)(3) for employees adversely affected by an MDR, employees may use up to eighty (80) hours of duty time for career transition activities — including preparing and updating resumes and job applications, attending employment interviews, contacting potential employers, and reviewing vacancy announcements, beginning at the MDR issuance. Duty time for career transition activities is not subject to prior supervisory approval; employees shall provide reasonable advance notice of their intent to use such time.

**D. Retirement Processing**

1. Retirement counseling contacts will be made available to employees at the time of the MDR issuance.

2. The Agency agrees to provide a retirement processing timeline on the REE AXON page for the portions of the process that are within USDA control.

3. Employees with outstanding Thrift Savings Plan (TSP) loans will receive written notice of the implications of separation prior to their separation effective date.

4. Employees may submit a Personal Hardship request to delay the report or separation date to meet the minimum service and age requirements for an immediate annuity under Federal Employees Retirement System (FERS) or Civil Service Retirement Service (CSRS), including Discontinued Service Retirement under 5 U.S.C. § 8414(b) or § 8336(d). Upon request to the REE.reorganization@usda.gov contact, employees will receive an individualized written retirement readiness assessment from the Agency's benefits specialist within 15 calendar days of the request.

**E. Severance Pay**

1. Employees serving under qualifying appointments, meeting all eligibility requirements who decline the relocation and are separated as a result shall be entitled to severance pay in accordance with 5 U.S.C. § 5595 and 5 CFR Part 550, Subpart G. For purposes of this MOU, the Agency confirms that an employee's declination of a directed reassignment outside of the National Capital Region (NCR) does not constitute a declination of a reasonable offer under 5 CFR § 550.707(a), and no employee shall be disqualified from severance pay on that basis.
2. An employee who elects an earlier separation date (must be after receiving their final decision letter) pursuant to Section 5(a) of this MOU retains full eligibility for severance pay. The election of a separation date shall not be construed as a voluntary separation for purposes of severance pay eligibility.

3. Employees should meet with a benefits specialist concerning their eligibility for severance pay.

## X. Union Access and Communications

A. Union representatives will be allowed to maintain access to employees who remain on campus, facilities, and CBA-granted resources for representational purposes.

B. To the extent practicable, the Agency agrees to provide the Union with advance notice of any and all town halls, all-hands sessions, or agency-wide communications to bargaining unit employees regarding the reorganization, relocation, or individual duty station changes, with an opportunity for the Union to submit questions or responses before those communications are issued.

C. The Agency will provide the Union with written notice of any new bargaining unit positions created as a result of the relocation before the external recruitment period closes.

D. The Union has the right to determine who represents any and all BUE who remain at BARC and USNA for representational functions.

E. The Union may request Official Time for non-BARC/USNA employees to perform representational functions related to the BARC Reorganization.

## XI. Grievance and Enforcement

A. All provisions of this MOU constitute enforceable terms and conditions of employment. Any alleged violation of this MOU by the Agency shall be subject to the grievance and arbitration procedure set forth in the Parties' existing CBA. Time limits for filing a grievance under the Parties' existing CBA shall begin from the date the Union or the affected employee knew or reasonably should have known of the alleged violation.

B. Nothing in this MOU waives or limits any right of the Union or any BUE under applicable law, including rights under 5 U.S.C. Chapter 71, the Rehabilitation Act, or any other law governing federal employment.

C. This MOU may not be modified, waived, or superseded except by a written agreement signed by the authorized representatives of both Parties. No verbal agreement, informal understanding, or past practice shall constitute a modification of this MOU.

D. If any provision of this MOU is determined to be invalid or unenforceable under applicable law or regulation, that provision shall be severed, and the remaining provisions shall remain in full force and effect. Upon severance, the Parties agree to bargain in good faith over a lawful replacement provision.

## XII. Effective Date and Duration

A. This MOU becomes effective upon Agency Head Approval (AHA) and shall remain in effect through the resolution of all matters arising from the relocation of bargaining unit employees covered by this agreement, unless terminated earlier by mutual written agreement or extended by mutual written agreement of the Parties.

B. Upon approval of this MOU, the Parties will provide a joint training session on the provisions of this agreement which will be recorded for staff who are unavailable. The training will be conducted at a mutually agreed date and time.

## XIII. Access and Security

A. The Parties agree Management retains the right and responsibility to determine the internal security practices of the Agency during this reorganization process. To this end, Management will continue to

provide appropriate and adequate access to the campus, security and safety infrastructure and resources to employees remaining at BARC until all USDA employees have vacated the campus. Management may require employees to move to alternative buildings on the BARC campus in accordance with appropriate laws, regulations, and the Parties' existing CBA in order to provide adequate safety and security.

**XIV. <u>Decommissioning</u>**

A. If assigned duties are substantially changed, Position Descriptions (PD) must be modified and properly classified to reflect the duties and tasks performed by Bargaining Unit Employees remaining at BARC.

B. Employees affected by this relocation and are selected to remain at BARC for decommissioning are covered by all protections in the CBA and this MOU.

C. Decommissioning employees will receive current, relevant, and timely training, access to required tools, equipment, technology, and safety resources necessary for their assigned duties.

D. The Parties agree that it is essential for employees in a decommissioning status to properly perform the functions of their positions and the duties necessary for the safe and lawful shutting down of the BARC campus. The Parties will therefore bargain in good faith over the impact and implementation of any and all aspects of the decommissioning of BARC. If changes are made prior to the completion of pre-impact and implementation bargaining, the Parties will engage in post-impact and implementation bargaining in accordance with the Statute unless the Union does not submit a demand to bargain as per the Parties' existing CBA.

E. The Union will be provided electronically with any and all policies and procedures as it relates to the decommissioning of BARC within 10 calendar days of issuance. The Union may request Position Descriptions consistent with the Parties' existing CBA.

F. All impacted BUEs retain the right to request a desk audit consistent with Article 27, Section 3 of the CBA.

**For the Agency:**

BRYCE ONNEN Digitally signed by BRYCE ONNEN Date: 2026.07.02 16:11:01 -04'00'

**Bryce R. Onnen**

**Agency Chief Negotiator**

**LMER Specialist, APHIS**

**For the Union:**

ASHAKI MITCHELL Digitally signed by ASHAKI MITCHELL Date: 2026.07.02 16:21:38 -04'00'

**A. Teddi Mitchell**

**Union Chief Negotiator**

**Vice President, AFGE Local 3147**

**Date of Agreement: July 2, 2026**