# EXHIBIT 13

WESTERN GOVERNORS' ASSOCIATION

SPENCER COX
GOVERNOR OF UTAH
CHAIR

JOSH GREEN, M.D.
GOVERNOR OF HAWAI'I
VICE CHAIR

JACK WALDORF
EXECUTIVE DIRECTOR

June 18, 2026

The Honorable Brooke Rollins
Secretary
U.S. Department of Agriculture
1400 Independence Avenue SW
Washington, DC 20250

Dear Secretary Rollins:

Western Governors embrace the recent decision to restructure the U.S. Forest Service (USFS) and move agency leadership closer to the communities it serves. Improving state-federal communication and coordination is a goal that transcends party lines, and it is among the Governors' highest priorities as described in WGA Policy Resolution 2024-01, Strengthening the State-Federal Relationship, which is attached.

State-federal communication and coordination is enabled, in part, through close working relationships between agency staff and their state counterparts. For this reason, Western Governors previously recommended that USFS consider establishing state director positions, replicating the successful organizational model used by other agencies within the U.S. Department of Agriculture (USDA) and the Department of the Interior. This state-based model will ensure strong communication between the agency and states and territories, and promote coordination on forest and rangeland management, recreational use, and wildfire mitigation and response. USFS state directors will also provide a conduit for collaborative management under the Shared Stewardship agreements executed between states and USDA.

A state-based organizational model requires close partnership with the states, and Western Governors are committed to working alongside the agency as we collectively navigate this transformational change. Thank you for your leadership, and Western Governors stand ready to assist you with this and other USDA priorities in our states and territories.

Sincerely,

Spencer Cox
Governor of Utah
Chair, WGA

Josh Green, M.D.
Governor of Hawai'i
Vice Chair, WGA

Attachment

# Policy Resolution 2024-01

# Strengthening the State-Federal Relationship

**A. BACKGROUND**

1. Western Governors are proud of their unique role in governing and serving the citizens of this great nation. As the chief elected officials of sovereign states, they bear enormous responsibility and have tremendous opportunity. Moreover, the faithful discharge of their obligations is central to the success of the Great American Experiment.

2. It was the states that confederated to form a more perfect union by creating a national government with specific responsibilities for common interests. In this union, the states retained their sovereignty and much of their authority.[1]

3. Under the American version of federalism, the powers of the federal government are narrow, enumerated and defined. The powers of the states, on the other hand, are vast and indefinite and encompass all powers of governance not specifically bestowed to the federal government by the U.S. Constitution. This principle is memorialized in the Tenth Amendment, which states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

4. This reservation of power to the states respects the differences between regions and peoples, recognizes a right to self-determination at a local level, and provides for flexible, tailored solutions to policy challenges. It also requires the federal government to engage with states – our nation's dynamic laboratories of democracy – on a government-to-government basis befitting their co-sovereign status.

5. In addition to states' reserved sovereign authorities, Congress has recognized state authority in federal statute by: (1) directing the federal government to defer to state authority, including such authority over land and water use, education, domestic relations, criminal law, property law, local government, taxation, and fish and wildlife; and (2) delegating federal authority to states, including the regulation of water quality, air quality, and solid and hazardous waste.

6. Executive Order 13132, Federalism, reinforces these constitutional, statutory, and judicial principles and directs federal agencies to have an accountable process to ensure meaningful and timely input from state officials in developing policies with federalism implications.

7. The relationship between state and federal authority is complex and multi-dimensional. There are various contexts in which these authorities manifest and intersect:

[1] The U.S. Supreme Court has confirmed that, "[d]ual sovereignty is a defining feature of our Nation's constitutional blueprint" and "States entered the Union with their sovereignty intact." *See, e.g., Sossamon v. Texas*, 563 U.S. 277, 283 (2011).

a) **State Primacy** – All powers not specifically delegated to the federal government in the Constitution. In the absence of Constitutional delegation of authority to the federal government, state authority should be presumed sovereign. *Examples: groundwater, wildlife management (outside of the Endangered Species Act), natural resources management, electric transmission siting.*

b) **Shared State-Federal Authority** – Fact patterns in which federal authority and state primacy intersect. *Examples: wild horses and burros on federal lands, interstate water compacts.*

c) **Federal Authority Delegated to States** – Federal authority that Congress has delegated to states by statute. Many such statutes require federal agencies to set federal standards (and ensure those standards are met) but authorize states to implement those standards. *Examples: water and air quality, solid and hazardous waste.*

d) **Federal Statutory or Other Obligations to States** – Where the federal government has a statutory, historical, or moral obligation to states. *Examples: Payments in Lieu of Taxes; Secure Rural Schools Act; shared mineral royalties; agreements to clean up radioactive waste that was generated by federal nuclear weapons production.*

e) **Exclusive Federal Authority** – Powers enumerated in the Constitution as exclusive powers of the federal government. In areas of exclusive federal authority, state law can be preempted if Congress clearly and unambiguously articulates an intent to occupy a given field or to the extent it conflicts with state law. *Examples: national defense, production of money.*

8. In contravention of the Founders' design, the balance of power has shifted toward the federal government and away from the states. Increasingly prescriptive regulations tie the hands of states and local governments, dampen innovation, and impair on-the-ground problem-solving. Failures of the federal government to consult with states reflect insufficient appreciation for local knowledge, preferences, and competencies. In many cases, these federal actions encroach on state legal prerogatives, neglect state expertise, and/or infringe on state authority.

9. The federal government often requires states to execute policy initiatives without providing the funding necessary for their implementation. State governments cannot function as full partners if the federal government requires them to devote their limited resources to compliance with unfunded federal mandates.

10. State authority and autonomy is also eroded when prescribed federal policies become effectively mandatory through the contingency of federal funding streams that states depend on to deliver critical services.

11. Too often, federal agencies: solicit input from states after a decision is already made or a public process is started; ask states to provide feedback on a proposed action without providing details or documents regarding what the agency is proposing; or do not respond to state input or incorporate feedback from states into their decisions. This does not afford states with the respect and communication required by law, and states currently have no

recourse for an agency's failure to consult except for litigation on the merits of a federal decision.

12. Congress and Executive Order 13132 currently require federal agencies to document the effects of their actions on states in certain circumstances. In practice, federal agencies rarely prepare these prescribed federalism assessments or statements. Even when federal agencies prepare such documents, they are not ordinarily informed by input from affected states. In addition, these documentation requirements only apply at the end of the rulemaking process and cannot substitute for early and meaningful consultation with states.

13. Federal agencies have suggested to states that there are legal or other barriers to state consultation, such as: federal agency policies restricting *ex parte* communications; concerns about the applicability of Federal Advisory Committee Act (FACA) procedures to meetings between state and federal officials; and issues with sharing information that would otherwise be exempt from disclosure under the Freedom of Information Act (FOIA).

14. Federal agencies do not adequately incorporate state data and expertise into their decisions. This can result in duplication, inefficiency, and federal decisions that do not reflect on-the-ground conditions. Consideration and incorporation of state, tribal, and local data and analysis will result in federal actions that are better-informed, more effectively coordinated among all levels of government, and tailored to the communities they affect.

15. Many of these issues stem from a profound misunderstanding throughout the federal government regarding the role and legal status of states. Over the past several years, Western Governors have worked to improve the federal government's understanding of state sovereignty, authority, and state-federal consultation; meaningful structural change, however, has yet to occur.

## B. GOVERNORS' POLICY STATEMENT

1. A good faith partnership between states and the federal government will result in more efficient, economic, effective, and durable policy, benefiting the Governors' and the federal government's shared constituents and resulting in a nation that is stronger, more resilient, and more united.

2. Improving state-federal communication and coordination is a goal that transcends party lines, and it is among the Governors' highest priorities. The Governors urge Congress and the Executive Branch to make fundamental changes to realign and improve the state-federal paradigm.

### *State Sovereignty and Authority*

3. States are co-sovereigns with the federal government pursuant to the Tenth Amendment of the U.S. Constitution and other federal law. Congress and federal agencies must recognize state sovereignty and must not conflate states with other entities or units of government. States should not be treated as stakeholders or members of the public.

4. State authority is presumed sovereign in the absence of Constitutional delegation of authority to the federal government.

a) Federal legislative and regulatory actions should be limited to issues of national significance or scope, pursuant to federal constitutional authority. Preemption of state laws should be limited to instances of necessity.

b) Where Congress preempts state law (acting pursuant to federal constitutional authority), federal law should accommodate state laws, regulations, and policies before its enactment and permit states that have developed alternate standards to continue to enforce and adhere to them.

c) Federal agencies should construe federal law to preempt state law only when a statute contains an express preemption provision or there is some other compelling evidence that Congress intended to preempt state law.

5. Congress and federal agencies should respect the authority of states to determine the allocation of state administrative and financial responsibilities in accordance with state constitutions and statutes. It should further:

a) Ensure that federal government monitoring is outcome-oriented;

b) Minimize federal reporting requirements; and

c) Refrain from dictating state or local government organization.

6. When a state is meeting the requirements of a delegated program, the role of a federal agency should be limited to the provision of funding, technical assistance and research support. States should have the maximum discretion to develop implementation and enforcement approaches within their jurisdiction without federal intervention. Federal agencies should recognize and credit states' proactive actions.

7. Congress and federal agencies should avoid imposing unfunded federal mandates on states. In addition:

a) Federal assistance funds, including funds that will be passed through to local governments, should flow through states according to state laws and procedures;

b) States should have the flexibility to transfer a limited amount of funds from one grant program to another and to coordinate the administration of related grants;

c) Federal funds should provide maximum state flexibility without specific set-asides; and

d) Governors should have the authority to require coordination among state executive branch agencies, or between levels or units of government, as a condition of the allocation or pass-through of funds.

8. Congress and the Executive Branch should create or re-establish entities to discuss and act on federalism issues, in consultation with states. These entities should have the ability and resources to make recommendations to improve the state-federal relationship and include states in their membership or actively involve states in their discussions.

***State-Federal Consultation***

9. Federal agencies must engage in consultation with states on a government-to-government basis in accordance with states' legal status. Congress should clarify and promote the need for state-federal consultation.

10. Improving state-federal consultation will result in more effective, efficient, and long-lasting federal policy for the following reasons:

    a) Governors have specialized knowledge of their states' environments, resources, laws, cultures, and economies that is essential to informed federal decision making;

    b) Federal agencies can reduce duplication through the use and incorporation of state expertise, data, and documentation;

    c) Authentic communication and information exchange will help federal agencies determine whether an issue is best addressed at the federal level; and

    d) Through meaningful dialogues with affected states, federal agencies can also avoid unintended consequences and address or resolve state concerns.

11. Each Executive department and agency should have a clear and accountable process to provide each state – through its Governor or their designees – with early, meaningful, substantive, and ongoing consultation in the development of federal policies that affect states. The extent of the consultation process should be determined by engaging with affected states. At a minimum, this process must involve:

    a) Conducting consultation through federal representatives who can speak or act on behalf of an agency;

    b) Inviting states to provide input outside of a public process and before proposals are finalized;

    c) Enabling states to engage with federal agencies on an ongoing basis to seek refinements to proposed federal actions prior to finalization;

    d) Providing robust information and documents (including non-final, non-public, draft, and supporting documents) about potential federal actions, including proposed rules, to Governors or their designees;

    e) Addressing or resolving, where possible, state issues, concerns, or other input unless precluded by law;

    f) Documenting how state concerns were resolved or why they were unable to be resolved in final decisions; and

    g) Making reasonable efforts to achieve consistency and avoid conflicts between federal and state objectives, plans, policies, and programs.

12. Governors affirm their reciprocal role in advancing a clear, predictable, timely, and accountable consultation process. Governors or their designees must continue to provide clear expectations for the appropriate scope and scale of consultation and must work with federal agencies to make consultation processes as efficient as practicable. As chief executives, Governors must also ensure the views of the state are clearly and consistently conveyed throughout the consultation process by prioritizing significant issues and resolving competing viewpoints across state government.

13. In many cases, federal agencies are required – whether by statute, executive order, regulation, policy, or other mandate – to consult, cooperate, and coordinate with states before taking action. However, due to states' unique legal status, the need for federal-state engagement is not limited to express directives and should extend to any federal actions that may have direct effects on states, on the relationship between the federal government and states, or on the distribution of power or responsibilities among the various levels of government. Federal agencies should consult with states regarding what types of agency actions typically affect states and the extent of consultation required for these types of actions.

    a) These actions include the implementation of federal statutes and the development, prioritization, and implementation of agency policies, rules, programs, reviews (e.g., Governor's Consistency Reviews), plans (e.g., resource management plans), budget proposals and processes, strategic planning efforts (e.g., reorganization), and federal litigation or adjudication that affects states.

    b) When a federal agency proposes to enter into any agreement or settlement that affects states, the agency should provide all affected Governors or their designees with notice of the proposal and consult with, and seek the concurrence of, Governors or their designees who respond to the notice.

14. Congress and the Executive Branch should require federal agencies to promulgate regulations in consultation with Governors, setting forth their procedures to ensure meaningful, substantive consultation with states on federal actions that affect states. This direction should also clarify that, for rulemakings affecting states:

    a) An agency's satisfaction of rulemaking requirements under the Administrative Procedure Act (including the solicitation of public comments) does not satisfy an agency's obligation to consult with states; and

    b) Consultation should occur before publication of a notice of proposed rulemaking or before an advanced notice of proposed rulemaking is submitted to the Office of Management and Budget (OMB).

15. Congress and the Executive Branch should consider the following additional accountability measures:

    a) Requiring the designation of a federalism official with the responsibility for implementing state-federal consultation and publish this official's name, title, and contact information on the agency's website;

b) Requiring OMB to regularly submit a report to Congress and Governors on state-federal consultation and implementation of agency consultation rules;

c) Requiring federal agencies to provide a summary of their efforts to consult with states, including a discussion of state input and how that input was considered or addressed, in any proposed and final rules;

d) Creating a process where Governors can notify OMB of an agency's failure to consult or comply with their consultation procedures; and

e) Providing an opportunity for Governors or their designees to seek judicial review of an agency's failure to consult.

16. Congress and the Executive Branch could make federalism reviews more effective by:

a) Working with Governors to develop specific criteria and consultation processes for initiating and performing these reviews.

b) Providing Governors with an opportunity to comment on federalism assessments before any covered federal action is submitted to OMB for approval.

17. Congress and federal agencies should take the following actions to clarify that *ex parte* policies, FACA, and FOIA are not barriers to consultation:

a) Federal agencies should (and Congress should require them to) clearly identify and provide rationale for any perceived barriers to consultation;

b) Federal agencies should clarify that consultation with state officials does not qualify as *ex parte* communications and that *ex parte* communications are not prohibited at any point during an informal rulemaking process;

c) Congress should clarify that meetings held exclusively between federal personnel and state elected officials or their designees acting in their official capacities or in areas of shared responsibilities or administration (and not for the purpose of obtaining collective advice) do not qualify as requiring compliance with FACA procedures; and

d) Congress should clarify that FOIA's exemptions apply to federal records shared or exchanged with states (as if those records were shared, exchanged, or created solely within the federal government) and create a statutory exemption to FOIA disclosure for state records in instances where publication of state records provided to federal agencies would violate existing state law.

***State Data and Expertise***

18. Federal agencies should utilize state data, expertise, and science in the development of federal actions that affect states.

19. Congress and the Executive Branch should, subject to existing state requirements for data protection and transparency, require agencies to incorporate state and local data and expertise into their decisions. This data should include scientific, technical, economic, social, and other information on the issue the agency is trying to address.

20. States merit greater representation on all relevant committees and panels advising federal agencies on scientific, technological, social, and economic issues that inform federal regulatory processes.

***Local Agency Decision-Making Authority***

21. Regional, state, and local federal agency offices, and their staff, serve as experts in the specific geographic areas in which they serve. These offices are also usually more attuned to the needs of their state partners. However, these offices are not typically entrusted to make strategic decisions on federal policies and programs affecting their areas and impacting the constituents being served. The knowledge of these local federal agency offices should be utilized to ensure federal policies are carried out in a manner that truly benefits the surrounding communities. Western Governors encourage local federal agency offices to continue developing relationships with their state counterparts in order to further promote and improve state-federal coordination. Furthermore, federal agencies should engage in enhanced cooperation with their local agency offices and empower such offices with decision-making authority to ensure federal programs can be deployed in a manner that reflects the nuanced needs of the surrounding communities.

**C. GOVERNORS' MANAGEMENT DIRECTIVE**

1. The Governors direct WGA staff to work with congressional committees of jurisdiction, the Executive Branch, and other entities, where appropriate, to achieve the objectives of this resolution.

2. Furthermore, the Governors direct WGA staff to consult with the Staff Advisory Council regarding its efforts to realize the objectives of this resolution and to keep the Governors apprised of its progress in this regard.

*This resolution will expire in December 2026. Western Governors enact new policy resolutions and amend existing resolutions on a semiannual basis. Please consult westgov.org/resolutions for the most current copy of a resolution and a list of all current WGA policy resolutions.*