BRETT A. SHUMATE
Assistant Attorney General
BRAD P. ROSENBERG
Chief Litigation Counsel
TAYLOR PITZ (CA Bar No. 332080)
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5200
Taylor.N.Pitz@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | Case No. 3:26-cv-09976-VC<br><br>**DEFENDANTS' RESPONSE TO AMICI CURIAE STATES**<br><br>Hearing Date: September 29, 2026<br>Time: 10:00 am PT<br>Judge: Hon. Vince Chhabria<br>Place: San Francisco Courthouse<br>Courtroom 3, 17th Floor |

## INTRODUCTION

For all the reasons set forth in Defendants' opposition brief, ECF No. 71, the Court should deny Plaintiffs' motion for a preliminary injunction, ECF No. 5. Defendants provide this further response to the brief of Amici Curiae States, ECF No. 64 ("Am. Br.").

Defendants agree with Amici that the United States Department of Agriculture ("USDA" or "the Department") provides the American public with valuable services through the many programs it administers. But USDA's present reorganization will improve—not degrade—the quality of those services. USDA has tasked each of its mission areas and staff offices with developing its own reorganization implementation plan "tailored to its distinct mission, statutory obligations, and operational and practical requirements," and accordingly, "does not expect that any services will be disrupted by the reorganization." Declaration of Mary Pletcher Rice ¶ 25, ECF No. 71-1 ("Rice Decl."). Further, no more than 2.1% of USDA employees may be subject to relocation under the current reorganization. *Id.* ¶ 63. Even assuming that not all employees subject to relocation will choose to relocate, neither Plaintiffs nor Amici have shown that potential attrition will be significant enough to trigger the many cascading effects they posit. Accordingly, Amici's claimed harms are speculative and provide no further support for Plaintiffs' motion.[1] Defendants respond to Amici's specific arguments as follows.

## ARGUMENT

### I. U.S. Forest Service

Defendants strongly agree with Amici about the importance of preventing and responding to catastrophic forest fires in order to protect our public lands, Am. Br. at 2-6, but disagree that the agency's reorganization will compromise the Forest Service's ability to assist its State and local partners in that critical work. As Defendants have explained, no more than 250 Forest Service employees may be subject to relocation outside their current commuting area—just .75% of the Service's 33,500 employee workforce, inclusive of both fire and non-fire positions. Rice Decl.

[1] And, of course, "Plaintiffs seeking injunctive relief must show that *they themselves* are likely to suffer irreparable harm absent an injunction," *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 822 (9th Cir. 2018) (emphasis added), and cannot rely on generalized harms or those alleged by non-parties. *See also Winter v. NRDC*, 555 U.S. 7, 22 (2008) (explaining an "applicant must demonstrate that in the absence of a preliminary injunction, *the applicant* is likely to suffer irreparable harm" (citation modified)).

¶ 165; *see also id.* ¶ 171 (explaining in FY 2026 Forest Service onboarded 5,746 new employees, including 3,796 fire-related positions). Any attrition, then, is unlikely to be substantial enough to impact the Forest Service's firefighting capabilities in terms of either manpower or expertise. And as explained in the Rice Declaration, given the Forest Service's enduring financial struggles, the present reorganization is essential to ensure that the Forest Service can continue to provide critical services like wildfire prevention and firefighting. *See id.* ¶¶ 163-93; *see also* Ex. 13 to Walker Decl., Letter from the Western Governors' Association at 1, ECF No. 75-1 ("Western Governors embrace the recent decision to restructure the U.S. Forest Service," because it "will ensure strong communication between the agency and states and territories, and promote coordination on forest and rangeland management, recreational use, and wildfire mitigation and response."); Ex. 14 to Walker Decl., USDA, *The Forest Service Breaking Point* at 1, ECF No. 75-2 (describing the Forest Service as "at a financial breaking point"). The Forest Service's fire resources at the Forest and District levels will remain in place and in their existing structure under this realignment. Rice Decl. ¶¶ 171, 177, 183.

**II. Agricultural Research Service**

Amici also cite potential impacts of reorganization on the Agricultural Research Service ("ARS"), highlighting the closure of the Beltsville Agricultural Research Center ("BARC") in particular. Am. Br. at 6-10. USDA fully appreciates the value of the important research performed by ARS researchers, which is in part why it has made the decision to close BARC.

The present state of the BARC facility is incompatible with producing the groundbreaking research for which it is known. *See* Rice Decl. ¶¶ 101-32. The fact is that "[n]early half of all structures [at BARC] are in advanced states of disrepair and are already slated for demolition, including facilities damaged by flooding, long abandoned research buildings, and structures over-taken by vegetation." *Id.* ¶ 103. Indeed, over the past few years, BARC's deteriorating infrastructure has been the subject of a Special Counsel investigation. Plaintiff AFGE filed a whistleblower complaint bringing this issue to USDA's attention, *see, e.g.*, Ex. 17 to Walker Decl., Office of Special Counsel Report on BARC Documents, at 74-87, 93-94, ECF No. 76-1, alleging that "the unsafe and deteriorating conditions at BARC have resulted in the loss and improper handling of

scientific equipment, research, and data," *id.* at 95, and the "agency investigation largely substantiated" those allegations, "finding pervasive safety deficiencies in many of the facilities and structures at BARC, including a general lack of housekeeping; excessive dirt and grime; flaking and peeling paint; damaged flooring; active and post flooding and other water intrusions; mold; and a lack of potable water," as well as that "the condition of the facilities damaged scientific equipment, derailed and delayed research studies, and resulted in increased costs to research operations at BARC," *id.* at 96; *see generally* Ex. 18 to Walker Decl., ECF No. 76-2 (photographs documenting BARC conditions). Given these challenges, USDA has determined that BARC would require a "one-time investment of approximately $661.5 million," Rice Decl. ¶ 105, but in FY 2026, Congress did not appropriate sufficient funds to revitalize BARC, and there is also "at least a 25 percent annual funding gap between the need and available funding," for not just BARC, but ARS and all of its 91 research locations, *id.* ¶ 106; *see also* ECF No. 76-1 at 97 ("The agency concluded that many of the problems at BARC have accumulated over decades due to inadequate funding from Congress to repair, maintain, and modernize BARC."). Without adequate funding to remediate BARC, ARS has made the decision to relocate BARC research, "selecting sites based on access to enhanced research infrastructure and alignment with complementary research projects." Rice Decl. ¶ 129.

In FY 2026, Congress not only appropriated insufficient funding for the BARC facility, but also "defunded 9 BARC research projects and partially defunded 8 ARS research projects." Rice Decl. ¶ 107. This jeopardized the salaries of the researchers working on those projects. To try to retain the affected researchers, ARS is in the process of reassigning them to vacant positions and other research projects across ARS, basing reassignments on their individual skills and expertise. *Id.* ¶ 108. Unless ARS is able to "reassign these researchers to funded projects," however, ARS may be "unable to continue supporting their salaries." *Id.* ¶ 126.

In sum, Defendants share Amici's concerns about preserving ARS's ability to produce groundbreaking agricultural research, which is why Defendants cannot permit such research to be compromised by unsafe conditions at a wholly unsuitable facility that has been underfunded for years, and which is why Defendants are taking all possible measures to retain researchers so that

ARS can continue to benefit from their skill and expertise, despite changes in research funding.

Amici also briefly mention the relocation of employees at the Economic Research Service ("ERS") and the National Institute of Food and Agriculture ("NIFA"). Am. Br. at 9. As to ERS and NIFA, Defendants note that Plaintiffs and Amici have not established that any attrition is likely to be so substantial that it will have any damaging impact on the Research, Education, and Economics mission area. *See* Rice Decl. ¶ 68 (explaining only approximately 11% of REE employees have been issued MDR letters and currently approximately 64% of those employees have accepted relocation).

**III. Food and Nutrition Administration**

Finally, Amici cite concerns about the reorganization's potential impacts on the Food and Nutrition Administration ("FNA"). Am. Br. at 10-12. As Amici note, however, "[n]early all of FNA's critical nutrition-assistance programs are operated as federal-state partnerships," and while "FNA funds these national food and nutrition programs, states effectuate them," with "State and local governments manag[ing] day-to-day program implementation and benefits distribution." *Id.* at 10. FNA personnel do not implement those programs themselves, but provide "technical support," and "program administration guidance." *Id.* While important, FNA's role in administering these programs is thus simply too limited to assume that any change in FNA staffing will necessarily result in State "residents . . . experienc[ing] delays in receiving critical nutrition benefits," as Amici contend. *Id.* at 12. This is particularly the case because Plaintiffs and Amici have not established that FNA is likely to experience substantial attrition as a result of the reorganization. *See* Rice Decl. ¶¶ 63, 66 (no more than 2,000 employees will be subject to relocation and 750 employees in mission areas or staff offices other than FNA have already been issued MDR letters); *id.* ¶ 72 ("USDA has provided notices of duty station changes to 366 employees in [FNA] for local office reassignments" within the National Capital Region, and "FNA has agreed with NTEU that these employees will not be relocated from the NCR for a minimum of 30 months").

## CONCLUSION

For the reasons above and the reasons set forth in Defendants' opposition brief, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

Dated: September 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

BRAD P. ROSENBERG
Chief Litigation Counsel

*/s/ Taylor Pitz*
TAYLOR PITZ
CA Bar No. 332080
Trial Attorney
Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-5200
Taylor.N.Pitz@usdoj.gov

*Counsel for Defendants*