Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Corinne F. Johnson (SBN 287385)
Jessica M. Levy (SBN 368289)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

*Attorneys for All Union and Non-Profit Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture,<br><br>Defendants. | Case No. 3:26-09976<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND STAY UNDER 5 U.S.C. §705** |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

1. Relocations and Closures Are Reviewable Final Agency Action ....................... 2

2. The Challenged Actions Are Not Committed to Agency Discretion .................. 3

3. The CSRA Does Not Impliedly Preclude this Court's Jurisdiction..................... 4

4. The Antideficiency Act Does Not Impliedly Preclude Jurisdiction .................... 7

5. USDA Is Violating Express Statutory Prohibitions........................................... 10

7. USDA's Failure to Consider the Impacts of Attrition Is Arbitrary and Capricious ......................................................................................................... 14

8. USDA is Causing Irreparable Harm ................................................................. 17

9. The Balance of the Equities Strongly Supports Preliminary Relief .................. 19

10. Scope of Relief, Stay, and Bond ....................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFGE v. OPM*,
770 F.Supp.3d 1215 (N.D. Cal. 2025) ....................10

*AFGE v. OPM*,
771 F.Supp.3d 1127 (N.D. Cal. 2025) ....................4

*AFGE v. OPM*,
799 F.Supp.3d 967 (N.D. Cal. 2025) ....................4

*AFGE v. Pierce*,
697 F.2d 303 (D.C. Cir. 1982) ....................12

*AFGE v. Trump*,
139 F.4th 1020 (9th Cir. 2025) .................... *passim*

*AFGE v. Trump*,
178 F.4th 456 (9th Cir. 2026) ....................4

*AFGE v. Trump*,
2025 WL 2614698 (N.D. Cal. Sept. 9, 2025) ....................4

*AFGE v. Trump*,
2026 WL 1848074 (N.D. Cal. June 26, 2026) ....................4

*AFGE v. Trump*,
784 F.Supp.3d 1316 (N.D. Cal. 2025) ....................20

*AFSCME v. OMB*,
806 F.Supp.3d 1093 (N.D. Cal. 2025) ....................9

*AFSCME v. OMB*,
807 F.Supp.3d 1004 (N.D. Cal. 2025) ....................4, 9, 10

*Alaska Airlines, Inc. v. Brock*,
480 U.S. 678 (1987) ....................11

*Am. Hosp. Ass'n v. Becerra*,
596 U.S. 724 (2022) ....................5, 8

*Aracely, R. v. Nielsen*,
319 F.Supp.3d 110 (D.D.C. 2018) ....................3

*Arrington v. Daniels*,
516 F.3d 1106 (9th Cir. 2008) ....................14

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ........ 5

*Block v. Community Nutrition Institute*,
467 U.S. 340 (1984) ........ 5, 8

*Bowen v. Michigan Acad. of Fam. Physicians*,
476 U.S. 667 (1986) ........ 5, 6, 9

*BP P.L.C. v. Baltimore*,
593 U.S. 230 (2021) ........ 13

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ........ 8

*City of New Haven v. United States*,
809 F.2d 900 (D.C. Cir. 1987) ........ 12

*Cmty. Legal Servs. in E. Palo Alto v. HHS*,
780 F.Supp.3d 897 (N.D. Cal. 2025) ........ 16

*Def. Language Inst. v. FLRA*,
767 F.2d 1398 (9th Cir. 1985) ........ 7

*Dep't of Comm. v. New York*,
588 U.S. 752 (2019) ........ 5

*Dep't of State v. AIDS Vaccine Advoc. Coal.*,
146 S.Ct. 19 (2025) ........ 9, 10

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ........ 14, 16

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ........ 9

*Eldridge v. Howard*,
70 F.4th 543 (9th Cir. 2023) ........ 14

*Elgin v. DOT*,
567 U.S. 1 (2012) ........ 5

*Enyart v. Nat'l Conf. of Bar Examiners, Inc.*,
630 F.3d 1153 (9th Cir. 2011) ........ 18

*Fed. Power Comm'n v. Texaco, Inc.*,
417 U.S. 380 (1974) ........ 14

*Feds for Med. Freedom v. Biden*,
63 F.4th 366 (5th Cir. 2023) ........ 6

*FLRA v. DOJ*,
994 F.2d 868 (D.C. Cir. 1993) ....... 6

*Hartranft v. Encore Cap. Grp., Inc.*,
543 F.Supp.3d 893 (S.D. Cal. 2021) ....... 20

*Heckler v. Chaney*,
470 U.S. 821 (1985) ....... 3

*HHS v. FLRA*,
844 F.2d 1087 (4th Cir. 1988) ....... 7

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
816 F.3d 550 (9th Cir. 2016) ....... 13

*Immigrant Defs. L. Ctr. v. Noem*,
145 F.4th 972 (9th Cir. 2025) ....... 3

*Jajati v. U.S. Customs & Border Prot.*,
102 F.4th 1011 (9th Cir. 2024) ....... 4

*Lamie v. U.S. Tr.*,
540 U.S. 526 (2004) ....... 11

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ....... 4, 10

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ....... 4, 13

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ....... 2, 3

*Mach Mining, LLC v. EEOC*,
575 U.S. 480 (2015) ....... 5, 8

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) ....... 5, 9

*Morales-Izquierdo v. Gonzales*,
486 F.3d 484 (9th Cir. 2007) ....... 14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ....... 14

*Nat'l Fed'n of Indep. Bus. v. DOL*,
595 U.S. 109 (2022) ....... 10

*Nat'l Mining Ass'n v. Zinke*,
877 F.3d 845 (9th Cir. 2017) ....... 12

*New York v. Kennedy*,
155 F.4th 67 (1st Cir. 2025)....................5

*New York v. Trump*,
133 F.4th 51 (1st Cir. 2025)....................2

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)....................2

*Oklahoma v. Castro-Huerta*,
597 U.S. 629 (2022)....................13

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*,
128 F.4th 1089 (9th Cir. 2025)....................3

*Quechan Tribe of Fort Yuma Indian Rsrv. v. DOI*,
755 F.Supp.2d 1104 (S.D. Cal. 2010)....................19

*Rapanos v. United States*,
547 U.S. 715 (2006)....................14

*S.F. Herring Ass'n v. DOI*,
946 F.3d 564 (9th Cir. 2019)....................3

*Sackett v. EPA*,
566 U.S. 120 (2012)....................3, 8

*Seila L. LLC v. CFPB*,
591 U.S. 197 (2020)....................13

*Sierra Club v. Trump*,
963 F.3d 874 (9th Cir. 2020)....................10

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)....................5, 6, 7

*Train v. City of New York*,
420 U.S. 35 (1975)....................10

*Trump v. Int'l Refugee Assistance Project*,
582 U.S. 571 (2017)....................9

*Trump v. Sierra Club*,
588 U.S. 930 (2019)....................9

*United States v. Fausto*,
484 U.S. 439 (1988)....................7

*Webster v. Doe*,
486 U.S. 592 (1988)....................4

**Statutes**

5 U.S.C.
§ 702 .......... 8
§ 7106 .......... 6, 7
§ 7116 .......... 7
§§ 7119-7122 .......... 7

7 U.S.C.
§ 2201 .......... 10
§ 6901 .......... 10
§ 6912 .......... 10
§ 6915 .......... 10
§ 7014 .......... 10

28 U.S.C.
§ 1331 .......... 5

31 U.S.C.
§ 1341 .......... 8
§ 1342 .......... 8
§§ 1341-55 .......... 8
§§ 1350-51 .......... 8

Pub. L. No. 117-328, Div. A (2022)
§ 716(d)(3) .......... 13

Pub. L. No. 118-42, Div. B (2024)
138 Stat. 80 .......... 13
§ 716(d)(1) .......... 13

Pub. L. No. 119-37, Div. B (2025)
§ 716 .......... 11, 12
§ 771 .......... 11, 12
§ 779 .......... 12
139 Stat. 521-22 .......... 13

Pub. L. No. 119-74, Div. C (2026)
§ 421 .......... 11, 12

Pub. L. No. 119-103, Div. A (2026)
§ 101 .......... 13

## INTRODUCTION

If USDA is permitted to proceed with the challenged office closures and forced relocations, it will lose substantial numbers of experienced, dedicated employees who cannot uproot their families and leave their communities. The employees represented by Union Plaintiffs at the affected components will suffer irreparable harm through the loss of careers, income, and benefits, and the Local Government and Non-Profit Plaintiffs who rely on the services these employees currently provide will also be irreparably harmed. The record is clear that USDA moved forward with these harmful actions notwithstanding an express congressional order not to; USDA *admits* that although those statutory prohibitions on reorganization apply, it decided to proceed with its reorganization anyway. Dkt. 71-1 ¶316 (Rice Decl.).

USDA argues that this Court should deny preliminary relief because Plaintiffs' claims will not succeed on the merits ("the most important factor"). Dkt. 71 ("Opp.") at 9. But Plaintiffs, not USDA, have the better of all these arguments. Plaintiffs challenge final agency actions (none of which are unreviewable discretionary actions) and Plaintiffs' claims are not impliedly precluded by any statute. While USDA concedes that Congress prohibited the actions it is now taking, it gets the severance analysis wrong: USDA's arguments are inconsistent with statutory text and structure and with settled severability doctrine. USDA's actions are also arbitrary and capricious. USDA defends itself not by relying on any contemporaneous explanation (as it must), but instead by giving the Court extensive post-hoc justifications, including a declaration that directly contradicts USDA's prior submissions to Judge Illston that admitted the relocations are intended to force workforce reduction and yet were done without considering the impact of attrition on agency functions *at all*.

USDA also argues that Plaintiffs somehow delayed in seeking relief. But USDA postponed implementation throughout 2025 and well into 2026. Plaintiffs sued shortly thereafter and have pursued relief ever since. The large majority of relocation orders have not yet issued and for those that have, no workers have started their relocated jobs or been removed from employment. An injunction would halt all harm threatened by the challenged actions. USDA also urges the Court to forgo interim relief because, it claims, it will cost the government some

money (although those claims are largely overstated) and will impact its ability to implement other aspects of its reorganization. To the extent USDA planned a restructuring that depends on relocations and closures that violate express congressional directives, that is a problem of USDA's own making and should not preclude relief.

**1. Relocations and Closures Are Reviewable Final Agency Action**

USDA first seeks to evade judicial review by claiming that Plaintiffs bring an impermissible "programmatic" challenge that seeks "general judicial review of [an agency's] day-to-day operations." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891, 899 (1990); Opp. at 9. To the contrary, Plaintiffs challenge "specific" and "discrete" agency action: USDA's closure of offices and relocation of employees under the Reorganization Plan. *Lujan*, 497 U.S. at 890; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004); *see* Dkt. 5-1 ("PI Mem.") at 21. In contrast to these discrete actions, a programmatic challenge is one that pursues court oversight of "continuing (and thus constantly changing) operations" or "systemic improvement" in overall agency functions. *Lujan*, 497 U.S. at 890, 894; *Norton,* 542 U.S. at 66-67.

The specific and circumscribed office closures and relocations challenged by Plaintiffs are described by USDA in the letters by which it notified Congress of those actions. Dkt. 72-2. That Plaintiffs' claims challenge actions at multiple USDA components does not make the claims programmatic. *New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025) (nothing in APA "bars a plaintiff from challenging a number of discrete final agency actions all at once"). The Court can assess whether the challenged actions violate the appropriations acts' prohibitions on reorganizing, and whether USDA considered relevant factors before implementing the actions, to decide Plaintiffs' claims. *Lujan,* 497 U.S. at 890 n.2 ("If there is … some specific order or regulation, applying some particular measure across the board to all individual [actions], … it can of course be challenged under the APA"). Plaintiffs' tailored preliminary relief pauses those relocations and closures only and does not ask "to manage USDA" or to "review … the restructuring of the entire Department." Opp. at 9-10; Dkt. 5-2. Even if staying relocations would have collateral effects on USDA's reorganization plans, the Supreme Court has explained that would not convert the claims into a programmatic challenge: "such an intervention may

ultimately have the effect of requiring … even a whole 'program' to be revised by the agency in order to avoid the unlawful result that the court discerns." *Lujan,* 497 U.S. at 894.

These actions are also final. USDA does not deny that it is *already* implementing the closures and relocations described in its congressional notifications (which reflect the "current plans for each component agency"). Opp. at 4-5; *Immigrant Defs. L. Ctr. v. Noem,* 145 F.4th 972, 991 (9th Cir. 2025) ("final agency action is established by a conscious decision arrived at by the agency or a deliberate decision to act"). USDA aims instead at a strawman, arguing that the congressional notification *letters* are not final action. Opp. at 11. But Plaintiffs do not challenge the submission of notices to Congress; they challenge the actions those letters describe. PI Mem. at 21. USDA also argues that the notification letters do not describe every detail of the employee relocations. Opp. at 11. Agency action, however, does not need to be fully described in writing to be final. *See Aracely, R. v. Nielsen*, 319 F.Supp.3d 110, 138 (D.D.C. 2018) (collecting cases).

To the extent USDA claims its decisions to close offices and relocate employees are not final, Opp. at 11, that defies reality: USDA notified Congress of those decisions; engaged in impact bargaining about those decisions; and is implementing these decisions now. *See S.F. Herring Ass'n v. DOI*, 946 F.3d 564, 579 (9th Cir. 2019) (agency engages in final action when it "state[s] a definitive position in formal notices … and then send[s] officers out into the field to execute on the directive"); *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1110 (9th Cir. 2025) ("[A] federal agency's assessment, plan, or decision qualifies as final agency action even if the ultimate impact of that action rests on some other occurrence—for instance, a future site-specific application, a decision by another administrative agency, or conduct by a regulated party."). Any subsequent adjustments do not render these decisions any less final: the "possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal." *Sackett v. EPA*, 566 U.S. 120, 127 (2012).

**2. The Challenged Actions Are Not Committed to Agency Discretion**

USDA next seeks to evade review by claiming its actions fall within the extremely "narrow" exception to APA review for actions committed by law to agency discretion. Opp. at 15. But the challenged actions are not akin to the exercise of prosecutorial discretion, *Heckler v.*

*Chaney*, 470 U.S. 821, 838 (1985), or national security determinations. *Webster v. Doe*, 486 U.S. 592 (1988). Those are the "rare instances where statutes are drawn in such broad terms that … there is no law to apply, thereby leaving the court with no meaningful standard against which to judge the agency's exercise of discretion." *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1016-17 (9th Cir. 2024) (quotations omitted). That Congress has not directed the location of each office by statute is not the proper test. Opp. at 15. Congress enacted express prohibitions on defined reorganization actions, and thereby plainly enforceable "restrictions in the operative statutes." *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) ("[W]hen [] a statute … delegates discretionary authority to an agency, the role of the reviewing court under the APA" is to "fix[] the boundaries of the delegated authority, and ensur[e] the agency has engaged in 'reasoned decisionmaking' within those boundaries. By doing so, a court upholds the traditional conception of the judicial function that the APA adopts." (citations omitted)).

**3. The CSRA Does Not Impliedly Preclude this Court's Jurisdiction**

USDA renews implied preclusion arguments that Ninth Circuit courts have recently, repeatedly rejected. Plaintiffs' APA and ultra vires claims do not arise under or implicate the Civil Service Reform Act ("CSRA") and are not the "type" of claim that Congress intended to be heard by either of the agencies that statute creates (the Merit Systems Protection Board ("MSPB") and Federal Labor Relations Authority ("FLRA")). *AFGE v. Trump*, 139 F.4th 1020, 1030-33 (9th Cir. 2025); *AFGE v. Trump*, 2025 WL 2614698 at *6 (N.D. Cal. Sept. 9, 2025) (rejecting preclusion of claims challenging agency-level reorganizations and staff reductions); *AFGE v. Trump*, 2026 WL 1848074 at *5 (N.D. Cal. June 26, 2026). USDA's argument that the "weight of authority" supports preclusion cites out-of-circuit caselaw and, remarkably, *ignores* binding Ninth Circuit authority and recent decisions from this district. Opp. at 14.[1]

[1] *AFGE*, 139 F.4th at 1030; *AFGE v. Trump*, 178 F.4th 456, 465-66 (9th Cir. 2026); *AFGE*, 2026 WL 1848074, at *5; *AFGE*, 2025 WL 2614698, at *6; *AFSCME v. OMB*, 807 F.Supp.3d 1004, 1026-28 (N.D. Cal. 2025); *AFGE v. OPM*, 799 F.Supp.3d 967, 982-84 (N.D. Cal. 2025); *AFGE v. OPM*, 771 F.Supp.3d 1127 (N.D. Cal. 2025). The government has invited the Supreme Court to address CSRA channeling, including in the *AFGE v. Trump* stay application, and the Court

To evaluate USDA's argument, "[w]e begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986); *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023) ("Congress rarely allows claims about agency action to escape effective judicial review."); *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) ("Congress rarely intends to prevent courts from enforcing its directives to federal agencies"); *Dep't of Comm. v. New York*, 588 U.S. 752, 771-72 (2019) (APA review of agency action is a "command"). To overcome the grant of jurisdiction in 28 U.S.C. §1331, courts must find sufficient evidence in the text or structure of a statute to conclude that Congress, despite the lack of express direction, intended to preclude jurisdiction. *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 733 (2022). The Supreme Court has "never" endorsed implied preclusion predicated merely on "some general similarity of subject matter." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 223 (2012); *AFGE*, 139 F.4th at 1030-33 (rejecting government's argument that *Elgin v. DOT*, 567 U.S. 1 (2012) requires concluding the CSRA channels employee claims *because* they involve federal employment).

USDA makes two preclusion arguments: administrative channeling for the Union Plaintiffs and complete preclusion for the Local Government and Non-Profit Plaintiffs. Opp. at 11-14. Where the government argues that Congress impliedly intended for an administrative agency to hear the claims prior to judicial review (here, the Union Plaintiffs), courts apply the *Thunder Basin* factors. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-13 (1994); *see also Axon Enter.*, 598 U.S. at 186; *AFGE*, 139 F.4th at 1030-33. Where the government argues that Congress impliedly precluded certain plaintiffs from *ever* suing (here, the Local Government and Non-Profit Plaintiffs), the Court applies the complete implied preclusion analysis in *Block v. Community Nutrition Institute*, 467 U.S. 340, 346-47 (1984), *Bowen*, 476 U.S. at 670, and similar cases. Proper application of these doctrines confirms jurisdiction for all claims here.

First, the Union Plaintiffs' claims are not channeled to the MSPB because that agency

---

notably did not rule on that basis (while expressly declining to halt plaintiffs' *other* claims*, see* 145 S. Ct. at 2635). Courts recognize the headwinds against this argument. *New York v. Kennedy*, 155 F.4th 67, 75 (1st Cir. 2025) ("[I]n *AFGE*, the Supreme Court likely decided that the CSRA did not funnel the dispute at issue ... to the MSPB.").

provides no meaningful avenue for judicial review, and the claims are collateral to and outside the scope of MSPB jurisdiction and expertise. *AFGE*, 139 F.4th at 1030-33. USDA conflates the actions that Plaintiffs challenge (USDA's decisions to close offices and relocate employees) with the individual employment actions (removal) that will later result under UDSA's policies if employees cannot move. Opp. at 12. As in *AFGE v. Trump*, the agency action challenged here is *not* a covered personnel action, and it does not become one just because it may result in individual personnel actions later. 139 F.4th at 1031 ("Whether or not the federal agencies' 'transformation[s]' and 'large-scale reductions in force' can be characterized as an 'agglomeration' of 'individual employment actions,' Plaintiffs are not challenging those employment decisions with respect to individual employees … [but] Defendants' constitutional and statutory authority to direct the federal agencies to take such actions in the first place."). Notably, USDA does not contend that the employees represented by Union Plaintiffs could challenge USDA's decisions to order relocations or close offices at the MSPB. Opp. at 12. Applying the *Thunder Basin* factors as in *AFGE v. Trump*, the fact an individual employee may be able to challenge a later-resulting removal at the MSPB does not foreclose judicial review of the agency's policy-level decisions for the agency. 139 F.4th at 1031; *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 378 (5th Cir. 2023) (en banc), *judgment vacated as moot*, 144 S.Ct. 480 (2023); *see also Bowen*, 476 U.S. at 670 (agency-level regulation not precluded).

Nor can the Union Plaintiffs' claims ever come before the FLRA, because the challenged management decisions fall outside the scope of that agency's narrow jurisdiction. The FLRA is not a venue of general jurisdiction permitted to hear any argument that an agency has violated the law (even if those actions impact employees). Here, USDA has invoked management rights for its reorganization decisions (5 U.S.C. §7106), and therefore engaged *only* in impact bargaining, in which those decisions' legality could not be addressed or challenged. *FLRA v. DOJ*, 994 F.2d 868, 872 (D.C. Cir. 1993) ("[A]n agency is not required to bargain with respect to its management rights ... it is required to negotiate about the 'impact and implementation' of those rights"). That moves these decisions outside FLRA jurisdiction: FLRA unfair labor charges are limited to subjects for which there is a duty to bargain, and grievance and arbitrations

provisions are equally limited. 5 U.S.C. §7106(a) (listing actions removed from duty to bargain), §7106(b)(2)-(3) (requiring bargaining over impacts), §7116(a)(5) (limiting unfair labor practice charges to the refusal to bargain in good faith "as required by this chapter"), §§7119-7122 (grievance/arbitration and related review). USDA is therefore wrong in arguing that the Union Plaintiffs can raise the claims at issue via review of an arbitration decision, Opp. at 13, because the legality of USDA's "management" decisions, including whether they violate any other constitutional or statutory provision, cannot be raised through FLRA grievance and arbitration. *See HHS v. FLRA*, 844 F.2d 1087, 1098 (4th Cir. 1988); *Def. Language Inst. v. FLRA*, 767 F.2d 1398, 1402 (9th Cir. 1985). Again, as in *AFGE*, the *Thunder Basin* factors favor jurisdiction: there is no meaningful avenue for judicial review, and the issues are collateral to and outside the scope of FLRA jurisdiction and expertise. 139 F.4th at 1031-33.

With respect to the Local Government and Non-Profit Plaintiffs, USDA concedes there is no administrative channel, and therefore argues for complete preclusion, invoking *United States v. Fausto*, 484 U.S. 439, 448-49 (1988); Opp. at 13. USDA again ignores the Ninth Circuit's and this district's rejections of the same argument. *AFGE*, 139 F.4th at 1032-33 ("Defendants offer no option at all for the non-union Plaintiffs in this case, who are not covered by the CSRA and are thereby unable to present any claim to the MSPB or FLRA in the first place …. We find it unlikely that Congress intended for the CSRA to preclude review for parties not even covered by that statute who allege claims outside the MSPB's and FLRA's jurisdiction."). The Ninth Circuit correctly rejected the government's attempt to expand *Fausto*: there is simply no textual or structural basis in the CSRA to preclude third party claims. *Id*.

As the Ninth Circuit observed in *AFGE*: "It is telling that in nearly every case cited by Defendants in which a court channeled a constitutional or statutory claim through the CSRA, the plaintiffs raised at least one claim properly within the unquestioned jurisdiction of the MSPB or FLRA." 139 F.4th at 1031. None of the claims in this case arise under the CSRA or fall within the jurisdiction of the MSPB or FLRA, and USDA's jurisdictional challenge fails.

**4. The Antideficiency Act Does Not Impliedly Preclude Jurisdiction**

USDA's second implied preclusion argument is that the ADA precludes APA claims

based on appropriations statutes. "[J]udicial review of final agency action in an otherwise justiciable case is traditionally available unless 'a statute's language or structure'" precludes review. *Becerra*, 596 U.S. at 733 (citations omitted). This standard imposes a "heavy burden" that USDA cannot meet. *Mach Mining*, 575 U.S. at 486.

Nothing in the ADA's text or structure reveals congressional intent to preclude judicial review of agency compliance with the ADA—let alone compliance with *other* appropriations statutes—under the APA. The ADA prohibits "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation," 31 U.S.C. §1341, providing "voluntary" services exceeding those authorized by law, §1342, and making other improper expenditures. The ADA creates no adjudicatory agencies or procedures, nor does it designate any limited private right of action. *Id.* §§1341-55. It merely provides for criminal prosecutions of officials and for reporting to Congress of certain violations. *Id.* §§1350-51. None of those provisions either expressly or indirectly precludes judicial review of agency action (and Congress knows how to so when it wants to). *See Becerra*, 596 U.S. at 733 (starting analysis with statutory text). While the ADA provides criminal penalties, the mere fact that a separate remedy provision exists has *never* been sufficient to overcome APA review. *See Sackett*, 566 U.S. at 129 ("[I]f the express provision of judicial review in one section of a … statute were alone enough to overcome the APA's presumption of reviewability … it would not be much of a presumption at all."). Unlike the statute in *Block*, the ADA does not designate a limited right of action, *i.e.*, a "detailed mechanism for judicial consideration of particular issues at the behest of particular persons" sufficient to preclude APA review. 467 U.S. at 349. USDA does not (and cannot) cite any case holding that a criminal enforcement mechanism silently precludes otherwise available civil review.

USDA's argument that the ADA has no private right of action is irrelevant. Opp. at 18. Since the APA's enactment in 1946, Congress need not include a separate private right in every statute regulating agency conduct; that right is provided by the APA. *Chrysler Corp. v. Brown*, 441 U.S. 281, 317-18 (1979); 5 U.S.C. §702. USDA's argument that congressional reporting statutes are not enforceable misses the mark. Opp. at 18. Plaintiffs do not seek to enforce a

reporting statute; they seek to enforce an express prohibition on reorganizing the USDA.

USDA cites no caselaw holding that the ADA precludes APA review of compliance with appropriations statutes. USDA cites a Supreme Court emergency stay order that expresses doubt as to whether the plaintiffs in that case had a cause of action. Opp. at 19 (citing *Trump v. Sierra Club*, 588 U.S. 930 (2019)). But that decision is not precedent. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021); *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) ("The purpose of such interim equitable relief is not to conclusively determine the rights of the parties … but to balance the equities as the litigation moves forward."). USDA invokes another stay decision involving an entirely different statute (the Impoundment Control Act ("ICA")) simply because it concerns appropriations. Opp. at 18 (citing *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 146 S.Ct. 19 (2025)). The instant case does not raise impoundment issues. Implied preclusion is a statute- and claim-specific analysis, *Bowen*, 476 U.S. at 672-74; *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 223, and the ICA provisions that formed the basis for the government's preclusion argument in *Aids Vaccine* do not exist in the ADA.[2] This court has correctly held that appropriations statutes' restrictions on agency action are enforceable via the APA and not precluded by the ADA. *AFSCME v. OMB*, 806 F.Supp.3d 1093, 1097-98 (N.D. Cal. 2025); *AFSCME v. OMB*, 807 F.Supp.3d 1004, 1031-32 (N.D. Cal. 2025).

Finally, USDA argues that Plaintiffs cite only decisions enforcing appropriations statutes that were later vacated as moot upon a change in administration. Opp. at 18-19. But those

[2] Justice Kagan's dissent summarized the provisions the government relied on as follows:

> The ICA, enacted after Congress waged war with President Nixon over impoundments, has two components. First, the Act sets up a way for a President to propose and Congress to consider changes in the funding levels that existing laws set. Briefly put, the President sends a "special message" to Congress asking for a rescission—just as happened here with respect to the $4 billion. §683(a). And for the next 45 days, any bill accepting the President's proposal receives expedited congressional review through fast-track procedures. *See* §§682(3), 688. Second, the Act gives the Comptroller General (a legislative officer) a way to sue over presidential impoundments. If he believes the President is unlawfully withholding funds, he is to send a report to Congress saying so. *See* §686. And after a specified time, he may bring a civil action under the Act to compel the Executive to obligate the funds at issue. *See* §687.

146 S.Ct. at 21 (Kagan, J. dissenting). The ADA contains nothing like these provisions.

decisions fall within a long line of precedent enforcing appropriations statutes. As *Lincoln* recognizes, while spending from lump-sum allocations can avoid review, appropriations statutes that impose substantive restrictions do not. 508 U.S. at 193. In fact, the ICA was enacted in *response* to cases (including Supreme Court decisions) enforcing appropriations statutes via the APA: as Justice Kagan explained, "the Executive often lost" on the enforcement of those statutes. *AIDS Vaccine*, 146 S.Ct. at 22-23 (citing *Train v. City of New York*, 420 U.S. 35, 42-46 (1975)). That history is further support for the proposition that jurisdiction exists to enforce appropriations statutes via the APA unless Congress has taken it away. Congress has not done so in the ADA, and USDA identifies no other basis for preclusion.[3]

**5. USDA Is Violating Express Statutory Prohibitions**

There is a long history of Congress closely regulating USDA's ability to reorganize and/or downsize the agency, which USDA oversimplifies and mischaracterizes. Opp. at 16. USDA, like all federal agencies, is a "creature[] of statute" and "possess[es] only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. DOL*, 595 U.S. 109, 117 (2022). Congress has controlled USDA's organization in a number of ways. First, Congress has provided USDA varying statutory organizational authority over the years. In 1953, Congress delegated to the Secretary the general ability to delegate functions between existing staff. 7 U.S.C. §2201 (Note, Sec. 4(a)). In 1994, Congress temporarily expanded that authority to include, among other things, reducing personnel and closing offices, to permit USDA to implement a specific, approved reorganization plan—but that expansion expired shortly thereafter.[4] 7 U.S.C. §7014(a). Now, Congress approves and enacts annual appropriation acts that set forth authorized amounts of USDA spending, including on staff, and impose restrictions on repurposing of that funding for other purposes, including for reorganizing or reducing staff.

---

[3] USDA also argues Plaintiffs have not stated a proper *ultra vires* claim, but once again ignores Ninth Circuit law. Opp. at 15. In this circuit, there is no barrier to Plaintiffs pursuing parallel ultra vires and APA claims, for all the reasons explained in *Sierra Club v. Trump*, 963 F.3d 874, 888-93 (9th Cir. 2020) (collecting cases), *judgment vacated for mootness, Biden v. Sierra Club*, 142 S.Ct. 46 (2021). *See AFGE v. OPM*, 770 F.Supp.3d 1215, 1224 (N.D. Cal. 2025); *AFGE*, 139 F.4th at 1033-38; *AFSCME v. OMB*, 807 F.Supp.3d at 1039.

[4] *See* 7 U.S.C. §6901 (authorization to "streamline and reorganize the Department"); *id.* §6912, ("consolidate … or discontinue any … office, or other … unit"); *id.* §6915 ("reduce personnel").

USDA's current appropriation acts expressly prohibit the forced relocations and office closures USDA is implementing. PI Mem. at 5 (quoting §§716, 771, 421). USDA admits that its relocations and closures trigger those provisions. Dkt. 71-1 ¶316 ("USDA was subject to Congressional approval provisions relevant to each of the fiscal plans outlined in each letter."); *see also* Dkt. 72-2 (collecting notification letters).

Congress did two things in these statutes: it banned USDA from using appropriated funds to reorganize, and provided a condition upon which that ban could be lifted in the future. USDA spills much ink arguing that the clauses allowing committees to *lift* the ban on reorganizing are unconstitutional. Opp. at 19-23. But Plaintiffs do not seek to enforce the committee approval clauses. Plaintiffs seek to enforce the express prohibition on reorganizing. The merits dispute thus turns on which side is correct regarding severability. USDA's severability arguments either delete Congress's ban on reorganization entirely or effectively read those provisions out of existence. Opp. at 23. That directly contravenes the fundamental purpose of severability, which is to leave in place a statute that "will function in a *manner* consistent with the intent of Congress." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987).

USDA's arguments largely rely on extra-textual history and contentions regarding the Administration's position. Opp. at 21-25. But the Supreme Court instructs that congressional intent must be assessed first and foremost by statutory text and structure. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). The text and structure of the acts make clear that these provisions are intended to operate (1) as a prohibition on reorganization that (2) can only be lifted by express congressional approval after receiving notice. Removing the references to "approval" while leaving the notice requirement intact, as USDA proposes, would effectively allow reorganizations to proceed at USDA's discretion (because sending a congressional notification letter is no real barrier). That would subvert the meaning and effect of the current statutes, and completely "alter[] the balance of powers between the Legislative and Executive Branches of the Federal Government." *Alaska Airlines*, 480 U.S. at 685.

USDA contends that reformulating the approval conditions into notice-only authorizations would support an objective of providing congressional "oversight" of executive

action, but relies on inapposite cases. Opp. at 24. Those cases address statutes that expressly *authorize* executive action, subject to oversight through a legislative veto and a separate "report and wait" provision. In contrast to those statutes, Congress adopted an unambiguous *prohibition* on executive action in Sections 716, 771, and 421, not a delegation of authority subject to oversight. Converting the congressional prohibition to a permissive "report and wait" provision would wholly undermine the congressional intent that is reflected in the text of the statutes.

USDA argues that Plaintiffs propose invalidating "more of the statute than necessary," Opp. at 24, but the goal is not to excise the fewest words from the statute—it is to sever consistent with congressional intent.[5] Opp. at 23. Later, USDA argues that Plaintiffs also propose invalidating too *little* of the statutes, urging the Court to strike the entire prohibition as in *AFGE v. Pierce*, 697 F.2d 303 (D.C. Cir. 1982). Opp. at 24. But the severability analysis is context-specific, and the statutory language and history here shows that—unlike in *Pierce*—Congress intended to prohibit reorganizations. PI Mem. at 17-18. The appropriations acts are replete with other provisions directing USDA not to close offices and relocate staff, in addition to Sections 421 and 716. *See* Sections 771 (no closing agricultural research offices), 779 (no relocating NRCS or Rural Development employees), p. 518 (no closing Farm Services Agency offices). USDA takes issue with Plaintiffs' explanation that Congress rejected the Administration's budget for USDA, Opp. at 6, but USDA's proposed budget *did* include cuts to staff salaries consistent with the Reorganization Plan (both explicitly and because "cuts to … programming," *id.*, necessarily include and are effectuated by cuts to staffing), and Congress *did* reject those cuts and fully fund USDA. PI Mem. at 5, 17.[6] Moreover, USDA offers no response to the broader statutory history showing that, while Sections 716 and 412 were once notice-only provisions, in recent years Congress expressly changed them to prohibitions requiring

---

[5] *See Nat'l Mining Ass'n v. Zinke,* 877 F.3d 845, 862 (9th Cir. 2017) ("[A court] must retain any portion of a statute which is (1) constitutionally valid, (2) capable of functioning independently from any unconstitutional provision, *and (3) consistent with Congress' basic objectives in enacting the statute*.") (cleaned up, emphasis added); *City of New Haven v. United States*, 809 F.2d 900, 909 (D.C. Cir. 1987) ("a court's duty in a severability case is to preserve as much of the statute as it can *consistent with congressional intent*") (emphasis added).

[6] USDA's assertion that Congress did not sufficiently fund BARC, Opp. at 25, ignores the *$74 million of appropriations* designated for BARC maintenance/repairs. Dkt. 5-62 Ex. J.

affirmative approval in response to agency attempts to reorganize. PI Mem. at 18 n.11.

USDA improperly asks the Court to divine a contrary, subjective congressional intent by looking to various sources outside the statutes, including GAO, CRS, and OLC opinions. Opp. at 25; *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("[T]he text of a law controls over purported legislative intentions unmoored from any statutory text."). None of those decisions perform a severability analysis, and this Court owes those administrative documents no deference. *Loper Bright*, 603 U.S. at 401; *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 564 (9th Cir. 2016). And even if Congress were "on notice" of constitutional objections to committee approval clauses, Congress is presumed to understand the law, including "established severability doctrine," which Congress could rely on a court to apply to any provision deemed unconstitutional. *Seila L. LLC v. CFPB*, 591 U.S. 197, 237 (2020).

USDA argues that Congress ratified USDA's view that it only needs to provide notice before conducting it reorganization because Congress recently passed a Continuing Resolution funding USDA into December 2026 under the same "authority and conditions provided" in the FY2026 appropriations acts. Opp. at 25; Pub. L. No. 119-103, §101. USDA presumes too much: Congress imposed the *same* prohibition in that act, and the same severability analysis applies. Moreover, ratification doctrine applies only where there is a settled judicial or administrative "consensus so broad and unquestioned that [courts] must presume Congress knew of and endorsed it"—which certainly does not exist with respect to the severability question here. *BP P.L.C. v. Baltimore*, 593 U.S. 230, 244 (2021).[7] Nor does the doctrine apply where, as here, "the text and structure of the statute are to the contrary" of the administrative interpretation. *Id.*[8]

[7] Indeed, USDA itself has taken inconsistent positions, previously arguing in litigation that the agency *is* bound by committee approval requirements. *See* Mot. to Dismiss, *Bread for the City v. USDA*, No. 1:15-cv-01591, 2015 WL 13158585, at *n.4 (D.D.C. Dec. 18, 2015) ("USDA will be obligated to seek approval from the Committees on Appropriations … as is required by the 2015 Appropriations Act. ... *If the committees deny the request, USDA is barred from expending the funds*."); Brief for Appellees, 2017 WL 1406116, at *11 (D.C. Cir. Apr. 19, 2017). USDA also invokes its own noncompliance with committee approval requirements, but four of its five letters pertain to notification-only statutes. Dkt. 71-5 at 1 (Pub. L. No. 118-42, 138 Stat. 80), 4 (Pub. L. No. 117-328, Div. A, §716(d)(3)), 6 (Pub. L. No. 118-42, Div. A, §716(d)(1)), 8 (Pub. L. No. 119-37, 139 Stat. 521-22). And an agency's violations do not change the meaning of a statute.

[8] Congress also clearly did not acquiesce to any executive branch view. Opp. at 25. The

In sum, USDA's arguments all contradict the "cardinal canon" that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023). Any severability analysis must leave the express prohibition on the actions at issue in this litigation in place.

**7. USDA's Failure to Consider the Impacts of Attrition Is Arbitrary and Capricious**

Agencies *must*, among other things, consider all "important aspect[s] of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And agencies cannot rely on "post hoc rationalizations." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020); *Fed. Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397 (1974); *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008). There are two major problems with USDA's record. First, just one month ago, USDA presented sworn testimony to Judge Illston that it now attempts to contradict. Second, USDA relies almost entirely on a 41-page declaration presenting extensive, hindsight justifications that are not reflected in documents contemporaneous to the agency's decisions. When assessed on the basis of the proper record, *i.e.*, at the time USDA made the decisions to close offices and relocate employees, it is clear USDA failed to consider an important aspect of the problem: how the removal of large numbers of experienced staff would impact the functions of those offices. Even if the Court credits USDA's new contention that it may, at some point, backfill some of the impacted positions, USDA did not conduct any considered analysis of what USDA loses by forcing these employees out.

*USDA's contradictions*. USDA previously conceded that the purpose of the USDA Reorganization Plan was workforce *reduction*. *AFGE v. Trump*, No. 25-cv-03698-SI, Dkt. 457 at 31 ("USDA has consistently represented, in both its public-facing statements and its internal, deliberative materials, that its reorganization plans include workforce optimization measures, including downsizing."). USDA further admitted that it was using attrition "*to reduce its*

Supreme Court has drawn a sharp distinction between Congress' deliberate acquiescence and its failure to express any opinion." *Morales-Izquierdo v. Gonzales,* 486 F.3d 484, 493 (9th Cir. 2007) (quoting *Rapanos v. United States,* 547 U.S. 715, 749-50 (2006) (noting Court's "oft-expressed skepticism towards reading the tea leaves of congressional inaction")). Acquiescence can only be inferred from "overwhelming evidence" that Congress considered the "precise issue" and affirmatively acceded to the interpretation. *Id.* There is no such evidence here.

*workforce*," and that it did not "think 100 percent of employees would relocate." *Id*. at 31-32 (emphasis added); *see also* Dkt. 5-62 Ex. H (prior Rice Decl.) ¶¶8-9 (explaining further "right-sizing" would be achieved through "voluntary" separations). USDA now claims the opposite: "USDA is not seeking to reduce its workforce through employee relocations." Opp. at 16 n.5.

This new assertion also contradicts the record: in early 2026, USDA sought authority from OPM to offer incentives to its employees to resign and explained this authority was needed "to facilitate a planned large scale, department-wide restructuring effort," that will "Downsize the Federal Workforce." Dkt. 5-31 Ex. 1 at 1. USDA told OPM it expected "5,000" employees to be "involuntarily separated, downgraded, transferred, or reassigned" by the reorganization. *Id.* In response to the question asking what personnel reduction actions USDA expected would be necessary without the incentives, USDA wrote "Relocation." *Id.*

Next, USDA also told Judge Illston that as of the time of the decisions to implement the component-level reorganizations, USDA *had not considered* the impact of attrition on agency functions. Critically, Ms. Rice admitted that the decisions to reorganize had already been made at the components challenged by Plaintiffs. Dkt. 5-62 Ex. H (prior Rice Decl.) ¶¶4, 26, 28-29, 49, 61, 79, 80, 81, 89. Then she explained USDA *had not yet analyzed the impact of attrition*: "The Department will be conducting attrition analysis on an agency-by-agency basis in conjunction with hiring and facilities planning at relocation sites." *Id*. ¶120; *see also AFGE v. Trump*, Dkt. 457 at 32 ("USDA was not required to assess any impacts of attrition"); *id*. at 33 ("the Department *will conduct* attrition analyses in conjunction with hiring and facilities planning at relocation sites as it finalizes relocation plans on an agency-by-agency basis") (emphasis added).

One month later, USDA has changed its factual tune, asserting that it *did* analyze attrition and agency functions at each of the components at the time of its decisions to proceed. Opp. at 29 ("The relevant agencies considered attrition in formulating those plans and are considering attrition in implementing them."). USDA attempts to avoid being accused of reversing position by claiming that Plaintiffs previously only challenged the high-level Reorganization Plan, but Plaintiffs have always challenged USDA's component-level implementation, *and* USDA ignores that its prior factual representations admitted components had not yet conducted any analysis.

*USDA's hindsight justifications*. "An agency must defend its actions based on the reasons it gave when it acted." *Regents*, 591 U.S. at 24. The contemporaneous record provided by USDA regarding its office closures and employee relocations is thin, and consists of congressional notification letters, which informed Congress of the decisions USDA has made. Dkt. 72-2; *see* Opp. at 4-5; Dkt. 71-1 ¶74.[9] *None* of those letters contain any explanation of USDA's consideration of either expected levels of employee attrition or the impact of that attrition on agency functions. Dkt. 72-2. To the extent these letters address workforce impacts at all, they disingenuously claim all employees will have a place and ignore attrition and its effects entirely. *E.g. id*. at 40-41 (Foreign Agricultural Service: "No positions will be eliminated as part of this realignment"; "All FAS employees will retain positions within the agency"). Nor do any of these letters reference the USDA Staffing Plan or any plans to backfill positions with *different* employees. Dkt. 72-2. Even if the Court credits the Staffing Plan as relevant to the reorganization decisions, that document likewise does not analyze expected employee attrition from the closures and relocations, or the impact of such losses on operations. Dkts. 74-2, 74-3.

To argue that its agencies *did* consider attrition and function, and that attrition will not impact function because the agencies can hire to backfill positions, USDA relies on a hindsight declaration from Ms. Rice. Opp. at 26-32. But any explanations beyond contemporaneous documents must be disregarded. *See, e.g.*, *Cmty. Legal Servs. in E. Palo Alto v. HHS*, 780 F.Supp.3d 897, 924 (N.D. Cal. 2025) ("The Government's attempt to make up for its failure to provide meaningful explanation for the funding termination amounts to post hoc rationalization via attorney argument. This is insufficient to overcome the Government's failure to proffer any competent evidence of reasoned decision making.").

*USDA's failure to consider the impacts of attrition at the time of decision.* USDA cites two further things in defense of its decisions: 1) actions that it claims to have taken *post-litigation* to mitigate attrition; and 2) descriptions of current plans to hire to backfill positions.

[9] USDA has not provided the Court with any contemporaneous agency documents reflecting approvals for these actions beyond the original July 2025 Secretary Memorandum, which USDA states does not reflect the "current" plans reflected in the notification letters. Opp. at 4-5, 29.

Opp. at 29-32. First, any actions taken in response to litigation to mitigate the office closure and relocation decisions do not rescue the original arbitrary decision-making (which the APA requires to be evaluated according to reasons given at the time). Regardless, if USDA is closing fewer offices or moving fewer people, that just means fewer actions will need to be enjoined.

Second, USDA relies on the Staffing Plans to claim that it is going to mitigate attrition by hiring. Plaintiffs' opening brief explained why the Staffing Plan documents state only that USDA *may* hire; will not fill *all* vacancies; will not fill the *same positions*; and will not hire *equally experienced and qualified* individuals. PI Mem. at 20-21. Even if the Staffing Plans are credited, USDA simply has not taken into account what it stands to lose from the challenged actions (because, after all, losing people is USDA's intention), and that is fatal.

USDA largely fails to respond to these issues. Opp. at 31-32. USDA points to the small fraction of the overall USDA workforce forced to relocate, but that does not speak to the impact of losing large percentages of experienced employees on the specific functions those employees currently perform (or that the losses represent far greater percentages of the affected offices). USDA questions the scope of attrition, but cannot deny that forced relocations will cause the loss of existing staff.[10] USDA claims that hiring early career employees is "reasonable" (and that less experienced employees can be "qualified"); that explanation demonstrates no consideration of the impact of losing specific experience and expertise. USDA appears to be *presuming* that it can simply backfill positions without any impact on functions: that position proves that USDA has failed to consider important aspects of the problem and violates the APA.[11]

### 8. USDA Is Causing Irreparable Harm

USDA does not dispute that closing offices and forcing employees to relocate are causing imminent harm to Union Plaintiffs and the employees they represent at the eight USDA

[10] While USDA claims attrition rates are speculative, the record before USDA at the time of the decision showed a high likelihood that many employees would not move. PI Mem. at 4. USDA's subsequent evidence confirms this, reflecting very high rates of non-acceptance. Dkt. 71-1 ¶¶ 66-71 (*39% aggregate attrition rate* (298 of 750 MDRs rejected); 36% rejection at research agencies (217 of 609 rejected); 50% at OGC; 60% at Foreign Agricultural Service).

[11] To the extent Ms. Rice describes current hiring plans not addressed in the Staffing Plan or any contemporaneous documents (such as FNA hiring that conflicts with Plan statements that FNA will not hire), those justifications should be disregarded. *See* Dkt. 71-1 ¶81, 5-62 Ex. F at 14.

components at issue. Opp. at 33. Indeed, the record establishes that many employees represented by Union Plaintiffs are unable to relocate and therefore face involuntary separation. PI Mem. at 22-23. These employees will lose their careers, income, health benefits and childcare. 3rd Vaughn Decl. ¶¶7-15 (healthcare, housing, custody, and career consequences); Dkt. 5-4 ¶22 (loss of income will impact childcare, house and car payments); Dkt. 5-35 ¶23 (employees with serious health issues will lose healthcare coverage); Dkt. 5-20 ¶12 (loss of health insurance and hard built careers). USDA contests only whether these harms are irreparable, ignoring governing law. *AFGE*, 139 F.4th at 1040 (backpay "cannot account for harms resulting from loss of income in the interim or for gaps in health- and childcare that accompany job loss"); *see Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) (finding "irreparable harm in the form of the loss of opportunity to pursue her chosen profession"). USDA overreads *Sampson v. Murray*, which "recognize[d] that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee" may be "irreparable injury." 415 U.S. 61, 92 n.68 (1974).

USDA asserts that harm to Local Governments and Non-Profit Plaintiffs is speculative. Opp. at 32. But USDA fails to engage with the substantial record demonstrating that attrition at the specific components at issue in this motion (on top of staff already stretched too thin by prior workforce reductions) will directly impact the services these Plaintiffs rely upon. *See* PI Mem. at 8-9, 10, 12, 13, 23-24 & nn.16-17. USDA is not correct that Plaintiffs need to show department-wide attrition and impact to establish harm from the specific actions at issue here. Opp. at 32. It does not matter that USDA is not engaged in department-wide RIFs when its actions are forcing important employees out of these already short-staffed components.

Finally, USDA nonsensically argues that Plaintiffs' "delay" in seeking an injunction renders harm caused by USDA's current actions speculative. Plaintiffs did not delay; they sued quickly once USDA moved forward its implementation (after USDA's lengthy delays). Plaintiffs first sought relief in the *AFGE v. Trump* case in July, and immediately refiled after the denial of amendment. USDA admits it only recently sent MDR letters to employees it is ordering to relocate. Dkt. 5-62 Ex. H (prior Rice Decl.) ¶110. It is not too late for this Court to

maintain the status quo and prevent the harm USDA is causing.

**9. The Balance of the Equities Strongly Supports Preliminary Relief**

The public interest is not served by permitting USDA to move forward with the actions Congress told it not to take. USDA fails to support its counsel's assertions that maintaining the status quo would cost the agency millions of dollars. Opp. at 34. USDA's own evidence demonstrates it has sufficient existing office space to house all impacted employees where they currently are (including in the D.C. area). Dkt. 71-1 ¶¶55-57, 92.[12] USDA's declaration purporting to list economic harm significantly overreaches, including relying on real estate actions at components and locations that are not subject to the requested relief, *id.* ¶¶313.A, B, 315.C, D, I, J, and/or that are not final and therefore need not occur, *id.* ¶¶313.C-F, 315.E-H, K, M. The prospective preliminary relief does not require USDA to "unwind" any other actions,[13] and USDA notably claims elsewhere that three of its hubs are already USDA locations, with plenty of space sitting empty. Dkt. 71-1 ¶22. Regardless, courts regularly enjoin government decisions where the costs were likely incurred contrary to law. *Quechan Tribe of Fort Yuma Indian Rsrv. v. DOI*, 755 F.Supp.2d 1104, 1121 (S.D. Cal. 2010) ("having invested … money is a problem of [government's] own making").

Counsel's assertions that maintaining the status quo would disrupt agency operations or interfere with hiring are also not supported by evidence. Opp. at 34. USDA *already* houses staff in multiple locations across most of these components, PI Mem. at 8-14, and if USDA chooses to move forward with other aspects of its plans, keeping employees and offices in place would not increase already existing logistics. The requested relief does not enjoin USDA from opening new offices or hiring into the new organizational structure. USDA may also choose not to move ahead with aspects of the reorganization if relocations are paused; to the extent USDA built those aspects around unlawful relocations, that is a problem USDA itself created.

[12] USDA has capacity for 10,300 D.C. employees and currently has 3,965. Dkt. 71-1 ¶¶55-57.

[13] USDA fails to identify or substantiate the costs of "unwinding" actions taken. *E.g.*, 3rd Vaughn Decl. ¶¶4 (temporary Rural Development lease). USDA took those actions while Plaintiffs' request for relief was pending (and so was on notice it might be enjoined) or secretly before its congressional notifications (and thus unlawfully even under USDA's view). Dkt. 5-62 Ex. H ¶115.A, B, L, M. Any costs pale in comparison to USDA's budget. Dkt. 5-61 Ex. C at 3.

USDA invokes the interests of *Plaintiff Unions*, but those unions only engaged in impact bargaining because they had to. They all support interim relief despite those agreements (which would become moot). Dkts. 5-8 ¶¶10-12; 5-23 ¶¶9-10, 5-18 ¶¶9-13; 5-6 ¶¶35-37. USDA sheds crocodile tears for the employees it is forcing to choose between their careers, families, and communities. Opp. at 34. Any employees who have already left USDA are not impacted. *Id*. USDA only speculates that others may have made commitments to move, without any evidence. *Id*. This speculation does not outweigh concrete harm to thousands of other employees who will be relocated or removed. USDA invokes supportive states (ignoring the larger number of states that have opposed these plans, Dkt. 66), but any potential economic benefits to hub states, Dkt. 74-1, would still materialize if USDA ultimately prevails. By contrast, preliminary relief is necessary to halt the harms to employees, Plaintiffs, and other states that will occur before the Court decides the merits. *See* Dkt. 66 at 2-12; Dkt. 5-1 at 8-14.

Finally, USDA argues that relief cannot intrude on the Executive Branch's desired operations, Opp. at 35, but the government cannot claim a *legitimate* interest in unlawful action. The Executive is obligated to take care that the laws enacted by Congress are *faithfully* executed, and Congress has already determined that USDA's reorganization is not in the public interest.

**10. Scope of Relief, Stay, and Bond**

USDA asserts without explanation that Plaintiffs' relief is overbroad, asking instead for more time and briefing to address the issue. In failing to do so in its opposition, USDA has waived objections. *Hartranft v. Encore Cap. Grp., Inc.*, 543 F.Supp.3d 893, 913 (S.D. Cal. 2021). Regardless, the requested relief is appropriate to address harms to Plaintiffs caused by the challenged actions. USDA requests a lengthy stay; but if Court grants relief, the same factors supporting relief weigh against a stay (and USDA has had plenty of time to prepare for a stay). Imposing no bond or a nominal bond is appropriate for public interest litigation enjoining unlawful agency action. *E.g.*, *AFGE v. Trump*, 784 F.Supp.3d 1316, 1359-60 (N.D. Cal. 2025).

DATED: September 23, 2026

Respectfully submitted,

Barbara J. Chisholm
Danielle E. Leonard

Corinne F. Johnson
Jessica M. Levy
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

By: */s/ Corinne F. Johnson*

*Attorneys for All Union and Non-Profit Plaintiffs*

Elena Goldstein (*pro hac vice*)
Tsuki Hoshijima (*pro hac vice*)
Andrea Matthews (*pro hac vice*)
Gregory M. Cumming (*pro hac vice*)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
egoldstein@democracyforward.org
thoshijima@democracyforward.org
amatthews@democracyforward.org
gcumming@democracyforward.org

By: */s/ Tsuki Hoshijima*

*Attorneys for All Union Plaintiffs*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiff American Federation of Government Employees, AFL-CIO (AFGE)*

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice*)

AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: _/s/ Teague Paterson_

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Yvette M. Piacsek (*pro hac vice*)
General Counsel
National Federation of Federal Employees, IAM,
AFL-CIO
1225 New York Ave. N.W., Suite 450
Washington, D.C. 20005
202-216-4428
ypiacsek@nffe.org

By: _/s/ Yvette M. Piacsek_

*Attorneys for National Federation of Federal Employees, IAM, AFL-CIO (NFFE)*

PARAS N. SHAH (*pro hac vice*)
General Counsel
KATHRYN W. BAILEY (*pro hac vice*)
Assistant Counsel
NATIONAL TREASURY EMPLOYEES UNION
800 K Street, NW
Suite 1000
Washington, DC 20001
(202) 572-5500
paras.shah@nteu.org
kathryn.bailey@nteu.org

By: _/s/ Paras N. Shah_

*Attorneys for National Treasury Employees Union (NTEU)*

David Chiu (SBN 189542)
City Attorney

Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: *<u>/s/ David Chiu</u>*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: *<u>/s/ Tony LoPresti</u>*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Gavin G. McCabe (SBN 130864)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St Fl 21,
San Francisco, CA 94104
Tel: (415) 875-6100
gmccabe@nrdc.org

By: */s/ Gavin G. McCabe*

*Attorneys for Plaintiff Natural Resources Defense Council*

Sharanya Mohan (SBN 350675)
Toby Merrill (*pro hac vice*)
Joshua Karsh (*pro hac vice*)
Kayla Svihovec (*pro hac vice*)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
kayla.svihovec@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Joshua Karsh*

*Attorneys for Plaintiffs Baltimore, MD, Martin Luther King, Jr. County, WA, Prince George's County, MD*

Christopher Sanders (*pro hac vice*)
General Counsel & Chief Legal Advisor to King County Executive Girmay Zahilay
Mika Rothman (*pro hac vice*)
Deputy General Counsel to King County Executive Girmay Zahilay
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
Office of King County Prosecuting Attorney Leesa Manion
401 5th Avenue, Ste. 800
Seattle, WA 98104
(206) 477-9483
ChrSanders@kingcounty.gov
mrothman@kingcounty.gov
EClancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for King County*

Ebony M. Thompson (*pro hac vice app. forthcoming*)
Baltimore City Solicitor
Christopher Sousa (SBN 264874)
Baltimore City Department of Law

100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (443) 610-8859
christopher.sousa@baltimorecity.gov

By: *_/s/ Christopher Sousa_*

*Attorneys for Plaintiff City of Baltimore*

Anthony D. Jones (*pro hac vice app. forthcoming*)
Prince George's County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
Tel: (301) 925-5225
adjones@princegeorgescountymd.gov

By: *_/s/ Anthony D. Jones_*

*Attorney for Plaintiff Prince George's County*