USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

JUN 9 2016

The Honorable Robert Aderholt
Chairman
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
U.S. House of Representatives
2362-A Rayburn House Office Building
Washington, D.C. 20515

Dear Congressman Aderholt:

In accordance with section 717(d)(2), I am writing to inform the Subcommittee about the proposed organizational realignment and consolidation of the U.S. Department of Agriculture's (USDA) National Appeals Division (NAD), the Office of Administrative Law Judges (OALJ), and the Office of the Judicial Officer (OJO), the three offices that conduct two-step administrative adjudications at USDA. Section 717(d)(2) requires notification to the Committee on Appropriations of any action "realigning or reorganizing new, current, or vacant positions or agency activities or functions to establish a center, office, branch, or similar entity with five or more personnel" funded by appropriations provided under that Act or previous appropriations acts.

The proposed consolidation would establish a new USDA Office of Hearings and Appeals (OHA) and transfer the NAD, OALJ, and the OJO to the new Department Staff Office. OALJ and OJO, which currently reside within Departmental Management (DM), will be realigned and consolidated with NAD, for administrative purposes, under the umbrella of the new OHA. The consolidation of offices under OHA will facilitate the sharing of administrative services and will provide for a more consistent, uniform process for the adjudication of administrative appeals at USDA. Once this consolidation is complete, all of the current independent administrative appeals and adjudication offices at USDA will be combined, for administrative purposes, within the same service organization. Consolidating these separate organizations under a single, umbrella organization will create cost and operational efficiencies by allowing administrative functions, such as case-tracking, Information Technology (IT), budget, and personnel, to be consolidated and shared.

A key feature of the consolidation is the creation of a new Administrative Services unit that will streamline overlapping administrative services currently provided by employees within NAD, OALJ, and OJO. This new unit, which would be housed within the OHA Headquarters, will address a variety of employee and customer needs, such as IT, budget, personnel, and case tracking, to all three of the appeals offices. Thus, employees who currently provide these services as employees of either NAD, OALJ, or OJO, would be reassigned to the newly formed Administrative Services unit and become employees of OHA.

After consolidation, there would be no change to the adjudicatory missions or functions of NAD, OALJ, or OJO. Although a new umbrella organization overseen by the NAD Director would be created as part of this consolidation, the three appeals offices that will be combined to form the new OHA would continue to operate separately and independently of each other. For example, the Office of the Administrative Law Judges (ALJ's) would continue to handle the same cases it handles today, and its ALJs would continue to be overseen by OALJ's Chief Judge. Likewise, the Judicial Officer would continue to exist as a separate and distinct position with review authority over decisions issued by the ALJs. Finally, NAD would continue to handle the same kinds of appeals of adverse program decisions it handles today, and it would continue to be supervised directly by the NAD Director, as is required by statute.

This proposed consolidation is consistent with existing laws and regulations, but will require a revision to the Secretary's delegated authority from the Assistant Secretary of Administration to OHA to reflect the administrative oversight. The Office of Personnel Management (OPM) is responsible for the selection of ALJ's at Federal agencies. The new delegations also will reflect that the Secretary shall recommend to OPM the selection of the Chief ALJ and ALJ's and that the Secretary shall select the Judicial Officer.

The proposed consolidation does not require any reduction in staff or a change of duty locations for employees. Further, this proposal does not recommend creating new positions, position descriptions, or promotions of current employees as a direct result of this reorganization. The projected staffing for the consolidated entity reorganizes reporting lines of authority and assigns general administrative support duties to 18 current employees with administrative duties who will now report to the Headquarters, OHA. This proposed organizational realignment will not adversely affect customers or employees.

This proposed realignment requires no supplemental appropriations. After consolidation, funding for NAD, OALJ, and OJO would come from a new OHA general appropriation code. OJO, OALJ, and NAD would receive allocations for other costs from the new Office of Hearings and Appeals.

Should you have questions, please have a member of your staff contact Todd Batta, Assistant Secretary for Congressional Relations, at (202) 720-7095. A similar letter is being sent to Congressman Sam Parr, Congressman Robert Aderholt, and Senator Jerry Moran.
Sincerely,

Thomas J. Vilsack
Secretary

Enclosures

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

JUN 9 2016

The Honorable Jerry Moran
Chairman
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
United States Senate
129 Dirksen Senate Office Building
Washington, D.C. 20510

Dear Senator Moran:

In accordance with section 717(d)(2), I am writing to inform the Subcommittee about the proposed organizational realignment and consolidation of the U.S. Department of Agriculture's (USDA) National Appeals Division (NAD), the Office of Administrative Law Judges (OALJ), and the Office of the Judicial Officer (OJO), the three offices that conduct two-step administrative adjudications at USDA. Section 717(d)(2) requires notification to the Committee on Appropriations of any action "realigning or reorganizing new, current, or vacant positions or agency activities or functions to establish a center, office, branch, or similar entity with five or more personnel" funded by appropriations provided under that Act or previous appropriations acts.

The proposed consolidation would establish a new USDA Office of Hearings and Appeals (OHA) and transfer the NAD, OALJ, and the OJO to the new Department Staff Office. OALJ and OJO, which currently reside within Departmental Management (DM), will be realigned and consolidated with NAD, for administrative purposes, under the umbrella of the new OHA. The consolidation of offices under OHA will facilitate the sharing of administrative services and will provide for a more consistent, uniform process for the adjudication of administrative appeals at USDA. Once this consolidation is complete, all of the current independent administrative appeals and adjudication offices at USDA will be combined, for administrative purposes, within the same service organization. Consolidating these separate organizations under a single, umbrella organization will create cost and operational efficiencies by allowing administrative functions, such as case-tracking, Information Technology (IT), budget, and personnel, to be consolidated and shared.

A key feature of the consolidation is the creation of a new Administrative Services unit that will streamline overlapping administrative services currently provided by employees within NAD, OALJ, and OJO. This new unit, which would be housed within the OHA Headquarters, will address a variety of employee and customer needs, such as IT, budget, personnel, and case tracking, to all three of the appeals offices. Thus, employees who currently provide these services as employees of either NAD, OALJ, or OJO, would be reassigned to the newly formed Administrative Services unit and become employees of OHAs.

After consolidation, there would be no change to the adjudicatory missions or functions of NAD, OALJ, or OJO. Although a new umbrella organization overseen by the NAD Director would be created as part of this consolidation, the three appeals offices that will be combined to form the new

OHA would continue to operate separately and independently of each other. For example, the Office of the Administrative Law Judges (ALJ's) would continue to handle the same cases it handles today, and its ALJs would continue to be overseen by OALJ's Chief Judge. Likewise, the Judicial Officer would continue to exist as a separate and distinct position with review authority over decisions issued by the ALJs. Finally, NAD would continue to handle the same kinds of appeals of adverse program decisions it handles today, and it would continue to be supervised directly by the NAD Director, as is required by statute.

This proposed consolidation is consistent with existing laws and regulations, but will require a revision to the Secretary's delegated authority from the Assistant Secretary of Administration to OHA to reflect the administrative oversight. The Office of Personnel Management (OPM) is responsible for the selection of ALJ's at Federal agencies. The new delegations also will reflect that the Secretary shall recommend to OPM the selection of the Chief ALJ and ALJ's and that the Secretary shall select the Judicial Officer.

The proposed consolidation does not require any reduction in staff or a change of duty locations for employees. Further, this proposal does not recommend creating new positions, position descriptions, or promotions of current employees as a direct result of this reorganization. The projected staffing for the consolidated entity reorganizes reporting lines of authority and assigns general administrative support duties to 18 current employees with administrative duties who will now report to the Headquarters, OHA. This proposed organizational realignment will not adversely affect customers or employees.

This proposed realignment requires no supplemental appropriations. After consolidation, funding for NAD, OALJ, and OJO would come from a new OHA general appropriation code. OJO, OALJ, and NAD would receive allocations for other costs from the new Office of Hearings and Appeals.

Should you have questions, please have a member of your staff contact Todd Batta, Assistant Secretary for Congressional Relations, at (202) 720-7095. A similar letter is being sent to Congressman Sam Parr, Congressman Robert Aderholt, and Senator Jerry Moran.

Sincerely,

Thomas J. Vilsack
Secretary

Enclosures

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

JUN 9 2016

The Honorable Jeff Merkley
Ranking Member
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
United States Senate
190 Dirksen Senate Office Building
Washington, D.C. 20510

Dear Senator Merkley:

In accordance with section 717(d)(2), I am writing to inform the Subcommittee about the proposed organizational realignment and consolidation of the U.S. Department of Agriculture's (USDA) National Appeals Division (NAD), the Office of Administrative Law Judges (OALJ), and the Office of the Judicial Officer (OJO), the three offices that conduct two-step administrative adjudications at USDA. Section 717(d)(2) requires notification to the Committee on Appropriations of any action "realigning or reorganizing new, current, or vacant positions or agency activities or functions to establish a center, office, branch, or similar entity with five or more personnel" funded by appropriations provided under that Act or previous appropriations acts.

The proposed consolidation would establish a new USDA Office of Hearings and Appeals (OHA) and transfer the NAD, OALJ, and the OJO to the new Department Staff Office. OALJ and OJO, which currently reside within Departmental Management (DM), will be realigned and consolidated with NAD, for administrative purposes, under the umbrella of the new OHA. The consolidation of offices under OHA will facilitate the sharing of administrative services and will provide for a more consistent, uniform process for the adjudication of administrative appeals at USDA. Once this consolidation is complete, all of the current independent administrative appeals and adjudication offices at USDA will be combined, for administrative purposes, within the same service organization. Consolidating these separate organizations under a single, umbrella organization will create cost and operational efficiencies by allowing administrative functions, such as case-tracking, Information Technology (IT), budget, and personnel, to be consolidated and shared.

A key feature of the consolidation is the creation of a new Administrative Services unit that will streamline overlapping administrative services currently provided by employees within NAD, OALJ, and OJO. This new unit, which would be housed within the OHA Headquarters, will address a variety of employee and customer needs, such as IT, budget, personnel, and case tracking, to all three of the appeals offices. Thus, employees who currently provide these services as employees of either NAD, OALJ, or OJO, would be reassigned to the newly formed Administrative Services unit and become employees of OHA.

provide these services as employees of either NAD, OALJ or OJO, would be reassigned to the newly formed Administrative Services unit and become employees of OHA.

After consolidation, there would be no change to the adjudicatory missions or functions of NAD, OALJ, or OJO. Although a new umbrella organization overseen by the NAD Director would be created as part of this consolidation, the three appeals offices that will be combined to form the new OHA would continue to operate separately and independently of each other. For example, the Office of the Administrative Law Judges (ALJ's) would continue to handle the same cases it handles today, and its ALJs would continue to be overseen by OALJ's Chief Judge. Likewise, the Judicial Officer would continue to exist as a separate and distinct position with review authority over decisions issued by the ALJs. Finally, NAD would continue to handle the same kinds of appeals of adverse program decisions it handles today, and it would continue to be supervised directly by the NAD Director, as is required by statute.

This proposed consolidation is consistent with existing laws and regulations, but will require a revision to the Secretary's delegated authority from the Assistant Secretary of Administration to OHA to reflect the administrative oversight. The Office of Personnel Management (OPM) is responsible for the selection of ALJ's at Federal agencies. The new delegations also will reflect that the Secretary shall recommend to OPM the selection of the Chief ALJ or may delegate that selection to the Deputy Secretary; the Chief ALJ shall select the ALJ's, and that the Secretary shall select the Judicial Officer.

The proposed consolidation does not require any reduction in staff or a change of duty locations for employees. Further, this proposal does not recommend creating new positions, position descriptions, or promotions of current employees as a direct result of this reorganization. The projected staffing for the consolidated entity reorganizes reporting lines of authority and assigns general administrative support duties to 18 current employees with administrative duties who will now report to the Headquarters, OHA. This proposed organizational realignment will not adversely affect customers or employees.

This proposed realignment requires no supplemental appropriations. After consolidation, funding for NAD, OALJ, and OJO would come from a new OHA general appropriation code. OJO, OALJ, and NAD would receive allocations for other costs from the new Office of Hearings and Appeals.

Should you have questions, please have a member of your staff contact Todd Batta, Assistant Secretary for Congressional Relations, at (202) 720-7095. A similar letter is being sent to Congressman Sam Parr, Congressman Robert Aderholt, and Senator Jerry Moran.

Sincerely,

Thomas J. Vilsack
Secretary

Enclosures

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

JUN 9 2016

The Honorable Sam Farr
Ranking Member
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
U.S. House of Representatives
1016 Longworth House Office Building
Washington, D.C. 20515

Dear Congressman Farr:

In accordance with section 717(d)(2), I am writing to inform the Subcommittee about the proposed organizational realignment and consolidation of the U.S. Department of Agriculture's (USDA) National Appeals Division (NAD), the Office of Administrative Law Judges (OALJ), and the Office of the Judiciary Officer (OJO), the three offices that conduct two-step administrative adjudications at USDA. Section 717(d)(2) requires notification to the Committee on Appropriations of any action "realigning or reorganizing new, current, or vacant positions or agency activities or functions to establish a center, office, branch, or similar entity with five or more personnel" funded by appropriations provided under that Act or previous appropriations acts.

The proposed consolidation would establish a new USDA Office of Hearings and Appeals (OHA) and transfer the NAD, OALJ, and the OJO to the new Department Staff Office. OALJ and OJO, which currently reside within Departmental Management (DM), will be realigned and consolidated with NAD, for administrative purposes, under the umbrella of the new OHA. The consolidation of offices under OHA will facilitate the sharing of administrative services and will provide for a more consistent, uniform process for the adjudication of administrative appeals at USDA. Once this consolidation is complete, all of the current independent administrative appeals and adjudication offices at USDA will be combined, for administrative purposes, within the same service organization. Consolidating these separate organizations under a single, umbrella organization will create cost and operational efficiencies by allowing administrative functions, such as case-tracking, Information Technology (IT), budget, and personnel, to be consolidated and shared.

A key feature of the consolidation is the creation of a new Administrative Services unit that will streamline overlapping administrative services currently provided by employees within NAD, OALJ and OJO. This new unit, which would be housed within the OHA Headquarters, will address a variety of employee and customer needs, such as IT, budget, personnel, and case tracking, to all three of the appeals offices. Thus, employees who currently provide these services as employees of either NAD, OALJ, or OJO, would be reassigned to the newly formed Administrative Services unit and become employees of OHA.

OHA would continue to operate separately and independently of each other. For example, the Office of the Administrative Law Judges (ALJ's) would continue to handle the same cases it handles today, and its ALJs would continue to be overseen by OALJ's Chief Judge. Likewise, the Judicial Officer would continue to exist as a separate and distinct position with review authority over decisions issued by the ALJs. Finally, NAD would continue to handle the same kinds of appeals of adverse program decisions it handles today, and it would continue to be supervised directly by the NAD Director, as is required by statute.

This proposed consolidation is consistent with existing laws and regulations, but will require a revision to the Secretary's delegated authority from the Assistant Secretary of Administration to OHA to reflect the administrative oversight. The Office of Personnel Management (OPM) is responsible for the selection of ALJ's at Federal agencies. The new delegations also will reflect that the Secretary shall recommend to OPM the selection of the Chief ALJ and ALJ's and that the Secretary shall select the Judicial Officer.

The proposed consolidation does not require any reduction in staff or a change of duty locations for employees. Further, this proposal does not recommend creating new positions, position descriptions, or promotions of current employees as a direct result of this reorganization. The projected staffing for the consolidated entity reorganizes reporting lines of authority and assigns general administrative support duties to 18 current employees with administrative duties who will now report to the Headquarters, OHA. This proposed organizational realignment will not adversely affect customers or employees.

This proposed realignment requires no supplemental appropriations. After consolidation, funding for NAD, OALJ, and OJO would come from a new OHA general appropriation code. OJO, OALJ, and NAD would receive allocations for other costs from the new Office of Hearings and Appeals.

Should you have questions, please have a member of your staff contact Todd Batta, Assistant Secretary for Congressional Relations, at (202) 720-7095. A similar letter is being sent to Congressman Sam Parr, Congressman Robert Aderholt, and Senator Jerry Moran.

Sincerely,

Thomas J. Vilsack
Secretary

Enclosures

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

JUN 06 2018

The Honorable Jeff Merkley
Ranking Member
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
United States Senate
190 Dirksen Senate Office Building
Washington, D.C. 20510

Dear Ranking Member Merkley:

This letter is to provide you notification and information on actions we are taking at the U.S. Department of Agriculture (USDA) to align the climate, environmental markets, and energy policy functions of the Office of the Chief Economist (OCE).

We are proposing to place three small offices under one office that would have broader reach and greater capabilities. The new Office of Energy and Environmental Policy (OEEP) will coordinate policy analysis, long-range planning, priority research setting, and response strategies for addressing energy development and environmental policy. OEEP will house the Office of Energy Policy and New Uses (OEPNU), the Office of Environmental Markets (OEM), and the Climate Change Program Office (CCPO).

CCPO and OEM functioned as a joint program for the past 7 years, with both offices led by one person, and the teams worked jointly on many projects and activities. OEPNU conducts analyses of energy production and markets, including renewable and alternative energy sources. By housing the functions performed by CCPO, OEM, and OEPNU within one larger office, the structure will facilitate joint work; allow for flexibility in meeting new demand; and enable better coordination on issues that relate to energy, conservation, and environmental policy.

The proposed organization change, as outlined in the enclosed organizational charts, is based upon sound principles of organizational design. Aligning three small offices within one combined office will improve efficiency and avoid unnecessary management layers. The realignment will reduce administrative overhead and maintain clear lines of authority and accountability.

The broader office will be a source of information to the Department on scientific developments and policy issues related to energy and the environment and focus on issues that affect farms and forests in the United States. The office will continue to provide leadership, direction, and coordination regarding the development of environmental service markets, including the establishment of technical guidelines for quantifying environmental services as required under Section 2709 of the 2008 Farm Bill. In addition, OEEP will be the focal point for coordinating issues related to climate change consistent with 7 U.S.C., Section 6701.

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

AUG 9 2018

The Honorable Robert Aderholt
Chairman
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
U.S. House of Representatives
2362-A Rayburn House Office Building
Washington, D.C. 20515

Dear Mr. Chairman:

I want to thank you for your continued support for the actions we have taken at the U.S. Department of Agriculture (USDA) to focus on our customers and improve the implementation of our programs. Your continued support is critical to our efforts to "do right and feed everyone."

Today, I am announcing in the Federal Register an opportunity for communities across the Nation to express their interest in hosting the headquarters of two of our agencies, the Economic Research Service (ERS) and the National Institute of Food and Agriculture (NIFA). We already know that hiring and retaining qualified researchers and scientists is difficult in the D.C. Metro region. The cost of living is high, the commuting environment is difficult, and office space is expensive. ERS and NIFA have had a difficult time hiring, developing, and retaining staff, particularly in the agricultural sciences and in the vital area of supply and demand estimates for the major commodity sectors.

NIFA's lease for its Waterfront Center location expires in January 2020, and ERS can vacate its Washington, D.C., space with the appropriate notifications to the General Services Administration. Now is the appropriate time to consider whether there is an opportunity for the Agencies to be closer to their customers and to facilitate economic development in Rural America. To that end, NIFA and ERS will engage private sector assistance in our search using funding appropriated in the 2018 Omnibus Appropriations Act, including the funding provided specifically to NIFA for relocation and renovation costs.

As part of this effort, communities and other interested parties will have 30 days to provide an expression of interest in hosting these Agencies. ERS and NIFA will go through a process to identify the most competitive situation and the most beneficial location for our employees and our stakeholders. Consideration will be given to transportation infrastructure, workforce availability, community/quality of life, and operating costs and incentives. USDA is interested in exploring options to house the headquarters of NIFA and ERS jointly or in separate locations. The expectation is that a location selection would happen by the end of calendar year 2018.

An Equal Opportunity Employer

In addition, our stakeholders need and deserve a USDA that provides economic analysis that answers key questions and is responsive. In this regard, I am realigning ERS under the Office of the Chief Economist (OCE) to ensure that the economic analyses provided by the Department address customers' needs across the economy and also are targeted to address the key questions needed to support decision making here at the Department and by Congress.

There needs to be a deliberate refocusing of ERS research and analysis on its core mission and role as a Federal intramural research and statistical organization. The pursuit of ERS's core mission areas has been unfocused at times. The Chief Economist and ERS have similar delegated authorities, and combining the efforts of each will improve the provision of economic research and data necessary for our stakeholders. Realignment under the Chief Economist will remove overlapping responsibility for the direction of economic analysis used in decision making at the Department and the role of USDA's economists in providing customer-focused economic analyses.

The researchers at ERS provide a significant amount of useful and impactful analyses of the farm and rural economy. ERS develops and publishes a number of Principle Statistical Indicators, such as the Farm Income estimates. ERS will continue to provide those useful services to our stakeholders and decision makers across the agricultural economy; however, we expect that we will see a number of improvements. For example, the realignment should strengthen ERS contributions to the Department's situation and outlook efforts by addressing current retention and promotion issues that have made it difficult to build a core team of experienced analysts dedicated to evaluating crop and livestock supply and demand. Similarly, as normal attrition occurs, the realignment will provide an assurance of continuity to the critically important ERS team responsible for estimating and evaluating farm income. Lastly, the realignment will ensure that ERS research is well aligned to support important questions associated with Department priorities, including renewable fuels, rural America, infrastructure needs, situation and outlook, and cost benefit analyses to support the Department's rulemaking efforts.

A similar letter will be sent to Ranking Member Sanford Bishop, Jr.

Sincerely,

Sonny Perdue

Sonny Perdue
Secretary

Enclosure

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

AUG 2 8 2018

The Honorable John Hoeven
Chairman
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration and Related Agencies
Committee on Appropriations
United States Senate
129 Dirksen Senate Office Building
Washington, D.C. 20510

Dear Mr. Chairman:

On September 7, 2017, I informed the Committees of the U.S. Department of Agriculture's (USDA) plans to merge mission support activities at the mission area level across the Department. These mergers are intended to increase operational efficiencies and maximize collaboration between agencies that serve similar customers. Today, I am writing to provide details for a proposed reorganization within the Farm Production and Conservation (FPAC) mission area that includes the creation of the FPAC Business Center. The FPAC Business Center will be devoted to enterprise solutions for mission support activities, including information technology, financial management, human resources, acquisition, property management, and related business and administrative processes to improve customer service at the mission area level.

FPAC is the focal point for domestic agricultural issues related to farmers, ranchers, and forest stewards. Last year, we aligned the Farm Service Agency (FSA), Natural Resources Conservation Service (NRCS), and Risk Management Agency (RMA) under the FPAC mission area, which provided a simplified "one-stop shop" for the men and women farming, ranching, and managing private forests across America.

The purpose of this organizational change is to strengthen and improve our customer service, modernize how we do business by improving and streamlining processes, thereby creating a high-performing and results-driven culture, and better aligning employee resources.

For the FPAC Business Center, the supervisor-to-employee ratio will improve from 1:4 to 1:9, which will, in turn, make better use of FPAC's budgetary resources. The reorganization will not adversely affect existing employees of FSA, NRCS, and RMA. All employees who will transition to the FPAC Business Center will maintain their current grade with no change to their duty station. No employee relocations or reduction will be required; therefore, no relocation costs, severance pay, buyouts, or lease termination costs will be incurred. Also, all applicable employee labor relations organizations have been notified of the proposed reorganization, and the reorganization will not increase the FPAC mission area's footprint.

The effective date of this reorganization is scheduled for the first full pay period after the start of fiscal year 2019, or October 14, 2018. Upon transition of funding and staff from FSA ($144.6 million and 915 staff years), RMA ($17.1 million and 82 staff years), and NRCS ($64.0 million discretionary, $60.2 million from mandatory conservation programs, and 882 staff years), the FPAC Business Center's anticipated budget for 2019 is $292.7 million and 1,879 staff years.

FPAC is committed to improving service and efficiency for the benefit of our customers, consistent with the USDA-wide goal to create a customer-focused culture of public service, and improve our effectiveness, efficiency, and accountability.

As a result of this proposed reorganization, FPAC will be positioned to more effectively fulfill its mission to implement programs designed to mitigate the significant risks of farming through crop insurance; conservation programs and technical assistance; and commodity, lending, and disaster programs.

Enclosed are the FPAC mission area organizational charts, pre- and post-Business Center (including a delineation of those functions that will transfer from the individual agencies to the Business Center), and a table of the proposed changes to staffing and funding.

If you have any questions, please have a member of your staff contact the Office of Congressional Relations at (202) 720–7095. A similar letter is being sent to Ranking Member Jeff Merkley.

Sincerely,

Sonny Perdue

Sonny Perdue
Secretary

Enclosures

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

AUG 28 2018

The Honorable Jeff Merkley
Ranking Member
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration and Related Agencies
Committee on Appropriations
United States Senate
190 Dirksen Senate Office Building
Washington, D.C. 20510

Dear Ranking Member Merkley:

On September 7, 2017, I informed the Committees of the U.S. Department of Agriculture's (USDA) plans to merge mission support activities at the mission area level across the Department. These mergers are intended to increase operational efficiencies and maximize collaboration between agencies that serve similar customers. Today, I am writing to provide details for a proposed reorganization within the Farm Production and Conservation (FPAC) mission area that includes the creation of the FPAC Business Center. The FPAC Business Center will be devoted to enterprise solutions for mission support activities, including information technology, financial management, human resources, acquisition, property management, and related business and administrative processes to improve customer service at the mission area level.

FPAC is the focal point for domestic agricultural issues related to farmers, ranchers, and forest stewards. Last year, we aligned the Farm Service Agency (FSA), Natural Resources Conservation Service (NRCS), and Risk Management Agency (RMA) under the FPAC mission area, which provided a simplified "one-stop shop" for the men and women farming, ranching, and managing private forests across America.

The purpose of this organizational change is to strengthen and improve our customer service, modernize how we do business by improving and streamlining processes, thereby creating a high-performing and results-driven culture, and better aligning employee resources.

For the FPAC Business Center, the supervisor-to-employee ratio will improve from 1:4 to 1:9, which will, in turn, make better use of FPAC's budgetary resources. The reorganization will not adversely affect existing employees of FSA, NRCS, and RMA. All employees who will transition to the FPAC Business Center will maintain their current grade with no change to their duty station. No employee relocations or reduction will be required; therefore, no relocation costs, severance pay, buyouts, or lease termination costs will be incurred. Also, all applicable employee labor relations organizations have been notified of the proposed reorganization, and the reorganization will not increase the FPAC mission area's footprint.

The effective date of this reorganization is scheduled for the first full pay period after the start of fiscal year 2019, or October 14, 2018. Upon transition of funding and staff from FSA ($144.6 million and 915 staff years), RMA ($17.1 million and 82 staff years), and NRCS ($64.0 million discretionary, $60.2 million from mandatory conservation programs, and 882 staff years), the FPAC Business Center's anticipated budget for 2019 is $292.7 million and 1,879 staff years.

FPAC is committed to improving service and efficiency for the benefit of our customers, consistent with the USDA-wide goal to create a customer-focused culture of public service, and improve our effectiveness, efficiency, and accountability.

As a result of this proposed reorganization, FPAC will be positioned to more effectively fulfill its mission to implement programs designed to mitigate the significant risks of farming through crop insurance; conservation programs and technical assistance; and commodity, lending, and disaster programs.

Enclosed are the FPAC mission area organizational charts, pre- and post-Business Center (including a delineation of those functions that will transfer from the individual agencies to the Business Center), and a table of the proposed changes to staffing and funding.

If you have any questions, please have a member of your staff contact the Office of Congressional Relations at (202) 720–7095. A similar letter is being sent to Chairman John Hoeven.

Sincerely,

Sonny Perdue

Sonny Perdue
Secretary

Enclosures

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

AUG 28 2018

The Honorable Robert Aderholt
Chairman
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
U.S. House of Representatives
2362A Rayburn House Office Building
Washington, D.C. 20515

Dear Mr. Chairman:

On September 7, 2017, I informed the Committees of the U.S. Department of Agriculture's (USDA) plans to merge mission support activities at the mission area level across the Department. These mergers are intended to increase operational efficiencies and maximize collaboration between agencies that serve similar customers. Today, I am writing to provide details for a proposed reorganization within the Farm Production and Conservation (FPAC) mission area that includes the creation of the FPAC Business Center. The FPAC Business Center will be devoted to enterprise solutions for mission support activities, including information technology, financial management, human resources, acquisition, property management, and related business and administrative processes to improve customer service at the mission area level.

FPAC is the focal point for domestic agricultural issues related to farmers, ranchers, and forest stewards. Last year, we aligned the Farm Service Agency (FSA), Natural Resources Conservation Service (NRCS), and Risk Management Agency (RMA) under the FPAC mission area, which provided a simplified "one-stop shop" for the men and women farming, ranching, and managing private forests across America.

The purpose of this organizational change is to strengthen and improve our customer service, modernize how we do business by improving and streamlining processes, thereby creating a high-performing and results-driven culture, and better aligning employee resources.

For the FPAC Business Center, the supervisor-to-employee ratio will improve from 1:4 to 1:9, which will, in turn, make better use of FPAC's budgetary resources. The reorganization will not adversely affect existing employees of FSA, NRCS, and RMA. All employees who will transition to the FPAC Business Center will maintain their current grade with no change to their duty station. No employee relocations or reduction will be required; therefore, no relocation costs, severance pay, buyouts, or lease termination costs will be incurred. Also, all applicable employee labor relations organizations have been notified of the proposed reorganization, and the reorganization will not increase the FPAC mission area's footprint.

The effective date of this reorganization is scheduled for the first full pay period after the start of fiscal year 2019, or October 14, 2018. Upon transition of funding and staff from FSA ($144.6 million and 915 staff years), RMA ($17.1 million and 82 staff years), and NRCS ($64.0 million discretionary, $60.2 million from mandatory conservation programs, and 882 staff years), the FPAC Business Center's anticipated budget for 2019 is $292.7 million and 1,879 staff years.

FPAC is committed to improving service and efficiency for the benefit of our customers, consistent with the USDA-wide goal to create a customer-focused culture of public service, and improve our effectiveness, efficiency, and accountability.

As a result of this proposed reorganization, FPAC will be positioned to more effectively fulfill its mission to implement programs designed to mitigate the significant risks of farming through crop insurance; conservation programs and technical assistance; and commodity, lending, and disaster programs.

Enclosed are the FPAC mission area organizational charts, pre- and post-Business Center (including a delineation of those functions that will transfer from the individual agencies to the Business Center), and a table of the proposed changes to staffing and funding.

If you have any questions, please have a member of your staff contact the Office of Congressional Relations at (202) 720–7095. A similar letter is being sent to Ranking Member Sanford Bishop, Jr.

Sincerely,

Sonny Perdue

Sonny Perdue
Secretary

Enclosures

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

AUG 28 2018

The Honorable Sanford Bishop, Jr.
Ranking Member
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
U.S. House of Representatives
1016 Longworth House Office Building
Washington, D.C. 20515

Dear Ranking Member Bishop:

On September 7, 2017, I informed the Committees of the U.S. Department of Agriculture's (USDA) plans to merge mission support activities at the mission area level across the Department. These mergers are intended to increase operational efficiencies and maximize collaboration between agencies that serve similar customers. Today, I am writing to provide details for a proposed reorganization within the Farm Production and Conservation (FPAC) mission area that includes the creation of the FPAC Business Center. The FPAC Business Center will be devoted to enterprise solutions for mission support activities, including information technology, financial management, human resources, acquisition, property management, and related business and administrative processes to improve customer service at the mission area level.

FPAC is the focal point for domestic agricultural issues related to farmers, ranchers, and forest stewards. Last year, we aligned the Farm Service Agency (FSA), Natural Resources Conservation Service (NRCS), and Risk Management Agency (RMA) under the FPAC mission area, which provided a simplified "one-stop shop" for the men and women farming, ranching, and managing private forests across America.

The purpose of this organizational change is to strengthen and improve our customer service, modernize how we do business by improving and streamlining processes, thereby creating a high-performing and results-driven culture, and better aligning employee resources.

For the FPAC Business Center, the supervisor-to-employee ratio will improve from 1:4 to 1:9, which will, in turn, make better use of FPAC's budgetary resources. The reorganization will not adversely affect existing employees of FSA, NRCS, and RMA. All employees who will transition to the FPAC Business Center will maintain their current grade with no change to their duty station. No employee relocations or reduction will be required; therefore, no relocation costs, severance pay, buyouts, or lease termination costs will be incurred. Also, all applicable employee labor relations organizations have been notified of the proposed reorganization, and the reorganization will not increase the FPAC mission area's footprint.

The effective date of this reorganization is scheduled for the first full pay period after the start of fiscal year 2019, or October 14, 2018. Upon transition of funding and staff from FSA ($144.6 million and 915 staff years), RMA ($17.1 million and 82 staff years), and NRCS ($64.0 million discretionary, $60.2 million from mandatory conservation programs, and 882 staff years), the FPAC Business Center's anticipated budget for 2019 is $292.7 million and 1,879 staff years.

FPAC is committed to improving service and efficiency for the benefit of our customers, consistent with the USDA-wide goal to create a customer-focused culture of public service, and improve our effectiveness, efficiency, and accountability.

As a result of this proposed reorganization, FPAC will be positioned to more effectively fulfill its mission to implement programs designed to mitigate the significant risks of farming through crop insurance; conservation programs and technical assistance; and commodity, lending, and disaster programs.

Enclosed are the FPAC mission area organizational charts, pre- and post-Business Center (including a delineation of those functions that will transfer from the individual agencies to the Business Center), and a table of the proposed changes to staffing and funding.

If you have any questions, please have a member of your staff contact the Office of Congressional Relations at (202) 720–7095. A similar letter is being sent to Chairman Robert Aderholt.

Sincerely,

Sonny Perdue
Secretary

Enclosures

USDA

United States Department of Agriculture

Office of the Secretary
Washington, D.C. 20250

NOV 30 2018

The Honorable Jeff Merkley
Ranking Member
Subcommittee on Agriculture, Rural Development,
Food and Drug Administration, and Related Agencies
Committee on Appropriations
United States Senate
190 Dirksen Senate Office Building
Washington, D.C. 20510

Dear Ranking Member Merkley:

On June 21, 2018, the Office of Management and Budget released "Delivering Government Solutions in the 21st Century–Reform Plan and Reorganization Recommendations," proposing several forward-thinking ideas about reorganizing the government to refocus structures around mission and customers, enhance management accountability, prioritize limited resources, eliminate unnecessary activities, and improve communications and coordination. As part of these efforts, the U.S. Department of Agriculture (USDA) continues to focus on our customers and improvements in the delivery of our programs. This letter is intended to inform you of plans within USDA's Rural Development (RD) to ensure that programs are delivered efficiently, effectively, and with integrity to its stakeholders and customers.

First, to increase focus on grid security and disaster recovery, RD's Rural Utilities Service will reorganize the Electric Program by creating and staffing the Innovative Partnership and Grid Security Division (IPGS). IPGS will be responsible for increasing coordination and collaboration with other USDA and Federal Agencies, as well as industry and lending organizations. IPGS will also be responsible for the management of the High Energy Cost Grant Program (HECG), the Energy Efficiency Conservation Loan Program (EECLP), the Rural Energy Savings Program (RESP), cybersecurity, grid security and resilience, disaster recovery and emergency management, and other duties as may be necessary.

The Electric Program has, for the past several years, an annual guaranteed loan budget of $5.5 billion to provide financing for electric infrastructure for rural electric cooperatives and other eligible entities. EECLP, HECG, and RESP are smaller programs, in the millions of dollars annually. By creating a new IPGS, the existing seven staff will be assigned to specifically focus on these programs, which will lead to increased efficiencies. No employees will be required to relocate because of the establishment of the IPGS Division.

Second, RD will integrate the Single-Family Housing Guaranteed Loan Program (SFHGLP), currently delivered from staff in the 47 State Offices, into a single centrally managed unit that provides nationwide program delivery and coverage. This effort will be in tandem with ongoing efforts to implement the recent authority provided by Congress to allow lenders to provide guaranteed loans on USDA's behalf, which will require regulation and IT changes to achieve. The SFHGLP guarantees affordable, no-money down, 30-year loans to eligible rural households through agency-approved, private sector lenders. As of July 2018, SFHGLP is RD's largest credit program, with more than one million underlying loans that have over $120 billion in outstanding principal. Over 100,000 new guaranteed loans are made annually.

An Equal Opportunity Employer

In February 2018, 10 staff were dedicated from 10 State Offices to eliminate the backlog of SFHGLP applications, which was as high as 16 days in certain states. By August, all backlogs in State Offices had been eliminated through the actions of 23 dedicated employees in 31 states. The inclusion of the additional 21 states was at the request of State Rural Development Offices, and no staff were physically relocated. As a result of this backlog reduction strategy, RD has identified that centralizing the SFHGLP will standardize operations across states and enable more efficient loan processing with improved risk management.

In fiscal year 2018, the SFHGLP obligated $16.8 billion in loans using the resources of more than 300 full-time employees across 47 State Offices. The proposed centralized managed unit is designed to obligate $16.8 billion in loans with a maximum of 275 full-time employees, which will free up at least 50 or so full-time employees for other RD program activities in the State Offices. Moreover, the proposed centralized unit can deliver the total $24 billion of allocated loan funds with 275 full-time employees if market demand is present. The integrated model improves the program delivery process in several important ways, including:

- Streamlining redundant resources, personnel, and processes;
- Aligning to customer need, allowing SFHGLP to adapt to changes in the mortgage lending environment, and continue to provide access to capital in rural America;
- Promoting more consistent programmatic decisions and improved customer experience;
- Distributing evenly the workload across staff nationwide—decreasing average turnaround times; and
- Improving quality of risk management and compliance processes.

The changed program delivery structure does not require staff to relocate from field offices, as all staff will remain in their current location.

Third, I intend to reorganize the structure of the direct and guaranteed Community Facilities (CF) Program, in the Rural Housing Service National Office from divisions based on the loan programs into divisions aligned with core business functions. The CF National Office would reorganize from its current structure of the Direct Loan and Grant Processing and Servicing Division and the Guaranteed Loan Processing and Servicing Division to the Program Delivery Division and the Portfolio Management Division. At the same time, CF plans to centralize loan underwriting for transactions $1 million or greater from the State Offices to the National Office. Those performing these activities will be current RD employees located in the state/field offices who work remotely under the direction of a National Office manager. State Office employees would retain approval authority for applications less than $1 million and would service those loans and grants. The State Office would also continue to perform outreach, determination of eligibility, application intake, and loan closings for those applications underwritten at the National Office level. The National Office employees would determine feasibility, perform underwriting, and approve the loans, and also would provide monitoring and servicing for loans $1 million and greater.

The proposed realignment enhances the CF programs' capacity to be responsive, relevant, and effective to its rural customers, while allowing the agency to improve oversight to prevent delinquencies and reduce losses to the Government. The program will be able to allocate resources more efficiently; eliminate duplication and inconsistency in administering the program; and position staff to better serve our customers and meet our mission and objectives.

Fourth, RD will realign its appraisers, architects, construction analysts, technically qualified program support directors, engineers, and environmental positions to two new divisions within the Rural Development Business Center. Those divisions—the Appraisal and Architectural Services Division, and the Engineering and Environmental Services Division—would be located within the Business Center's Enterprise Office.

The reorganization of these specialized positions will allow these services to be performed more efficiently across RD. This strategy leverages lessons learned over the past 3 years from the successful appraiser regionalization model, while addressing weaknesses and improving on best practices. This proposal would address portfolio risk mitigation and would further increase portfolio quality control and oversight by separating risk assessment activities from program production areas. In many cases, these positions currently report to Supervisory Loan Specialists in the states that can create a conflict of interest in the loan approval process. All 159 existing staff in the affected positions will remain in their current locations; there will be no need for relocation.

Finally, I intend to reorganize RD's Rural Business-Cooperative Service (RBS) from a three-tiered structure (i.e., Business Programs, Energy Programs, and Cooperative Programs) to a two-tiered structure (i.e. Loan Programs and Grant Programs). This change will streamline the approval process by reducing the layers of review that exist within the approval process.

In addition to that realignment, RBS will also be reorganized by the acquisition of the BioPreferred Program from USDA's Departmental Administration. The program resides under Title IX of the Farm Bill where RD and RBS have a strong presence and extensive experience and capacity. The transfer of the BioPreferred Program to RBS will complement existing RBS programs that include the Rural Energy for America Program; Value Added Producer Grant; the Biorefinery, Renewable Chemical, and Biobased Product Manufacturing Assistance Program; and the technical assistance provided by the recently signed Memorandum of Understanding with the U.S. Small Business Administration. The RD field structure will support increased program outreach, communication, and visibility.

RD will also eliminate the Cooperative Magazine that ceased publication in February 2018 and reassign associated RBS staff. This magazine was published by the Education and Research Branch within RBS. Without the publication, there is no function for this branch. The staff consists of one Public Affairs Specialist, three Agricultural Economists, one Rural Sociologist, one Secretary, one Office Automation Assistant, and one Agricultural Cooperative Policy Analyst. We propose to relocate the Public Affairs Specialist to the RD Office of External Affairs, and the Agricultural Economists and Rural Sociologist to the USDA Agricultural Marketing Service. The remaining positions referenced will stay within RBS.

The actions identified in this letter—like our October 10, 2018, notification on the Section 538 Guaranteed Rural Rental Housing Program and the Section 515 Rural Rental Housing Program—will further improve the efficiency, effectiveness, and accountability of RD. We will continue to work with Congress, our stakeholders, and our employees to make the Department even more responsive to the needs of our customers. My goal is for USDA to be the best managed, most customer-responsive agency in the U.S. Government. I look forward to working with you as we move forward.

One of the accompanying enclosures reflects the realignment of staff identified above, and includes the organizational structure changes being proposed. The other enclosure is a copy of the October 10, 2018, communication on our proposed changes to the Section 538 and 515 programs.

If you have any questions, please have a member of your staff contact the Office of Congressional Relations at (202) 720–7095. A similar letter is being sent to Chairman John Hoeven.

Sincerely,

Sonny Perdue
Secretary

Enclosures