BRETT A. SHUMATE
Assistant Attorney General
BRAD P. ROSENBERG
Chief Litigation Counsel
TAYLOR PITZ (CA Bar No. 332080)
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5200
Taylor.N.Pitz@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | Case No. 3:26-cv-09976-VC<br><br>**DEFENDANTS' SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Vince Chhabria<br>Place: San Francisco Courthouse<br>Courtroom 3, 17th Floor |

## TABLE OF CONTENTS

INTRODUCTION .......... 1

DISCUSSION .......... 1

I. Appropriations Law Principles .......... 1

II. FY 2026 Budgetary Authority and Appropriations .......... 7

III. Reorganizing Funding .......... 8

IV. Application to the Court's Severance Analysis and Plaintiffs' Requested Relief .......... 8

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**CASES**

*AFGE v. Pierce*,
697 F.2d 303 (D.C. Cir. 1982) .................... 8

*Train v. City of New York*,
420 U.S. 35 (1975) .................... 4, 12

**STATUTES**

Consolidated Appropriations Act, 2021,
Pub. L. No. 116-260, 134 Stat. 1182 (2020) .................... 11

Consolidated Appropriations Act, 2022,
Pub. L. No. 117-103, 136 Stat. 49 .................... 11

Consolidated Appropriations Act, 2023,
Pub. L. No. 117-328, 136 Stat 4459 (2022) .................... 11

Consolidated Appropriations Act, 2024
Pub. L. No. 118-42, 138 Stat. 25 .................... 11

Agriculture, Rural Development, Food and Drug Administration, and Related Agency Appropriations Act, 2026,
Pub. L. 119-37, 139 Stat. 495 (2025) ("Ag. Approps Act") .................... *passim*

Interior and Environment Appropriations Act, 2026,
Pub. L. 119-74, 140 Stat. 5 ("Interior Approps Act") .................... 1, 3, 7, 17

**LEGISLATIVE HISTORIES**

171 Cong. Rec. S8033 (daily ed. Nov. 9, 2025) .................... *passim*

172 Cong. Rec. H255 (daily ed. Jan. 8, 2026). .................... 12

**OTHER AUTHORITIES**

GAO, A Glossary of Terms Used in the Federal Budget Process (2005),
https://www.gao.gov/assets/gao-05-734sp.pdf ("GAO Glossary") .................... 2, 5, 6

GAO, Principles of Federal Appropriations Law, GAO-16-464SP (4th ed., 2016 rev.),
https://www.gao.gov/legal/appropriations-law/red-book ("GAO Red Book") .................... 2, 5

The Honorable Kent Conrad United States Senate, B-231065 (Aug. 10, 1988)....................4

## INTRODUCTION

For all the reasons Defendants have previously explained, the Constitution does not permit Congress to employ Congressional committee approval provisions to constrain the lawful exercise of a cabinet department's statutory authority. *See generally* Defs.' Opp. to Pls.' Mot for Prelim. Inj., ECF No. 71 ("Defs.' Opp."). Thus, as applicable here, the United States Department of Agriculture ("USDA" or "the Department") may expend funds under two applicable statutes without recourse to Congress for committee approval.

In response to the Court's September 29, 2026 Order, ECF No. 91, Defendants provide additional context for the FY 2026 Appropriations Act provisions at issue: Sections 716 and 771 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agency Appropriations Act, 2026, Pub. L. No. 119-37, Div. B, 139 Stat. 495, 508-563 (Nov. 12, 2025) ("Ag. Approps Act") and Section 421 of the Interior and Environment Appropriations Act, 2026, Pub. L. No. 119-74, Div. C, 140 Stat. 5, 93-172 (Jan. 23, 2026) ("Interior Approps Act").[1] As explained below, Section 716 provides Plaintiffs no relief. To date, USDA has not exercised the fiscal tools that this Section restricts, and USDA does not anticipate doing so through the duration of the Continuing Resolution that currently funds USDA through December 11, 2026.

Further, even assuming that Plaintiffs could somehow show that USDA's reorganization implicates the authorities contained in Section 716, this brief explains how that provision operates and demonstrates that its limitations on USDA are much narrower than Plaintiffs have proposed. How Section 716 operates should not just inform the Court's severance analysis for excising the unconstitutional committee approval requirement, but should also dictate the scope of any relief.

As to Section 771 and Section 421, USDA has complied with the constitutional requirements of these provisions. And as with Section 716, their structure and function should inform both the Court's severance analysis and any relief ultimately entered.

---

[1] In previous briefing, USDA has referred to these two appropriations acts for fiscal year 2026 as the FY 2026 Appropriations Acts, and continues to reference them collectively as such in the discussion below.

## DISCUSSION

### I. Appropriations Law Principles

Annual appropriations for the Federal Government are provided through the action of 12 subcommittees that comprise the Appropriations Committees of the United States Senate and the United States House of Representative. Each subcommittee has its own drafting style and an established use of highly technical terminology. Congress annually appropriates discretionary funding to USDA under two statutes typically referred to as the Agriculture and Interior Appropriations Acts, or Ag. Approps Act, and the Interior and Environment Appropriations Act, or Interior Approps Act. Accordingly, in its review of the three specific appropriation provisions at issue, Defendants urge the Court to give particular attention to the established use of terms and practices of these committees while it reviews the constitutionality of particular clauses in these provisions. New interpretations of these discrete provisions may not only influence how similar provisions affect USDA but also other agencies.

The Government Accountability Office's Principles of Appropriations Law, known as the GAO Red Book, is GAO's multi-volume treatise concerning federal fiscal law that helps interpret the appropriations act provisions relied upon in Plaintiffs' motion for preliminary injunction.[2] GAO, Principles of Federal Appropriations Law, ch. 2, GAO-16-464SP (4th ed. 2016 rev.), https://www.gao.gov/legal/appropriations-law/red-book ("GAO Red Book"). The GAO also publishes a Glossary of Terms Used In the Federal Budget Process. GAO, A Glossary of Terms Used in the Federal Budget Process at 2 (2005), https://www.gao.gov/assets/gao-05-734sp.pdf ("GAO Glossary").

To start, most appropriations acts "provide both budget authority and the authority to make payments from the Treasury." GAO Red Book Ch. 2 at 2-3. As to the first, "Congress finances federal programs and activities by providing 'budget authority,' which grants agencies authority to enter into financial obligations that will result in immediate or future outlays of government funds." *Id.* at 2-1. As defined by the Congressional Budget Act, "budget authority" includes:

---

[2] *See* GAO, *About* ("GAO, often called the 'congressional watchdog,' is an independent, non-partisan agency that works for Congress. GAO examines how taxpayer dollars are spent and provides Congress and federal agencies with objective, non-partisan, fact-based information to help the government save money and work more efficiently.").

> (i) provisions of law that make funds available for obligation and expenditure (other than borrowing authority), including the authority to obligate and expend the proceeds of offsetting receipts and collections;
> (ii) borrowing authority, which means authority granted to a Federal entity to borrow and obligate and expend the borrowed funds, including through the issuance of promissory notes or other monetary credits;
> (iii) contract authority, which means the making of funds available for obligation but not for expenditure; and
> (iv) offsetting receipts and collections as negative budget authority, and the reduction thereof as positive budget authority.

*Id.* at 2-1–2-2. As to the second, "an appropriation is a law authorizing the payment of funds from the Treasury." *Id.* at 2-3.

An appropriation account is "[t]he basic unit of an appropriation generally reflecting each unnumbered paragraph in an appropriation act." GAO Glossary at 2. It "typically encompasses a number of activities or projects and may be subject to restrictions or conditions applicable to only the account, the appropriation act, titles within an appropriation act, other appropriation acts, or the government as a whole." *Id.* As relevant here, many appropriation accounts allocate funds at a high level of generality. *See, e.g.*, Ag. Approps Act, 139 Stat. at 517 ("For necessary expenses of the Farm Production and Conservation Business Center, $167,633,000[.]").

As set forth above, Congress annually appropriates discretionary funding to USDA under two statutes typically referred to as the Agriculture and Interior Appropriations Acts. *See* Ag. Approps Act, 139 Stat. at 508-563; Interior Approps Act, 140 Stat. at 93-172.[3] The Ag. Approps Act appropriates discretionary funding to all USDA agencies except for the Forest Service. Forest Service appropriations are provided in Title III of the Interior Approps Act.[4]

In both the Ag. Approps Act and Title III of the Interior Approps Act, each USDA component agency receives appropriations under headings and subheadings, each of which may contain provisos placing restrictions on the funding. For example, USDA's Agricultural Research Service ("ARS") receives appropriations under the ARS heading and two subheadings in the Ag. Approps Act: (1) Salaries and Expenses and (2) Buildings and Facilities. *See* Ag. Approps Act, 139 Stat. at

[3] In previous briefing, USDA has referred to these two appropriations acts for fiscal year 2026 as the FY 2026 Appropriations Acts, and continues to reference them collectively as such in the discussion below.

[4] Separately, USDA receives mandatory appropriations under the Farm Bill, which historically has been enacted every five years and was last passed in 2018. USDA's mandatory appropriations are not at issue in the instant action.

511-513. One of the provisos in the Salaries and Expenses ARS subheading authorizes ARS to use funds appropriated for Salaries and Expenses for construction, but only within certain per-building dollar limits.

The Forest Service receives appropriations under 13 subheadings in Title III of the Interior Approps Act, including, for example, Forest Service Operations, National Forest System, and Wildland Fire Management. *See* Interior Approps Act, 140 Stat. at 137-142 (showing all Forest Service appropriation subheadings).

Broadly, each subheading in an appropriations act represents an appropriation account, to which is assigned a Treasury Account Symbol ("TAS"). Where an appropriation is further divided into budget line items by Congress in the appropriations act (as opposed to in congressional reports or in the President's budget request), each budget line item is assigned its own TAS and is considered a separate appropriation account. For example, the appropriation for USDA's Office of the Chief Information Officer ("OCIO") states, "[f]or necessary expenses of the Office of the Chief Information Officer, $85,000,000, of which not less than $60,032,000 is for cybersecurity requirements of the department." Ag. Approps Act, 139 Stat. at 509. This language results in two OCIO appropriation accounts: one for OCIO's necessary expenses and one for USDA's cybersecurity requirements.

Congress may further allocate funds within an appropriation account and seek to impose restrictions on appropriations with statements in congressional reports. However, unless incorporated into the text of the statute, *e.g.*, the Ag. Approps Act, a restriction that only appears in a congressional report does not carry the force of law. For example, the Ag. Approps Act included the following report language regarding the Food Safety and Inspection Service: "The agreement provides a $15,200,000 increase for state meat and poultry inspection programs to ensure that the Federal reimbursement rate is 50 percent." 171 Cong. Rec. S8043-02, S8047 (daily ed. Nov. 9, 2025)[5]. Meeting the 50 percent reimbursement rate is not required by law, because it appears only in the Explanatory Statement and not in the Ag. Approps Act. *See* 139 Stat. 495 at 517. As noted,

---

[5] Available here: https://www.congress.gov/119/crec/2025/11/09/171/189/CREC-2025-11-09.pdf.

such report language does not bind agencies unless the relevant appropriations act expressly incorporates it by reference. *See* The Honorable Kent Conrad United States Senate, B-231065 (Aug. 10, 1988), https://www.gao.gov/products/b-231065 (stating committee report language "is at most guidance and is not binding on the Secretary of Agriculture, since it did not appear in the law nor was it incorporated by reference into the law"); *see also Train v. City of New York*, 420 U.S. 35, 45 (1975) (explaining "legislative intention, without more, is not legislation").

The fiscal year 2026 ARS Salaries and Expenses appropriation includes such binding language: "$1,793,063,000, which shall be for the purposes, and in the amounts, specified in the table titled 'Agricultural Research Service Salaries and Expenses' in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act)." Ag. Approps Act, 139 Stat. at 511.[6] The table referenced in the ARS Salaries and Expenses appropriation comprises 45 budget line items, such as "Agricultural Law Information Partnership" and "Bee Genomic Sequencing," with specified amounts appropriated. *See* 171 Cong. Rec. at S8044. Although these line items appear in typically non-binding congressional report language, Congress made them binding by incorporating the table by reference in the ARS Salaries and Expenses appropriation.

In addition to headings and subheadings appropriating funds and setting limits on their use, annual appropriations acts include general provisions that appear under a section of the act separate from the appropriations headings. In the Ag. Approps Act, the general provisions are contained in Title VII of the act. In the Interior Approps Act, the general provisions are contained in in Title IV of the act. Relevant here, Section 716(a) and Section 771 of the Ag. Approps Act and Section 421 of the Interior Approps Act are general provisions.

Still, "[f]or a variety of reasons, agencies have a legitimate need for a certain amount of flexibility to deviate from their budget estimates." GAO Red Book at 2-38. "Two ways to shift money are transfer and reprogramming." *Id.* A "[t]ransfer is the shifting of funds between appropriations." *Id.*; *see also* GAO Glossary at 95 (defining transfer as the "shifting of all or part of the budget authority in one appropriation or fund account to another"). "Agencies may transfer budget

[6] *See supra* p. 7 n.5.

authority only as specifically authorized by law." GAO Glossary at 95. By contrast, reprogramming is "[s]hifting funds *within* an appropriation or fund account to use them for purposes other than those contemplated at the time of appropriation; it is the shifting of funds from one object class to another within an appropriation or from one program activity to another." *Id.* at 85. "While a transfer of funds involves shifting funds from one account to another, reprogramming involves shifting funds within an account." *Id.* "Generally agencies may shift funds within an appropriation or fund account as part of their duty to manage their funds," and "[u]nlike transfers, agencies may reprogram without additional statutory authority." *Id.* A reimbursement is another way of shifting money. Reimbursement is a "sum (1) that is received by an agency as a payment for commodities sold or services furnished either to the public or to another government account and (2) that is authorized by law to be credited directly to specific appropriation and fund accounts. Reimbursements between two accounts for goods or services are usually expenditure transactions/transfers." *Id.* at 84.

In the Explanatory Statement accompanying the Ag. Approps Act, Congress expressly defines transfers and reprogrammings by reference to the GAO Glossary:

> For the appropriations provided by this act and previous Acts, the departments and agencies funded by this agreement are reminded that the Committees use the definitions for transfer, reprogramming, and program, project, and activity as defined by the Government Accountability Office <GAO> in GAO-04-261SP Appropriations Law-Vol. I and GAO-05-734SP Budget Glossary.
>
> A transfer is the shifting of funds between appropriations. It applies to (1) transfers from one agency to another, (2) transfers from one account to another within the same agency, and (3) transfers to an interagency or intra-agency working fund. In each instance, statutory authority is required.
>
> Reprogramming is the utilization of funds in an appropriation account for purposes other than those contemplated at the time of appropriation. It is the shifting of funds from one object to another within an appropriation.

171 Cong. Rec. S8043-02, S8043-44.

USDA has filed letters providing examples of transfers and reprogrammings as exhibits to the Declaration of Mary Pletcher Rice. *See* Ex. 4 to Rice Declaration, ECF No. 71-5. The letter dated July 27, 2023, from then-Secretary of Agriculture Thomas Vilsack to the Chairman of the Subcommittee on Agriculture, Rural Development, Food and Drug Administration and Related

Agencies notifying the Committee of the Secretary's intent to transfer $503 million from the Supplemental Nutrition Assistance Program (SNAP) to the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC). The letter dated May 22, 2024, from then-Secretary Vilsack to the Chairman of the Subcommittee on Agriculture, Rural Development, Food and Drug Administration and Related Agencies notified the Committee of USDA's intent to reprogram $100 million within the Child Nutrition Programs Account of the Food and Nutrition Service from Meal Reimbursements to the Training and Technical Assistance line; and the letter dated December 18, 2024, from then-Secretary Vilsack to the Chairman of the Subcommittee on Agriculture, Rural Development, Food and Drug Administration and Related Agencies notified the Committee of USDA's intent to reprogram about $114 million in prior year unobligated balances available in the Broadband Telecommunication Pilot ReConnect Program.

## II. FY 2026 Budgetary Authority and Appropriations

Applying that background here, the FY 2026 Appropriations Acts delegate to USDA, the Forest Service, and other agencies authority to spend money. *See supra*. pp. 2-6. The Ag. Approps Act provides USDA's component agencies with specific appropriations for "salaries and expenses" or other accounts that support organizational operations, except for the Forest Service. *See, e.g.*, Ag. Approps Act, 139 Stat. at 518 ("For necessary expenses of the Farm Service Agency, $1,125,000,00[.]"); *id.* at 520 ("For necessary expenses of the Risk Management Agency, $60,000,000[.]"); *id.* at 522 ("For necessary expenses for carrying out the administration and implementation of Rural Development programs, including activities with institutions concerning the development and operation of agricultural cooperatives; and for cooperative agreements; $312,000,000."); *id.* at 533 ("For necessary expenses of the Office of the Under Secretary for Food, Nutrition, and Consumer Services, $1,127,000."). The Interior Approps Act provides funding to the Forest Service through several accounts, such as "Forest Service Operations" or "National Forest System." *See* Interior Approps Act, 140 Stat. at 137-38. Within each of these accounts, funding is provided for the salaries, expenses and related operational costs for the associated programs. The following provides an example of how those funds are provided under "Forest Service Operations": "For necessary expenses of the Forest Service, not otherwise provided for,

$1,090,600,000, of which $944,114,000 shall remain available through September 30, 2029[.]". *Id.* at 137.

For 2026, then, Congress delegated to USDA budget authority for necessary expenses to run the programs of each of its component agencies. And Congress provided this authority (and funds) against the backdrop of the Secretary of Agriculture's announcement of the reorganization on July 24, 2025, which invoked USDA's substantive reorganization authority, the Reorganization Plan No. 2 of 1953. *See* Ex. A to Pls.' Compl., ECF No. 1-1, Secretary Memorandum, SM-1078-015 (July 24, 2025); *see also* Defs.' Opp. at 16-17. Despite delegating this authority to USDA, through its inclusion of Sections 716, 771, and 421, Congress also "create[d] a power in either Appropriations Committee to prevent otherwise-authorized expenditures of funds," or alternatively, "prohibit[ed] [USDA] from using appropriated funds for certain purposes but empower[ed] both Appropriations Committees, acting together, to lift the prohibition and authorize [USDA] to make such use of the funds," in a manner that violates the constitutional separation of powers. *AFGE v. Pierce*, 697 F.2d 303, 306 (D.C. Cir. 1982); *see also* Defs.' Opp. at 19-26. Accordingly, Defendants maintain that the committee approval requirements contained in these provisions are unconstitutional legislative vetoes.

**III. Reorganization Funding**

The discretionary funding provided through the Ag. Approps Act and Interior Approps Act is appropriated by Congress into specific accounts. As detailed above, each account comes with a defined purpose for the associated funding. These purposes can be further illuminated by Congress in the appropriations acts or in accompanying congressional reports or explanatory statements or by USDA in its budget justifications. *See* 171 Cong. Rec. S8043.

As a result of these purpose limitations, the Department is only using funding from select accounts to implement its reorganization activities. The following accounts by organization are the source of funding for each organization's reorganization-related activities: Office of the General Counsel ("OGC"); Office of Civil Rights ("OCR"); Farm Production and Conservation Business Center ("FPAC BC"); Farm Service Agency ("FSA"); Natural Resources and Conservation Service ("NRCS"); Risk Management Agency ("RMA"); Agricultural Research Service ("ARS");

Economic Research Service ("ERS"); National Agricultural Statistics Service ("NASS"); National Institute of Food and Agriculture ("NIFA"); Rural Development Business Center ("RD BC"); Rural Business-Cooperative Service ("RBCS"); Rural Housing Service ("RHS"); Rural Utilities Service ("RUS"); Food and Nutrition Administration ("FNA"); and the Forest Service ("FS"). A table of these accounts is included below in the attached appendix.

USDA has not reprogrammed or transferred funds to support the reorganization activities that Plaintiffs challenge in a manner that implicates Section 716(a) or (b). Under its current appropriations, USDA operational costs, including potential relocation, facilities buildout, or other expenses related to reorganization, can be paid for from the current operational accounts, such as those listed above. *See* Defs.' Opp. at 19 n.6; Defs.' Supp. Br., ECF No. 83, ECF No. 83; Declaration of Christopher Nelson at ¶¶ 9-10, ECF No.83-1. Therefore, Section 716(a) and (b) are not implicated in the reorganization to date. And USDA does not anticipate reprogramming funds or invoking the transfer authorities identified in Section 716(a) and (b) through at least the duration of the Continuing Resolution that provides USDA's appropriations commencing October 1, 2026. *See id.*

Thus, even apart from the Court's severance analysis, or the scope of relief available based on the scope of Section 716, *see infra*, any harm resulting from USDA's use of Section 716's fiscal tools to move funds remains speculative and does not suffice for irreparable harm.

**IV. Application to the Court's Severance Analysis and Plaintiffs' Requested Relief**

But even if Plaintiffs established that the reorganization implicated Sections 716, 771, and 421, because committee-approval requirements are so obviously unconstitutional, *see* Defs.' Opp. at 19-23, courts should not sever those types of provisions in a manner that ratchets up restrictions on federal agencies that Congress did not impose. If Congress truly intended to constrain an agency, it would do so by employing the many constitutional options available to it. For example, the Commodity Credit Corporation ("CCC") is a USDA entity and section 5 of the CCC Charter Act sets forth a constitutional process of bicameralism and presentment when Congressional (not committee) approval is in play:

In the fulfillment of its purposes and in carrying out its annual budget programs submitted

> to and approved by the Congress pursuant to chapter 91 of title 31, the Corporation is authorized to use its general powers only to . . .

15 U.S.C. § 714c. Congress thus knows how to impose constitutional constrains on discrete agency actions when it wishes. It also knows how to prohibit agency action outright. *See* Ag. Approps Act, 139 Stat. at 518 ("*Provided further,* That none of the funds available for any department or agency in this or any other appropriations Acts, including prior year Acts, shall be used to close Farm Service Agency county offices."). The Court should therefore respect Congress' choice not to employ these constitutional tools, and should construe them only as notification requirements.

***Section 716:*** As explained, the Court need not address the constitutional argument at all with respect to Section 716 because USDA has no intention of transferring or reprogramming funds under Section during the duration of the Continuing Resolution.[7] If the Court did reach that argument, though, the Court should not adopt Plaintiffs' proposed severance analysis. Recall the text of Section 716(a)[8]:

> None of the funds provided by this Act, or provided by previous appropriations Acts to the agencies funded by this Act that remain available for obligation or expenditure in the current fiscal year, or provided from any accounts in the Treasury derived by the collection of fees available to the agencies funded by this Act, **shall be available for obligation or expenditure through a reprogramming, transfer of funds, or reimbursements** as authorized by the Economy Act, or in the case of the Department of Agriculture, through use of the authority provided by section 702(b) of the Department of Agriculture Organic Act of 1944 (7 U.S.C. 2257) or section 8 of Public Law 89–106 (7 U.S.C. 2263), that . . . .

As explained above, *see supra* pp. 2-7, reprogrammings, transfers, and reimbursements are specific fiscal actions that involve *moving* money, not just spending it.[9]

Thus, because Section 716(a) only restrains USDA from moving money in certain ways to support reorganization activities—a narrow restraint on certain fiscal tools ordinarily available to

---

[7] Defendants focus their analysis on Section 716(a) because that has been the focus of Plaintiffs' arguments to date, but note that these same arguments apply to Section 716(b) which involves the same fiscal tools. *See* Section 716(b) (limiting application to funds used "through a reprogramming or use of the authorities referred to in subsection (a)"). Defendants note subsections (c) and (e) also suffer from unconstitutional approval and committee acknowledgment provisions.

[8] The full text of Section 716 is included in the appendix at the end of this filing.

[9] The Ag. Approps Act adopts the GAO's definitions of these terms as outlined above. *See* 171 Cong. Rec. S8043-44 ("For the appropriations provided by this act and previous Acts, the departments and agencies funded by this agreement are reminded that the Committees use the definitions for transfer, reprogramming, and program, project, and activity as defined by the Government Accountability Office <GAO> in GAO-04-261SP Appropriations Law-Vol. I and GAO-05-734SP Budget Glossary.").

USDA—but does not prohibit obligating or expending funds for these purposes if the Department does not move funds, the Court cannot infer that severing the statute to create a more stringent restriction on reorganization would be more consistent with Congressional intent than leaving the existing "report and wait" requirement in place.[10] Congressional notification still facilitates Congressional oversight and involvement in reorganization efforts: when Congress is notified, it can seek to preempt reorganization by statute, or defund certain activities in the next fiscal cycle, but it can also influence reorganization in other ways. It can draw attention to the matter by scheduling a public hearing, request further information about the reorganization so that Congress and the public can evaluate the agency's proposals, or pull political levers to increase the costs (or benefits) of moving forward. This is all the more true in the case of Section 716(a) where the agency must notify Congress and also wait 30 days before reprogramming or transferring funds. This gives Congress time to select a suitable option to influence the agency's course, if it wishes.

But even if the Court rejected these arguments and opted to sever Section 716(a) (and Sections 771 and 421) in accordance with Plaintiffs' proposal, the text of those provisions does not support the scope of the injunction Plaintiffs seek.

As explained above, Section 716(a) restricts USDA from reprogramming or transferring funds using certain authorities to conduct certain reorganization activities. It does not restrict USDA's preexisting substantive authority under Reorganization Plan No. 2 of 1953 to reorganize, nor does it restrict USDA's budgetary authority and appropriations to spend appropriated funds absent a reprogramming or transfer. Thus, even if the Court finds that Plaintiffs have shown likelihood of success of their appropriations act claim, that would be no basis to enjoin the Department's relocation of employees across the board. It would at most support an injunction enjoining the Department from reprogramming or transferring funds to relocate employees—a step USDA has not even taken to date.

***Section 421:*** Section 421 likewise should not be severed to create a more restrictive prohibition. Section 421 has been included in past congressional appropriations acts, illustrating that

---

[10] Defendants also maintain their argument that the legislative history of Section 716 also supports Defendants' proposed severance analysis. *See* Defs.' Opp. at 2-8.

it was not enacted simply to halt the Forest Service's current reorganization. *See* Consolidated Appropriations Act, 2024, tit. IV, § 422, Pub. L. No. 118-42, 138 Stat. 25, 290 ("None of the funds made available in this Act, in this and prior fiscal years, may be reprogrammed without the advance approval of the House and Senate Committees on Appropriations in accordance with the reprogramming procedures contained [elsewhere in this Act]."); Consolidated Appropriations Act, 2023, tit. IV, § 422, Pub. L. No. 117-328, 136 Stat 4459, 4826 (same); Consolidated Appropriations Act, 2022, tit. IV, § 422, Pub. L. No. 117-103, 136 Stat. 49, 415 (same); Consolidated Appropriations Act, 2021, tit. IV, § 424, Pub. L. No. 116-260, 134 Stat. 1182, 1541 (same). But perhaps more significantly, it is a general provision not specific to the Forest Service or USDA, and Congress has included it in the Interior Approps Act's general provisions applicable to the other agencies covered by that Act.

Like Section 716, the narrow scope of Section 421 underscores that it should not be severed to create an even stricter restriction. And importantly, that scope is much narrower than Plaintiffs' motion suggests.

Plaintiffs' motion cites a definition of reprogramming from the Reprogramming Guidelines included in the Explanatory Statement that accompanies the Interior Approps Act. However, only *portions* of those Reprogramming Guidelines are binding on the Forest Service, and the portion Plaintiffs cite is not one of them. *See* Pls.' Mot. for a Prelim Inj. at 5 n.4, ECF No. 5-1 (citing Levy Decl. Ex. D at 8).

The Interior Approps Act adopts a different definition of "reprogramming" that applies to the Forest Service and other agencies funded under that Act than the one set forth in the GAO Glossary. That definition appears in the Explanatory Statement that accompanied the Interior Approps Act and applies by virtue of its incorporation by reference in Section 421 of that Act. The reprogramming procedures referenced in Section 421 are titled "Reprogramming Guidelines" in the Explanatory Statement that accompanies the Interior Approps Act. *See* 172 Cong. Rec. H255, H255, H472 (daily ed. Jan. 8, 2026). Although appearing in a congressional report, rather than enacted legislation, *portions of* the Reprogramming Guidelines are binding on the Forest Service.

This partial binding effect results from language in Section 421 that incorporates the Reprogramming Guidelines into the enacted bill, *but only as to the "advance notification and approval" requirements of those guidelines*, as referenced in Section 421.

Although the Reprogramming Guidelines address topics other than notification and approval (such as when funds should or should not be reprogrammed at all, or as to those identified by Plaintiffs), those other topics are not binding on the Forest Service, because Section 421 incorporates by reference only the "advance notification and approval" requirements of the Reprogramming Guidelines. "None of the funds made available in this Act, in this and prior fiscal years, may be reprogrammed without *the advance notification and approval* of the House and Senate Committees on Appropriations in accordance with the reprogramming procedures contained in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act)." Interior Approps Act, 140 Stat. 5, at 163.

The only advance notification requirement included in the Reprogramming Guidelines that applies to the Forest Service is the following: "A reprogramming must be submitted to the Committees *in writing prior to implementation* if it exceeds $1,000,000 annually or results in an increase or decrease of more than 10 percent annually in affected programs or projects, whichever amount is less" (with three exceptions that do not apply to the Forest Service). *Id.* at H472(emphasis added). Other than the creation of a $1 million or 10 percent trigger for reprogramming notice, the Reprogramming Guidelines contain no notification or approval requirements for Forest Service reprogrammings, as that term is defined in the Reprogramming Guidelines.

Once again, even if the Court rejects that any of this alters the severance analysis, Section 421 would, at most, restrict only certain reprogramming by the Forest Service. Therefore, any injunction should be limited to impose only the narrow restriction actually incorporated within binding legislation.

***Section 771:*** Section 771 likewise does not support an injunction prohibiting all relocations of USDA employees and closure of offices. Even if severed in accordance with Plaintiffs' analysis, it would not constrain USDA's ability to relocate employees across its component agencies, but merely its ability to use funds "to close or consolidate the resources or locations of any existing

Agricultural Research Service laboratories and facilities." Ag. Approps Act, 139 Stat. at 555.

***

Taken together, then, even if the Court rejected USDA's severance analysis, any injunction must track the language of the statutory provisions Plaintiffs have invoked, not Plaintiffs' policy preferences. The provisions at issue prohibit only highly specific fiscal maneuvers. They do not prohibit USDA from taking actions that do not require the fiscal machinations described by the statutes. Thus, these provisions provide no basis for the wholesale prohibition of employee relocations or office closures that Plaintiffs seek. Because the Court—like USDA—is limited by the language Congress enacted through bicameralism and presentment, Plaintiffs' request for a sweeping injunction is meritless and should be denied.

## CONCLUSION

For these reasons, and those set forth in Defendants' prior briefing, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: October 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

BRAD P. ROSENBERG
Chief Litigation Counsel

/s/ Taylor Pitz
TAYLOR PITZ
CA Bar No. 332080
Trial Attorney
Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-5200
Taylor.N.Pitz@usdoj.gov

*Counsel for Defendants*

## APPENDIX

**Full text of Pub. L. No. 119-37, Div. B, § 716, 139 Stat. 495, 544-45 (2025)**

SEC. 716.

(a) None of the funds provided by this Act, or provided by previous appropriations Acts to the agencies funded by this Act that remain available for obligation or expenditure in the current fiscal year, or provided from any accounts in the Treasury derived by the collection of fees available to the agencies funded by this Act, shall be available for obligation or expenditure through a reprogramming, transfer of funds, or reimbursements as authorized by the Economy Act, or in the case of the Department of Agriculture, through use of the authority provided by section 702(b) of the Department of Agriculture Organic Act of 1944 (7 U.S.C. 2257) or section 8 of Public Law 89–106 (7 U.S.C. 2263), that—

(1) creates new programs;

(2) eliminates a program, project, or activity;

(3) increases funds or personnel by any means for any project or activity for which funds have been denied or restricted;

(4) relocates an office or employees;

(5) reorganizes offices, programs, or activities; or

(6) contracts out or privatizes any functions or activities presently performed by Federal employees;

unless the Secretary of Agriculture or the Secretary of Health and Human Services (as the case may be) notifies in writing and receives approval from the Committees on Appropriations of both Houses of Congress at least 30 days in advance of the reprogramming of such funds or the use of such authority.

(b) None of the funds provided by this Act, or provided by previous Appropriations Acts to the agencies funded by this Act that remain available for obligation or expenditure in the current fiscal year, or provided from any accounts in the Treasury derived by the collection of fees available to the agencies funded by this Act, shall be available for obligation or expenditure for activities, programs, or projects through a reprogramming or use of the authorities referred to in subsection (a) involving funds in excess of $500,000 or 10 percent, whichever is less, that—

(1) augments existing programs, projects, or activities;

(2) reduces by 10 percent funding for any existing program, project, or activity, or numbers of personnel by 10 percent as approved by Congress; or

(3) results from any general savings from a reduction in personnel which would result in a change in existing programs, activities, or projects as approved by Congress;

unless the Secretary of Agriculture or the Secretary of Health and Human Services (as the case may be) notifies in writing and receives approval from the Committees on Appropriations of both Houses of Congress at least 30 days in advance of the reprogramming or transfer of such funds or the use of such authority.

(c) The Secretary of Agriculture or the Secretary of Health and Human Services shall notify in writing and receive approval from the Committees on Appropriations of both Houses of Congress before implementing any program or activity not carried out during the previous fiscal year unless the program or activity is funded by this Act or specifically funded by

any other Act.

(d) None of the funds provided by this Act, or provided by previous Appropriations Acts to the agencies funded by this Act that remain available for obligation or expenditure in the current fiscal year, or provided from any accounts in the Treasury derived by the collection of fees available to the agencies funded by this Act, shall be available for—

(1) modifying major capital investments funding levels, including information technology systems, that involves increasing or decreasing funds in the current fiscal year for the individual investment in excess of $500,000 or 10 percent of the total cost, whichever is less;

(2) realigning or reorganizing new, current, or vacant positions or agency activities or functions to establish a center, office, branch, or similar entity with five or more personnel; or

(3) carrying out activities or functions that were not described in the budget request; unless the agencies funded by this Act notify, in writing, the Committees on Appropriations of both Houses of Congress at least 30 days in advance of using the funds for these purposes.

(e) As described in this section, no funds may be used for any activities unless the Secretary of Agriculture or the Secretary of Health and Human Services receives from the Committee on Appropriations of both Houses of Congress written or electronic mail confirmation of receipt of the notification as required in this section.

**Section 702(b) of the Department of Agriculture Organic Act of 1944 (7 U.S.C. 2257):**

Not to exceed 7 per centum of the amounts appropriated for any fiscal year for the miscellaneous expenses of the work of any bureau, division, or office of the Department of Agriculture shall be available interchangeably for expenditures on the objects included within the general expenses of such bureau, division, or office, but no more than 7 per centum shall be added to any one item of appropriation except in cases of extraordinary emergency.

**Section 8 of Public Law 89–106 (7 U.S.C. 2263):**

Subject to limitations applicable with respect to each appropriation concerned, each appropriation available to the Department of Agriculture may be charged, at any time during a fiscal year, for the benefit of any other appropriation available to the Department, for the purpose of financing the procurement of materials and services, or financing activities or other costs, for which funds are available both in the financing appropriation so charged and in the appropriation so benefited; except that such expenses so financed shall be charged on a final basis, as of a date not later than the close of such fiscal year, to the appropriations so benefited, with appropriate credit to the financing appropriation.

**The Economy Act (31 U.S.C. 1535)**

(a)The head of an agency or major organizational unit within an agency may place an order with a major organizational unit within the same agency or another agency for goods or services if—

(1) amounts are available;

(2) the head of the ordering agency or unit decides the order is in the best interest of the United States Government;

(3) the agency or unit to fill the order is able to provide or get by contract the ordered goods or services; and

(4) the head of the agency decides ordered goods or services cannot be provided by contract as conveniently or cheaply by a commercial enterprise.

(b) Payment shall be made promptly by check on the written request of the agency or unit filling the order. Payment may be in advance or on providing the goods or services ordered and shall be for any part of the estimated or actual cost as determined by the agency or unit filling the order. A bill submitted or a request for payment is not subject to audit or certification in advance of payment. Proper adjustment of amounts paid in advance shall be made as agreed to by the heads of the agencies or units on the basis of the actual cost of goods or services provided.

(c) A condition or limitation applicable to amounts for procurement of an agency or unit placing an order or making a contract under this section applies to the placing of the order or the making of the contract.

(d)An order placed or agreement made under this section obligates an appropriation of the ordering agency or unit. The amount obligated is deobligated to the extent that the agency or unit filling the order has not incurred obligations, before the end of the period of availability of the appropriation, in—

(1) providing goods or services; or

(2) making an authorized contract with another person to provide the requested goods or services.

(e)This section does not—

(1) authorize orders to be placed for goods or services to be provided by convict labor; or

(2) affect other laws about working funds.

**Full text of Pub. L. No. 119-37, Div. B, § 771, 139 Stat. 555 (2025)**

SEC. 771.

None of the funds made available to the Department of Agriculture in this or any other Act may be used to close or consolidate the resources or locations of any existing Agricultural Research Service laboratories and facilities without prior notification and approval of the Committees on Appropriations of both Houses of Congress.

**Full text of Pub. L. No. 119-74, § 421, 140 Stat. 163 (2025)**

SEC. 421.

None of the funds made available in this Act, in this and prior fiscal years, may be reprogrammed without the advance notification and approval of the House and Senate Committees on Appropriations in accordance with the reprogramming procedures contained in the

explanatory statement described in section 4 (in the matter preceding division A of this-consolidated Act).

| **Organization** | **Account Title** | **OMB Account Number** | **TAS (Potentially Affected)** |
|---|---|---|---|
| OGC | Executive Operations | 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 | 12-2300 |
| OCR | Executive Operations | 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 | 12-3800 |
| FPAC BC | FPAC Business Center | 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 | 12-0180 |
| FSA | FSA Salaries and Expenses | 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 | 12-0600<br>12-3300 |
| NRCS | Conservation Operations | 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 | 12-1000 |
| RMA | RMA Salaries and Expenses | 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 | 12-2707 |
| ARS | ARS Salaries and Expenses | 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 | 12-1400 |
| ARS | ARS Buildings and Facilities | 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 | 12-1401 |
| ERS | Economic Research Service | 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 | 12-1701 |
| NASS | National Agricultural Statistics Service | 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 | 12-1801 |
| NIFA | Research and Education Activities | 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 | 12-0520<br>12-1500 |
| NIFA | Integrated Activities | 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 | 12-0520<br>12-1502<br>12-1503 |
| NIFA | Extension Activities | 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 | 12-0520<br>12-0502 |
| RD BC | RD Salaries and Expenses | 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 | 12-0403<br>12-1903<br>12-1981<br>12-3100<br>12-3103<br>12-1952 |
| RBCS | RD Salaries and Expenses | 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 | 12-0403<br>12-1903<br>12-1981<br>12-3100<br>12-3103<br>12-1952 |
| RHS | RD Salaries and Expenses | 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 | 12-0403<br>12-1903<br>12-1981<br>12-3100<br>12-3103<br>12-1952 |

| | | | |
|---|---|---|---|
| RUS | RD Salaries and Expenses | 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 | 12-0403<br>12-1903<br>12-1981<br>12-3100<br>12-3103<br>12-1952 |
| FNA | Nutrition Program Administration | 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 | 12-3508<br>12-3506 |
| FNA | Supplemental Nutrition Assistance Program | 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 | 12-3505<br>12-3542 |
| FNA | Commodity Assistance Program | 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 | 12-3507<br>12-3503<br>12-3512<br>12-3635 |
| FNA | Special Supplemental Nutrition Program for Women, Infants, and Children (WIC) | 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 | 12-3510 |
| FNA | Child Nutrition Programs | 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 | 12-3539<br>12-3502<br>12-5539 |
| FS | Forest Service Operations | 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 | 12-1122 |
| FS | Capital Improvement and Maintenance | 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 | 12-1103 |
| FS | Forest and Rangeland Research | 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 | 12-1104 |
| FS | National Forest Systems | 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 | 12-1106<br>12-2263 |
| FS | State and Private Forestry | 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 | 12-1105 |