Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Corinne F. Johnson (SBN 287385)
Jessica M. Levy (SBN 368289)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

*Attorneys for All Union and Non-Profit Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture,<br><br>Defendants. | Case No. 3:26-cv-09976-VC<br><br>**PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPPORT OF PRELIMNARY INJUNCTION** |

## TABLE OF CONTENTS

INTRODUCTION .......... 1

I. USDA Is Violating Section 716(a) .......... 2

A. USDA is Reprogramming Funds .......... 2

B. Section 716(a) Does Not Conflict with or Render Other Provisions Superfluous .......... 9

C. USDA's Renewed Argument for Severing Section 716(a) Lacks Merit .......... 12

II. USDA Is Violating Section 421 .......... 12

III. USDA Is Also Violating Section 771 .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barton v. Barr*,
590 U.S. 222 (2020) ..... 11

*Interstate Cir. v. United States*,
306 U.S. 208 (1939) ..... 4

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
463 U.S. 29 (1983) ..... 9

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ..... 11

*Ross v. Blake*,
578 U.S. 632 (2016) ..... 12

*Seila L. LLC v. CFPB*,
591 U.S. 197 (2020) ..... 12

**Statutes**

7 U.S.C. §2257 ..... 2, 5

7 U.S.C. §2263 ..... 2, 5

31 U.S.C. §§1535-36 ..... 2

Pub. L. 113-76, Div. A (2014)
§721 ..... 11

Pub. L. 113-235, Div. A (2014)
§719 ..... 11

Pub. L. 115-141, Div. A (2018)
§717(a). ..... 6
§753 ..... 6
132 Stat. at 354 ..... 6

Pub. L. 119-37, Div. B (2025)
§716(a) ..... *passim*
§716(d) ..... 10, 11
§721 ..... 4
§771 ..... 7, 10, 16, 17
§779 ..... 10
139 Stat. at 511 ..... 6
139 Stat. at 513 ..... 17

Pub. L. 119-74, Div. C (2026)
§421 .......... *passim*

**Legislative Materials**

161 Cong. Rec. H10212 (daily ed. Dec. 17, 2015) .......... 13

163 Cong. Rec. H3875 (daily ed. May 3, 2017) .......... 13

H.R. 3944 (2025) .......... 17

H.R. 5371 (2025) .......... 17

H.R. 8646 (2026) .......... 9

H.R. Rep. No. 116-9 (Feb. 13, 2019) .......... 13

**Regulations**

36 C.F.R. §200.1 .......... 15

36 C.F.R. §200.2 .......... 15

## INTRODUCTION

Plaintiffs explain first below why USDA is violating Section 716(a). USDA fails to support its late-breaking contention—contrary to its prior admissions—that USDA will not be required to engage in any reprogramming or transfers of the funds appropriated for Fiscal Year 2026 to conduct its reorganization. There appears to be no dispute between the parties regarding the meaning of the term "reprogramming," which refers to the use of funds within an appropriations account by USDA for purposes other those authorized by Congress at the time of the appropriation (whereas, in contrast, a "transfer" refers to the movement of funds between appropriated accounts). Any yet, having been given every opportunity to explain to the Court why the actions challenged here do not constitute a "reprogramming," USDA does not actually answer that question, or support its contentions with evidence. USDA has told the Court *only* that it intends to *use* the money from certain component accounts. Dkt. 100 at 8-9. But simply identifying an account as the source of funds for the costs of reorganization activities does not address whether the use of those accounts is a reprogramming (and therefore a violation of Section 716(a)). USDA submits no argument or evidence supporting counsel's assertion that USDA can pay for reorganization expenses out of the accounts it identified consistent with the intended purposes authorized by Congress for Fiscal Year 2026. Indeed, USDA previously expressly informed Congress that the office closure and relocations challenged here "*require*" reprogramming and transfers of those funds (*infra* at 7-8). That is because USDA's appropriations do not authorize money to be spent on those reorganization, office closure, and relocation actions, or to otherwise deviate from the baseline agency structure that existed when USDA sought and obtained its appropriations. *See infra*, Section I.A.

Plaintiffs also address the Court's questions regarding other sections of the appropriations act that address reorganizing, including Sections 771, 779, and 716(d). *Infra*, Section I.B. Plaintiffs explain below the different language and purposes of those sections, and why Section 716(a) does not render any of those other sections superfluous. *Id*. Then, Plaintiffs respond to USDA's renewed arguments about severance and Section 716(a), which provide no persuasive reason to revise this Court's conclusion that Section 716(a) should not be converted into

permission to reorganize that Congress never intended to grant. *Infra*, Section I.C.

Plaintiffs next address the Forest Service, responding to the Court's questions regarding Section 421 (Dkt. 93) and explaining why the legislative and statutory of that provision fully supports the Court's correct inclination regarding severance. *Infra*, Section II. Plaintiffs also respond to USDA's new argument that the Forest Service is not violating Section 421. *Id*. Plaintiffs finally address USDA's minimal arguments with respect to Section 771 and the Agricultural Research Service (including BARC). *Infra*, Section III.

## I. USDA Is Violating Section 716(a)

### A. USDA is Reprogramming Funds

Section 716(a) prohibits USDA from engaging in "reprogramming," "transfer of funds," "reimbursements," or "use of"" the funding mechanisms in 7 U.S.C. §2257 or 7 U.S.C. §2263, in order to, among other things, "relocate[] an office or employees" or "reorganize[] offices, programs, or activities." Pub. L. 119-37, Div. B §716, 139 Stat. 495, 544 (2025). Of the prohibited funding actions, only reprogramming and transfers are currently at issue in this case.[1]

At the preliminary injunction hearing, the Court asked USDA to explain its actions in detail and why those actions are not reprogramming for purposes of Section 716(a). Dkt. 96, Tr. at 9:24-10:10. USDA falls far short of answering the Court's question of whether the challenged office closures and employee relocations involve the reprogramming of funds. Section 716 uses the standard definition for reprogramming that is common in the appropriations context: "Reprogramming is the utilization of funds in an appropriation account for purposes other than those contemplated at the time of appropriation. It is the shifting of funds from one object to

[1] Reimbursements generally refer to a federal agency using its own appropriated funds to purchase goods or services from another agency. 31 U.S.C. §§1535-36 (Economy Act). The two other statutes cross-referenced in Section 716(a), 7 U.S.C. §§2257 and 2263, describe a subset of funding actions specific to USDA. 7 U.S.C. §2257 allows USDA to shift up to 7% of a fiscal year's appropriations for "miscellaneous expenses" for a given bureau, division, or office to "other objects included within the general expenses of such bureau, division, or office," but no line item can be increased by more than 7%, and the statute does not allow shifting funds for objects other than included in the appropriations. 7 U.S.C. §2263 allows USDA to use one appropriations account to temporarily advance costs to cover expenses for another account, as long as both accounts have legal authority to fund the activity at issue, and the money is returned to the advancing account before the end of the year. USDA does not contend it is using these authorities, and Plaintiffs agree they are not at issue here.

another within an appropriation." Dkt. 5-61 Ex. E (Explanatory Statement) at 1.[2] USDA now claims it will not engage in reprogramming merely because its brief identifies the accounts from which it contends it will spend to conduct the reorganization. Dkt. 100 at 8-9. USDA does not submit any *evidence* to support which accounts it is actually using or will use in the future. *Id.* at 19-20 (appending list of accounts to the brief). But even taking USDA's counsel's assertions at face value, they simply do not answer the relevant question for identifying reprogramming: whether the agency is spending the funds within those accounts *for purposes other than those that were intended at the time of appropriation*. GAO Glossary at 85; Dkt. 5-61 Ex. E at 1.

USDA also incorrectly claims that reprogramming requires "moving money, not just spending it"—and premises its reprogramming argument on that mischaracterization. Dkt. 100 at 10. But spending *within* an account for *purposes* other than those approved by Congress is a reprogramming. GAO Glossary at 85.[3] Despite USDA's extensive description of the appropriations process (with which Plaintiffs generally do not disagree), USDA fails to actually answer the relevant question, or provide this Court with any rubric for how to assess whether USDA's spending comports with congressional purpose.

To determine whether USDA's current and imminent actions fall within the purposes for which Congress appropriated its funds, the Court should look, first and foremost, to the text of the appropriation act and its accompanying explanatory statement. Plaintiffs have compiled the relevant statutory and accompanying text for the accounts identified by USDA in Appendix A.[4] Nothing in the text or explanatory statement for any of the accounts identified by USDA authorized the reorganizations, relocations of employees, or office closures at issue. *Id.*

[2] *See* GAO Glossary, https://www.gao.gov/assets/gao-05-734sp.pdf, at 85 (reprogramming means "[s]hifting funds within an appropriation or fund account to use them for purposes other than those contemplated at the time of appropriation; it is the shifting of funds from one object class to another within an appropriation or from one program activity to another").

[3] Transfers, on the other hand, require moving money between accounts: "A transfer is the shifting of funds between appropriations. It applies to (1) transfers from one agency to another, (2) transfers from one account to another within the same agency, and (3) transfers to an interagency or intra-agency working fund." Dkt. 5-61 Ex. E at 1; GAO Glossary at 95.

[4] USDA does not identify accounts for the Foreign Agricultural Service or Office of Assistant Secretary of Civil Rights and has therefore waived that argument. Plaintiffs have included the pertinent language for FAS and OASCR, which supports Plaintiffs' position, in the Appendix.

Next, USDA fails to inform the Court of two significant pieces of information relevant to assessing whether USDA's actions constitute a reprogramming from the purposes authorized by the Fiscal Year 2026 appropriations act. First, USDA does not mention, much less address, Section 721's express definition of the "baseline" for assessing reprogramming. Pub. L. 119-37, Div. B §721, 139 Stat. at 546. Second, USDA ignores Congress's requirement for USDA to submit organizational charts reflecting the use of the appropriated funds.

With respect to Section 721, that provision required USDA to submit to Congress within 30 days an "obligation plan" detailing, consistent with the congressional appropriations and legislative history of the act, the programs, projects, and activities on which each appropriation account will be spent. Congress expressly directed that report "*shall serve as the baseline for reprogramming notifications for purposes of section 716*." *Id.* (emphasis added).[5] USDA remarkably fails to discuss this provision or that plan at all. USDA has had every opportunity to discuss the content of this plan, and whether it identifies the actions USDA now asserts were authorized. By failing to reveal or refer to the *baseline* that Congress required, USDA has fully waived any argument based on those materials.[6]

Congress also required USDA to submit organizational charts confirming USDA's understanding of the structure and purposes for which the funds were appropriated. Congress ordered USDA "to provide an organizational chart for each agency funded by this act to the division and subdivision level, as appropriate, within 60 days of enactment of this act." Dkt. 5-61 Ex. E at 1. Those charts were due in early 2026. Like the obligation plan, Plaintiffs do not have access to the submitted charts, but given the timing, it is clear they would *not* have reflected USDA's reorganization. USDA has consistently maintained that its component-level

[5] Section 721 further requires that: "such obligation plan shall include breakdowns of estimated obligations for each such program, project, or activity by fiscal quarter, source appropriation, and the number of full-time equivalent positions supported."

[6] Plaintiffs and the public do not have access to this obligations plan. Congress made the plan mandatory, and Plaintiffs have no reason to believe USDA did not submit it to Congress. As the party with unique access to that material, USDA's failure to reveal or rely on the plan should be considered waiver and a significant admission. *Cf. Interstate Cir. v. United States*, 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse.").

reorganization plans were still in progress and not even close to being finalized at the end of 2025/early 2026. *See* Dkt. 71-1 ¶30; *AFGE v. Trump*, No. 3:25-cv-3698-SI, Dkt. 457 at 13 (claiming reorganization plans were not final). However, USDA's relocations and closures, as finalized, will significantly change its components' organization charts. Dkt. 72-2 (USDA's April and June congressional notifications comparing existing and new organizational charts under the Plan). Plaintiffs thus believe that if USDA complied with this congressional requirement in January 2026, it would have provided Congress the *old organizational charts.* Again, USDA's failure to reveal or explain the information it provided to Congress is not only telling, it is a waiver of any argument based on those materials.

Instead of looking to statutory text or contemporaneous documents reflecting the purposes for which the 2026 funds were appropriated, USDA's *counsel* asserts across the board that USDA's reorganization costs "can be paid for from the current operational accounts" listed in the brief. Dkt. 100 at 9. But USDA does not cite or submit *any evidence* supporting its counsel's assertion that the purposes contemplated for identified accounts at the time of appropriation include funding reorganizations that relocate large percentages of employees, close offices, and otherwise restructure the agencies. *See id.* In support of this assertion, USDA cites its own briefs (which are not evidence). *Id.*[7] USDA also cites the Nelson Declaration, which says nothing about the identified operational accounts or whether (let alone why) their approved purposes include the reorganization actions at issue. Dkt. 83-1 ¶¶9-10. That declaration merely conclusorily states that USDA "has not reprogrammed any funding" and "does not anticipate" doing so before December 11, 2026 (the date the continuing resolution expires). *Id.* USDA cites nothing else to support its central contention. The Court should disregard USDA's counsel's conclusory and unsupported assertions.

There are additional reasons the Court should reject the assertion that USDA's reorganization actions do not depart from the purposes for which the money in these accounts

[7] The cited portions of USDA's briefs say nothing about the accounts at issue and merely argue that USDA's actions were not taken pursuant to 7 U.S.C. §2257 or §2263—which are only two of the prohibited funding actions. Dkt. 71 at 19 n.6; Dkt. 83 at 3. This is far from evidence of that USDA's actions fall within the purposes for which the funds were given to the agency.

was appropriated. USDA's Fiscal Year 2027 budget request demonstrates USDA knows it does not have general authorization to use operating accounts for reorganization activities—if it did, it would not need to include line items for reorganization spending. But that request expressly seeks appropriations for reorganization expenses: "$55 million to manage staff relocations and prepare buildings for closure as part of USDA's broader reorganization initiative." 2027 USDA Budget Summary at 20.[8] Specifically, USDA seeks a "$55 million increase from the FY 2026 level" for the Agriculture Buildings and Facilities account, and explains this "significant increase is critical for successfully implementing the Secretary of Agriculture's major plan to reorganize the USDA, which involves relocating approximately 2,600 staff from Washington, D.C. to five new regional hubs …. This funding will directly support the transition to these new regional hubs, including office moves, and facilitate relocation expenses for agencies[.]" *Id.* at 76.

Plaintiffs' position is also consistent with how USDA's appropriations have historically been treated. In 2018, USDA began to relocate Economic Research Service ("ERS") and National Institute of Food and Agriculture ("NIFA") offices from D.C. to Kansas City. Dkt. 82-3 at 11. ERS had received only a general appropriation "for necessary expenses of the Economic Research Service" (just as ERS received for FY 2026). Pub. L. 115-141, Div. A, 132 Stat. 348, 354 (2018); *see* Pub. L. 119-37, 139 Stat. at 511. The Office of Inspector General found that ERS's use of funds to pay a contractor to facilitate the relocation violated the same prohibition on reprogramming funds to relocate offices and employees that is present in Section 716(a). Dkt. 82-3 at 15 (citing Pub. L. 115-141 §717(a), 132 Stat. at 385). USDA's Office of General Counsel did not dispute that conclusion (although it disputed other conclusions by the OIG). *Id.* at 35. By contrast, NIFA's appropriations, in addition to the general appropriations, included a specific line item authorization to apply certain appropriated funds "for relocation expenses." *Id.* at 16 (quoting Pub. L. 115-141 §753, 132 Stat. at 394). OIG and the General Counsel did not find any reprogramming. *Id.* at 16, 40. That prior reorganization illustrates that appropriations in USDA's accounts for operating these components, such as USDA relies on here, do not include funds for these types of relocation actions unless specified.

[8] *Available at* https://www.usda.gov/sites/default/files/documents/fy-2027-budget-summary.pdf.

All of this history and context is why, when USDA informed Congress of its reorganization in the spring of 2026, it told Congress that these actions generally would cost money and would *require* the reprogramming and transfer of funds. With respect to *what* USDA is using funds to pay for, while USDA did not provide the details that the Court invited, USDA admits it is spending money to relocate employees and close and reorganize offices, including expenses for "potential relocation" (e.g., relocation reimbursements to employees who move, severance payments to those who do not, and retirement incentives to those who accept VERA/VSIP, Dkt. 72-3 at 7-10; Dkt. 73-3 at 5-9); "facilities buildout" (e.g., entering new leases, building or renovating new offices, and costs associated with existing leases, Dkt. 71-1 ¶¶313-15), and "other expenses related to reorganization" (which, although vague, presumably includes things like contracting for services, Dkt. 82-3 at 11). Dkt. 100 at 9.

With respect to *how* USDA is paying for these actions, USDA previously told Congress that these actions would require reprogramming and transfer of funds. For example, USDA's April 30, 2026, notification letter for the Food and Nutrition Administration stated "the restructuring and reorganization will … result in office closures, relocate employees, and *require reprogramming and transferring certain appropriations to do so*." Dkt. 72-2 at 36 (emphasis added). Likewise, the letter for the Research, Education, and Economics mission area, which includes ERS, NIFA, and the Agricultural Research Service ("ARS"), stated "the reorganizations will ... result in office closures, relocate employees, and *require reprogramming and transferring certain appropriations to do so*. Accordingly, this notice is provided pursuant to Sections 716 and 771." *Id.* at 9 (emphasis added). The letter for staff offices (including Office of General Counsel) similarly stated "USDA expects these reorganizations will ... result in office closures, relocate employees, and *require reprogramming and/or transferring certain appropriations to do so*." *Id.* at 17 (emphasis added). A subsequent notification further identified reprogramming of specific funds from use at the Beltsville Agricultural Research Center, which the reorganization is closing, to other ARS facilities. *Id.* at 60.

Those notification letters state the obvious: that the agencies cannot use their operations accounts to perform their reorganizations, relocations, and closures without *at least*

reprogramming funds.[9] Although not all of the congressional notifications mentioned reprogramming, they all involve the same types of reorganization actions (including the relocation of employees) as the letters that do. Those letters' statements are not consistent with USDA's current litigation position. And USDA's position that operating expenses are *generally* authorized to be used for these actions treats all of these actions categorically, and does allow for component-specific reasons why some would require reprogramming and others would not. Moreover, close review of the letters USDA submitted (including those for components not at issue) reveals that when USDA understood that it would *not* need to reprogram funds, it said so. *See, e.g.*, *id.* at 4 (FSIS: "The proposed organizational changes will not require any reprogramming of funds[.]")); *id.* at 51 (AMS: same).[10]

In sum, USDA's current argument that operating budgets are available and authorized for these types of reorganization expenses is directly contrary to the record of its representations to Congress. Having been given by this Court another opportunity to explain its prior statements (which *USDA* submitted to the Court), USDA now simply ignores them. Dkt. 100. USDA offers no justification or evidence showing why the agency would have told Congress *incorrectly* that USDA was required to reprogram and/or transfer appropriated funds to pay for the reorganization actions challenged here.[11] At the preliminary injunction hearing, USDA's

[9] Plaintiffs do not have access to the information necessary to prove USDA's statements that it is required to transfer funds. The Court should credit USDA's admissions in contemporaneous documents about the need for transfers, rather than counsel's unsupported hindsight assertions.

[10] The Food Safety and Inspection Agency and Agricultural Marketing Service are not at issue in this case. The AMS letter does not involve relocating employees. The FSIS letter appears to concede its reorganization will require transfers, but not reprogramming. USDA's notification for one component at issue (Farm Production and Conservation) claimed that "realignment" of FPAC would not require reprogramming or transfers. Dkt. 72-2 at 44. But its reorganization involves transferring personnel from one subcomponent to another and then relocating them. Dkt. 5-14 ¶¶3-7. Those actions are not consistent with the appropriations for either subcomponent. *See* Dkt. 100 at 19; Appendix A at 19-22. USDA's statement to Congress that the reorganization does not involve reprogramming or transfers does not appear to be correct.

[11] USDA now argues it is not reprogramming funds, and did not notify Congress under Section 716, notwithstanding the text of its letters. Yet at the hearing, USDA's counsel *conceded* those letters set forth the basis for USDA's reorganization decisions. Dkt. 95, Tr. at 46:19-22. That concession also has important implications for Plaintiffs' argument that the agency's actions, as described and justified in those letters, are arbitrary and capricious. First, as counsel conceded at argument, USDA did not conduct or explain, in those letters or elsewhere, any analysis of how attrition will impact agency function. *Id.* at 46:23-48:18. That is a *per se* violation of the APA.

counsel suggested USDA has sent those letters prophylactically, without any intention of engaging in reprogramming or transfers, just in case USDA *might* end up engaging in reprogramming or transfers in the future. Dkt. 95, Tr. at 41:21-25. USDA has submitted no evidence supporting its counsel's assertion, which is contrary to the plain language of the letters stating that the closures and relocations "*will … require*" USDA to engage in reprogramming and transfers. *See supra*. It is also contrary to common sense, given these letters take agency time and effort, including review and approval by the Office of Management and Budget, and will inevitably lead to questions and oversight by Congress. *See* OMB Circular No. A-11, *Preparation, Submission, and Execution of the Budget* (Aug. 2025), §22.3 ("Materials subject to OMB clearance include … Reprogramming Requests and Congressional Notifications").

USDA notably only asserts that it does not intend to engage in reprogramming through December 11—raising the question of what USDA will need to do after that. Dkt. 100 at 1, 9. USDA proposed FY2027 budget has again asked Congress to remove Section 716 (and now also authorize funds for reorganization), but the pending appropriations bills do not approve either request. Dkt. 5-1 at 18 n.12; H.R. 8646, at 6, 87-88 (2026). USDA certainly cannot support the contention that Congress will not continue Section 716's longstanding prohibition on reorganization. Regardless, as previously discussed with the Court, if USDA can convince Congress to authorize its reorganization, any injunction can be revisited at that time. Until then, on the record currently before the Court, Plaintiffs have demonstrated a likelihood of success on the argument that USDA's actions violate Section 716(a).

**B. Section 716(a) Does Not Conflict with or Render Other Provisions Superfluous**

At the hearing, the Court raised the question of whether certain other provisions of the FY2026 appropriations would be rendered superfluous by Plaintiffs' reading of Section 716(a),

---

Second, USDA is no more able to rely on hindsight justifications with respect to the issue of funding mechanisms than as to any other important consideration under the APA. To the extent USDA explained its actions at the time *as a reprogramming* and moved forward predicated on the incorrect premise that it was authorized to reprogram funds without further approval, that is also arbitrary and capricious action. *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider"). USDA cannot now recant that explanation for purposes of the APA's assessment of whether these actions were properly justified at the time.

thereby undermining Plaintiffs' interpretation of the scope of 716(a). Dkt. 96, Tr. at 6:5-14, 14:1-21 (questions regarding Sections 771, 779, and 716(d)). The short answer is no. Even if the provisions somewhat overlap, Congress enacted various provisions in the act that serve the same goal—congressional oversight of agency reorganizing—through different means.

As discussed above, Section 716(a) applies to certain types of funding actions (reprogramming, transfers, reimbursements) to prohibit defined types of reorganization activities without further congressional approval. Congress was concerned in this provision with the use of funds for reasons other than contemplated for a wide range of reorganization actions, including when USDA reprograms, transfers, or reimburses funds to:

> (1) create new programs;
> (2) eliminate a program, project, or activity;
> (3) increase funds or personnel by any means for any project or activity for which funds have been denied or restricted;
> (4) relocate an office or employees;
> (5) reorganize offices, programs, or activities; or
> (6) contract out or privatizes any functions or activities presently performed by Federal employees

Pub. L. 119-37 §716, 139 Stat. at 544. Sections 771 and 779, in turn, prohibit *any* use of funds (whether or not it involves a reprogramming, transfer, or reimbursement) to close offices and/or relocate employees at specific facilities (ARS, NRCS or Rural Development offices) without committee approval. 139 Stat. at 555, 558. Through these provisions Congress added, on top of Section 716(a), a heightened prohibition on the use of any funds for these actions, whether or not they involve the funding or reorganization actions subject to Section 716(a). *Infra* at 17. Those sections are therefore both narrower than Section 716(a) (applying to specific actions at specific agencies) and broader (applying to any use of funds). Neither provision is superfluous.

Likewise, Section 716(d) imposes a different restriction on a related but different category of actions. Section 716(d) is a general notice-only provision that requires USDA to provide the appropriations committees with 30 days' notice when it engages any action:

> (1) modifying major capital investments funding levels … that involves increasing or decreasing funds in the current fiscal year for the individual investment in excess of $500,000 or 10 percent of the total cost, whichever is less;
>
> (2) realigning or reorganizing new, current, or vacant positions or agency

> activities or functions to establish a center, office, branch, or similar entity with five or more personnel; or
>
> (3) carrying out activities or functions that were not described in the budget request

139 Stat. at 544. Congress thus wanted basic notice for a broader category of actions than is covered by (a)—certain changes in investments, certain realignment or reorganizations establishing new offices; and actions USDA did not specifically describe in its budget request—whether or not those actions were contemplated or authorized by the agency's appropriations. Subsection (d) is also somewhat narrower than (a), because it only requires providing Congress notice of actions that *create* offices (i.e., actions "to establish a center, office, branch, or similar entity with five or more personnel"), as compared to some of the actions covered by (d), that *reduce or may hinder* agency functions. *See* Section 716(a)(2), (4), (6); *see also* Section 716(b) (prohibition-without-approval of expenditures to reduce staffing by 10%).

Congress therefore created these subsections of 716 with logical distinctions, even if the nature of the actions covered may overlap. There are reorganization actions that can fall within Section 716(d) without triggering Section 716(a), and vice versa, as well as other actions that trigger both sections and therefore, consistent with congressional intent, require notice and approval. But the fact that (d) exists does not mean Congress intended (a) to apply so narrowly as to avoid any overlap. *See Barton v. Barr*, 590 U.S. 222, 239 (2020) ("[R]edundancies are common in statutory drafting."). Congress can be presumed to understand and intend the implications of the scope of these provisions: In 2014 when Congress changed subsection (a) from a notice-only to prohibition-without-approval provision, Congress deliberately *added* the more general notice subsection (d) as well. Pub. L. 113-76, 128 Stat. 5, 37-38 (Jan. 17, 2014); Pub. L. 113-235, 128 Stat. 2130, 2164-66 (Dec. 16, 2014). Both the plain language and statutory history therefore show that (a) and (d) serve different purposes and are not superfluous.

In sum, the three different but related provisions identified by the Court neither conflict with nor require the Court to read Section 716(a) narrowly. The provisions that apply to some of the same actions are consistent with each other (USDA can comply with both), and even if they were not, the more specific provision should control. *RadLAX Gateway Hotel, LLC v.*

*Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general."); *cf. Seila L. LLC v. CFPB*, 591 U.S. 197, 236 (2020) ("our preference for avoiding surplusage constructions is not absolute").

**C. USDA's Renewed Argument for Severing Section 716(a) Lacks Merit**

USDA reiterates its severance arguments regarding Section 716(a), but its updated arguments remain unpersuasive. USDA contends that a committee-approval clause is so unconstitutional that the Court should assume Congress did not intend to impose any additional restriction on reorganization when it amended Section 716 to be a prohibition-without-approval provision. Dkt. 100 at 9-10. On the contrary, "when Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641-42 (2016) (cleaned up). USDA also contends Congress *could* have written a constitutional provision if it wanted to. Dkt. 100 at 9-10. But that is always the case in a severance analysis. *Seila Law*, 591 U.S. at 236 (dismissing similar argument because such "observations certainly confirm that Congress preferred an" unconstitutional provision to a constitutional one, "but they shed little light on the critical question [of what] Congress would have preferred" if it could not enact the unconstitutional provision). Congress expressly rejected a notice-only regime when it amended Section 716, and that is a very good indication that Congress would not return to such a regime just because its ability to lift the prohibition through committee approval is struck down. Plaintiffs' severance position is further supported by all the other indications in the statutory, legislative, and implementation history that Congress intended to prohibit unapproved reorganizations—history which USDA has not offered any meaningful response. Dkt. 5-1 at 17-18; Dkt. 79 at 12-13; Dkt. 82. Severing Section 716 to transform it to a notice-only provision would be the opposite of "respect[ing] Congress' choice." Dkt. 100 at 10.

**II. USDA Is Violating Section 421**

In response to this Court's question regarding Section 421 of the Forest Service appropriations act (Dkt. 93), the section's statutory and legislative history is fully consistent with Plaintiffs' severability argument because Congress intended to prohibit unapproved Forest Service reorganizations and would not have passed a notice-only authorization of such

reorganizations. In 2018, Congress expanded the definition of reprogramming to apply (as it does today) to "proposed reorganizations, workforce restructure, reshaping or transfer of functions presented in the budget justifications, or bureau-wide downsizing," "closures, consolidations, and relocations of offices, facilities, and laboratories," and "modif[ying] regional or State boundaries for agencies or bureaus."[12] Dkt. 5-62 Ex. K at 5. Congress acted in response to the first Trump Administration's efforts to "implement Executive Order 13781, a Comprehensive Plan for Reorganizing the Executive Branch." *Id.* The explanatory statement expressly noted the administration's presentation of "a number of significant reorganization proposals for the Committees consideration," and "reports that agencies funded by this Act may be weighing additional organizational changes during the remainder of this fiscal year." *Id.*

Before 2020, Forest Service actions that fell within the explanatory statement reprogramming definition triggered a notice-and-wait provision: Congress provided that committee approval was granted automatically after 30 days if the committees posed no objection to a reprogramming notification.[13] For the fiscal year 2020 appropriation, however, Congress *changed* that provision to require express approval by the committees, expressly noting that "agencies funded by this Act are continuing to work to implement Executive Order 13781, a Comprehensive Plan for Reorganizing the Executive Branch, and have included in the fiscal year 2020 budget request funding for these activities" and that "agencies funded by this Act continue to weigh additional organizational changes during the fiscal year." Dkt. 5-62 Ex. L at 5. Congress therefore made clear that Forest Service reorganizations are prohibited absent affirmative committee approval. Dkt. 5-62 Ex. L at 6; *accord* Dkt. 5-61 Ex. D at 9.

Congress also broadened the scope of the definition of prohibited reorganizations in 2020. Congress defined prohibited reorganizations as those that affected "10 staff members or 10 percent of the staffing of an affected program or office, whichever is less." *Id.* This language has been reenacted in all of the subsequent appropriations statutes to date. The legislative history

[12] Before this addition, the procedures applied to "proposed reorganizations, especially those of significant national or regional importance." *See* Dkt. 5-62 Ex. K at 5; 161 Cong. Rec. H10212 (daily ed. Dec. 17, 2015); 163 Cong. Rec. H3875 (daily ed. May 3, 2017).

[13] *See* H.R. Rep. No. 116-9, at 709 (Feb. 13, 2019) (Conf. Rep. with Explanatory Statement).

thus shows that in reaction to recent attempted reorganizations, Congress intentionally expanded the restrictions on Forest Service programming, including transitioning from a notice-only to prohibition-without-approval provision. The only way to sever Section 421 consistent with that congressional intent is to keep the prohibition in place.

USDA ignores that history and instead makes an unrelated argument, for the first time in its second supplemental brief, that Section 421's scope is "narrower than Plaintiffs' motion suggests." Dkt. 100 at 12. That new argument lacks merit—Section 421 clearly applies here.

The Forest Service's appropriations act prohibits it from reprogramming without "advance notification and approval," and incorporates the definition of reprogramming from the Reprogramming Guidelines in the explanatory statement. Pub. L. 119-74, Div. C §421, 140 Stat. 5, 163 (2026). The "Reprogramming Guidelines" define reprogramming to include "any significant departure from the program described in the agency's budget justifications;" and "all proposed reorganizations or other workforce actions detailed below which affect a total of 10 staff members or 10 percent of the staffing of an affected program or office, whichever is less, even without a change in funding." Dkt. 5-61 Ex. D at 8. Congress further explained: "Any change to the organization table presented in the budget justification shall also be subject to this requirement." *Id*. The reprogramming procedures continue: "[S]uch reprogramming guidelines apply to proposed reorganizations, workforce restructure, reshaping, transfer of functions, or bureau-wide downsizing and include closures, consolidations, and relocations of offices, facilities, and laboratories. In addition, no agency shall implement any part of a reorganization that modifies regional … boundaries for agencies … unless approved[.]" *Id.*

USDA now argues that, despite that broad definition of reprogramming, Congress intended to incorporate only "portions" of the guidance. Dkt. 100 at 12. That is nonsensical. As Congress stated with respect to the entire explanatory statement, including the guidelines: "The joint explanatory statement accompanying this division is approved and reflects congressional intent." Dkt. 5-61 Ex. D at 1. Congress did not say "in part." Indeed, Congress reiterated that "[e]ach department and agency funded in this Act is directed to follow the directions set forth in this Act and the accompanying statement and to not reallocate or reorganize activities except as

provided herein or otherwise approved by the House and Senate Appropriations Committees through the reprogramming process as referenced in this Act." *Id*.

USDA appears to be trying to *imply* that its actions do not meet the monetary threshold beyond which Congress requires written notice. Dkt. 100 at 12-13 (citing provision stating: "a reprogramming must be submitted to the Committees in writing prior to implementation if it exceeds $1,000,000 annually or results in an increase or decrease of more than 10 percent annually in affected programs or projects."); Dkt. 56-1 Ex. D at 9. USDA admits, as it must, that it did provide notice to Congress, albeit orally, because its actions fall within the guidelines' definition of reprogramming, and therefore, Section 421. *AFGE v. Trump*, No. 3:25-cv-03698-SI, Dkt. 457 (USDA's prior opposition) at 6; Dkt. 83-1 ¶22 (Forest Service regularly provides oral notice under Section 421). There are several additional problems with this argument.

First, USDA does not actually contend or provide evidence to support a conclusion that the Forest Service's reorganization will not meet the $1,000,000 or ten percent threshold. Dkt. 100 at 13. The record already indicates otherwise: USDA asserts that in fiscal year 2026 it entered a new lease for the Salt Lake City headquarters, and the relocation costs for that office alone likely meet that threshold. Dkt. 71-1 ¶315.A, E (listing new lease *plus* $1,005,100.56 in renovations).[14] USDA should also expect significant attrition from the forced employee relocations, and will incur relocation expenses for those who do move, plus buy-outs, severance, and early retirement payouts to those who do not. *E.g.*, USDA Lump-Sum Relocation Expense Memo (May 29, 2026) (employee relocations cost USDA "$50,600 per move");[15] OPM,

[14] USDA admits: "The impacts of the [Forest Service] reorganization are at the Washington Office, Regional Office and Research … Station level." Dkt. 71-1 ¶176. As set forth in 36 C.F.R. §200.1, the Forest Service headquarters is currently located in Washington, D.C. As the agency has explained to Congress (and this Court), it plans to move that office, contrary to its regulation, to Salt Lake City, Utah. *Id.* The cost of that move alone will undeniably be very significant. Likewise, as set forth in 36 C.F.R. §200.2, the Forest Service has nine Regional Offices in particular locations throughout the United States. Contrary to this regulation, the Forest Service intends to close or move those offices. *Id.* ¶178. Those closures and relocations will also result in substantial costs, about which USDA puts forth *no evidence*.

[15] *Available at* https://www.opm.gov/policy-data-oversight/workforce-restructuring/voluntary-separation-incentive-payments/.

Voluntary Separation Incentive Payments (up to $25,000 per employee).[16] Such payments to hundreds of employees will cause USDA to incur, at a minimum, hundreds of thousands of costs. And that does not account for the costs of procuring all the new state offices and operations centers that USDA describes, relocating equipment, or outfitting these new offices. Dkt. 71-1 ¶¶176-79. There is little doubt that the reason USDA has not presented argument or evidence on this issue is that it well knows that the cost of this reorganization easily exceeds the threshold.[17]

Second, USDA is wrong as a matter of statutory interpretation that Congress intended to limit the committee approval provision to the subset of reprogrammings for which it required written notice. The plain text of the statute contains no such limitation. USDA places far too much weight on construing "in accordance with the reprogramming procedures" to mean that Congress meant not all reprogramming requires notice and approval. Nothing in the statute or guidelines states that Congress intended the threshold for written notice to apply to *approval* requirements. And USDA never explains why Congress would include such an expansive definition of reprogramming, while also converting from notice-only to notice-and-approval language, if it did not mean for any procedures to apply to actions within that definition. Third, USDA cannot support the argument that some reorganization activities below the written notice threshold require *notice only* rather than notice and approval (which is what the statute says). USDA admits it was required to give notice; it simply contends it did not have to give written notice. USDA cannot selectively apply the *notice* part of the statute, without the *approval* part.

**III. USDA Is Also Violating Section 771**

As discussed above, Section 771 prohibits USDA from using *any* funds to "close or consolidate the resources or locations of any existing Agricultural Research Service laboratories and facilities" (regardless of whether those expenditures implicate reprogramming or transfers). Pub. L. 119-37, Div. B §771. The plain text thus prohibits USDA's planned closure of BARC and consolidation of that location (including its resources, such as research employees) with

---

[16] *Available at* https://www.opm.gov/policy-data-oversight/workforce-restructuring/voluntary-early-retirement-authority/top-10-frequently-asked-questions-about-vera-and-vsip.pdf

[17] That USDA provided oral notice does not mean the reorganization costs fall below that threshold. It simply means USDA failed to comply with the act.

other existing ARS labs and facilities. Dkt. 72-2 at 9-10 (ARS's congressional notification letter admitting that Section 771 applies to its reorganization); *id*. at 60 (ARS's second notification admitting ARS is "closing BARC and moving funded research programs to other ARS facilities"). USDA's argument that the section does not prohibit relocating employees, Dkt. 100 at 13, ignores that USDA is relocating employees precisely because it is unlawfully closing BARC and consolidating it with other locations in violation of Section 771.

This Court asked the parties to address the history of Section 771, which USDA does not do. Dkt. 93; Dkt. 100 at 13-14. The section was added for the first time in the Fiscal Year 2026 appropriations act in response to USDA's reorganization plans to close ARS research facilities, including BARC. USDA's FY2026 budget proposal included closing ARS labs and locations, and shortly after a hearing on USDA's Reorganization Plan that discussed closing BARC, the Senate passed an appropriations bill the provision that would become 771. *See* H.R. 3944, 119th Cong. §772 (2025); Dkt. 5-60 Ex. D; Dkt. 5-62 Ex. B. The Senate and House ultimately compromised to pass a different bill, H.R. 5371, which the Senate amended on November 10, 2025, and included the language against closing and consolidating ARS facilities as section 771. H.R. 5371, 119th Cong. §771.[18] In addition to prohibiting use of funds to close facilities, Congress also appropriated funds for construction and improvements at BARC on top of the existing appropriations for BARC. Pub. L. 119-37, 139 Stat. at 513. The Explanatory Statement explicitly states that the Act not only "rejects research terminations and laboratory closures proposed in the President's budget request and expects extramural and intramural research to be funded at no less than the fiscal year 2024 levels," but also "supports the continued operation of the Beltsville Agricultural Research Center." Explanatory Statement at 5-6. This history supports Plaintiffs' position on severability.

DATED: October 6, 2026

Respectfully submitted,

Barbara J. Chisholm

[18] H.R. 5371 was passed and signed into law as Pub. L. 119-37.

Danielle E. Leonard
Corinne F. Johnson
Jessica M. Levy
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

By: */s/ Corinne F. Johnson*

*Attorneys for All Union and Non-Profit Plaintiffs*

Elena Goldstein (*pro hac vice*)
Tsuki Hoshijima (*pro hac vice*)
Andrea Matthews (*pro hac vice*)
Gregory M. Cumming (*pro hac vice*)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
egoldstein@democracyforward.org
thoshijima@democracyforward.org
amatthews@democracyforward.org
gcumming@democracyforward.org

By: */s/ Tsuki Hoshijima*

*Attorneys for All Union Plaintiffs*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiff American Federation of Government Employees, AFL-CIO (AFGE)*

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice*)

AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: *<u>/s/ Teague Paterson</u>*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Yvette M. Piacsek (*pro hac vice*)
General Counsel
National Federation of Federal Employees, IAM,
AFL-CIO
1225 New York Ave. N.W., Suite 450
Washington, D.C. 20005
202-216-4428
ypiacsek@nffe.org

By: *<u>/s/ Yvette M. Piacsek</u>*

*Attorneys for National Federation of Federal Employees, IAM, AFL-CIO (NFFE)*

PARAS N. SHAH (*pro hac vice*)
General Counsel
KATHRYN W. BAILEY (*pro hac vice*)
Assistant Counsel
NATIONAL TREASURY EMPLOYEES UNION
800 K Street, NW
Suite 1000
Washington, DC 20001
(202) 572-5500
paras.shah@nteu.org
kathryn.bailey@nteu.org

By: *<u>/s/ Paras N. Shah</u>*

*Attorneys for National Treasury Employees Union (NTEU)*

David Chiu (SBN 189542)
City Attorney

Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: */s/ Alexander J. Holtzman*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Sharanya Mohan (SBN 350675)
Kayla Svihovec (*pro hac vice*)
Toby Merrill (*pro hac vice*)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788

sai@publicrightsproject.org
kayla.svihovec@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Kayla Svihovec*

*Attorneys for Plaintiffs Baltimore, MD, Chicago, IL, Martin Luther King, Jr. County, WA, Prince George's County, MD*

Christopher Sanders (WA SBN: 47518 (*pro hac vice*))
General Counsel & Chief Legal Advisor to King County Executive Girmay Zahilay
Mika Rothman (WA SBN: 55870 (*pro hac vice*))
Deputy General Counsel to King County Executive Girmay Zahilay
Erin King-Clancy (CA SBN: 249197, WA SBN: 57259)
Senior Deputy Prosecuting Attorney
Office of King County Prosecuting Attorney Leesa Manion
401 5th Avenue, Ste. 800
Seattle, WA 98104
(206) 477-9483
ChrSanders@kingcounty.gov
mrothman@kingcounty.gov
EClancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for King County*

Ebony M. Thompson (*pro hac vice app. forthcoming*)
Baltimore City Solicitor
Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (443) 610-8859
christopher.sousa@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*

Anthony D. Jones (*pro hac vice app. forthcoming*)
Prince George's County Attorney
Prince George's County Office of Law

1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
Tel: (301) 925-5225
adjones@princegeorgescountymd.gov

By: */s/ Anthony D. Jones*

*Attorney for Plaintiff Prince George's County*

Gavin G. McCabe (SBN 130864)
Simi Bhat (SBN 289143)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St Fl 21,
San Francisco, CA 94104
Tel: (415) 875-6100
gmccabe@nrdc.org
sbhat@nrdc.org

By: */s/ Gavin G. McCabe*

*Attorneys for Plaintiff Natural Resources Defense Council*