BRETT A. SHUMATE
Assistant Attorney General
BRAD P. ROSENBERG
Chief Litigation Counsel
TAYLOR PITZ (CA Bar No. 332080)
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5200
Taylor.N.Pitz@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,

Defendants.

Case No. 3:26-cv-09976-VC

**DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

Date: December 10, 2026 (or as set by Court)
Judge: Hon. Vince Chhabria

## INTRODUCTION

Defendants respectfully renew their request that the Court stay its Order Granting a § 705 Stay, ECF No. 107 ("Stay Order"), pending Defendants' appeal of that order, *see* Defs.' Notice of Appeal, ECF No. 108. Defendants acknowledge that the Court previously denied Defendants' preemptive request for a stay, but respectfully submit that additional declaration testimony addressing the impact of the Stay Order on the U.S. Department of Agriculture ("USDA"), and in particular, the Forest Service's ability to manage wildland firefighting and avalanche operations, and the Research, Education, and Economics ("REE") mission area's ability to conduct key research, tilts the balance of the stay factors in Defendants' favor.

## BACKGROUND

On September 8, 2026, Plaintiffs moved for a preliminary injunction and stay under 5 U.S.C. § 705. *See* Pls.' Mot. for Prelim. Inj. and Stay Under 5 U.S.C. § 705, ECF No. 5. Defendants opposed, and in their opposition brief, preemptively requested that if the Court granted Plaintiffs' motion, that the Court stay that decision pending the disposition of any authorized appeal. *See* Defs.' Opp. to Pls.' Mot. for a Prelim. Inj. at 35, ECF No. 71 ("Defs.' Opp."). At oral argument on the motion, the Court denied Defendants' request on the record. *See* Tr. of Proceedings Held on Sept. 29, 2026 at 54:9-25; 55:1-16. On October 13, 2026, the Court granted Plaintiffs' motion and entered a Section 705 Stay. ECF No. 107. On October 15, 2026, Defendants noticed their appeal of that decision. Notice of Appeal, ECF No. 108.

## LEGAL STANDARD

Courts consider four factors in considering whether to grant a stay pending appeal: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceedings"; and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## DISCUSSION

### I. Absent a stay, Defendants and the public interest will be irreparably injured.

For all the reasons Defendants have previously provided, the Court's broad stay of USDA's

relocation and reassignment of its employees, closure of offices, and other reorganization activities significantly hinders USDA's operations across the board. *See* Defs.' Opp.; *see also* Decl. of Mary Pletcher Rice, ECF No. 71-1. For the additional reasons described below and in greater detail in the attached declarations, Defendants submit that the harm to Defendants and the public interest both support that a stay should be granted.

*First*, the Stay Order impairs the Forest Service's wildfire and avalanche management operations. Wildfire season varies by geographic region, but currently, the Forest Service is actively fighting fires in the Gulf Coast and California. *See* Ex. A, Decl. of Thomas M. Schultz, Jr. in Supp. of Defs.' Mot. for Stay Pending Appeal ¶ 45 ("Schultz Decl."). Additionally, the Forest Service is entering prescribed fire season, which runs from October through March. *Id.* During that period, the agency initiates controlled fires (or prescribed burns), which are fire mitigation operations that reduce the risk of wildfires in vulnerable areas. *Id.* To conduct both firefighting and prescribed burn activities, the Forest Service uses what it refers to as the red-card system, whereby a large number of employees "who are not 'firefighters' but are persons who have completed intensive training and hold certifications qualifying them for various roles in wildland firefighting," are temporarily reassigned to duty stations outside their local commuting area, as needed. *Id.* ¶ 44. Distinct from those temporary assignments, the agency relies on permanent reassignments to fill critical oversight, leadership, and management positions that are essential to carry out these wildfire responses safely and effectively. *Id.* ¶¶ 46-47. For instance, at the local level, the Fire Management Officer ("FMO") is the key management official responsible for the overall operation of wildfire and prescribed fire responses. *Id.* ¶ 47. Currently, the agency has 25 vacant FMO and Assistant Fire Management Officer positions. *Id.* The agency typically uses voluntary reassignments of qualified and experienced employees to fill these positions to meet the agency's needs. *Id.* But the Court's Order significantly restricts and complicates filling these critical positions. Without proper oversight and allocation of resources, the agency's wildfire management activities may be undermined, and the agency's ability to conduct prescribed fire operations will be compromised. *Id.* ¶ 48.

The Forest Service is also responsible for significant avalanche forecasting and mitigation

work. The Forest Service permits 122 downhill ski areas, which represent nearly a quarter of all ski areas and more than two-thirds of capacity in the United States. *Id.* ¶ 50. Those areas receive over 40 million visits per year and represent $3.5 billion in direct spending and revenue to the communities they serve. *Id.* To ensure these ski areas can operate safely, the Forest Service supports 14 avalanche centers that provide for the forecasting and mitigation of avalanches throughout the West. *Id.* The Forest Service needs to advertise 18 positions in these centers, including 10 avalanche center leads and directors—roles that are primarily filled via reassignment within the Forest Service. *Id.* ¶ 51. The Court's Stay Order makes that substantially more difficult, and accordingly, the Forest Service anticipates that the leadership provided by the 10 avalanche center leads will likely not be in place for this year's avalanche season. These vacancies jeopardize the Forest Service's ability to provide accurate forecasts and conduct crucial mitigation work to protect Americans and ski areas from devastating avalanches.

*Second*, the Stay Order impairs USDA's ability to conduct cutting-edge research. *See* Ex. B, Decl. of Dr. Scott Hutchins in Supp. of Defs.' Mot. for Stay Pending Appeal ("Hutchins Decl."). For instance, the Stay Order prevents the Agricultural Research Service ("ARS") from closing the Beltsville Agricultural Research Center ("BARC"), which in turn, requires ARS to allocate a greater portion of research funding to keep BARC's expansive and dilapidated campus functioning. *Id.* ¶¶ 15-18, 27. This comes at the cost of important research, like the development and validation of advanced imaging systems to detect contamination in fresh produce and customized sensing technologies for food inspection and sanitation assessment in processing facilities. *Id.* ¶ 28. That research addresses a substantial public-health problem: the Centers for Disease Control and Prevention estimates that, each year, foodborne illness sickens 48 million Americans, causes 128,000 hospitalizations, and results in 3,000 deaths. *Id.*; *see also id.* ¶¶ 29-30 (describing other research threatened). Further, the Stay Order also prevents ARS from reassigning researchers whose projects were defunded by Congress to funded projects. ARS had been funding the salaries of those researchers through agency-level resources through FY 2026, but those positions are now at risk. *Id.* ¶ 14. Other employees are also facing negative impacts. *See id.* ¶ 19 (describing negative impacts on employees left in limbo by the Stay Order).

For all these reasons, and those set forth in the attached declarations, the harm to Defendants and the public interest both weigh in favor of staying the Court's Stay Order pending appeal.

**II. Defendants have made a strong showing of likelihood of success on the merits.**

For all the reasons set forth in Defendants' prior briefing and argument, Defendants have demonstrated a likelihood of success on the merits. *See* Defs.' Opp. at 9-32; Defs.' Supp. Br., ECF No. 83; Defs.' Second Supp. Br., ECF No. 100.

**III. Issuance of a stay will not substantially injure Plaintiffs.**

For all the reasons set forth in Defendants' prior briefing addressing why Plaintiffs had not demonstrated irreparable harm, Plaintiffs will not be substantially injured by a stay. *See* Defs.' Opp. at 32-34; *see also* Defs.' Response to Br. of Amici Curiae States, ECF No. 78.

**CONCLUSION**

For the reasons above and the reasons set forth in Defendants' prior briefing and argument, the Court should stay its Order Granting a § 705 Stay pending Defendants' appeal of that decision.

Dated: October 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

BRAD P. ROSENBERG
Chief Litigation Counsel

*/s/ Taylor Pitz*
TAYLOR PITZ
CA Bar No. 332080
Trial Attorney
Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-5200
Taylor.N.Pitz@usdoj.gov

*Counsel for Defendants*