Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Corinne F. Johnson (SBN 287385)
Jessica M. Levy (SBN 368289)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

*Attorneys for All Union and Non-Profit Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture,<br><br>Defendants. | Case No. 3:26-cv-09976-VC<br><br>**DECLARATION OF BRET COOPER** |

**DECLARATION OF BRET COOPER**

I, Bret Cooper, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am a research scientist who studies plant pathology. I hold a Ph.D. in Plant Pathology from the University of California, Riverside. Since 2004, I have been employed by the United States Department of Agriculture (USDA)'s Agricultural Research Service (ARS) as a Research Plant Pathologist in the Soybean Genomics & Improvement Laboratory at the Beltsville Agricultural Research Center (BARC). I am currently the Lead Scientist on the Proteomic and Metabolomic Characterization of Quality Traits in Soybeans, Beans, and Agricultural Products project within BARC's Soybean Genomics & Improvement Laboratory.

3. I am a member of the American Federation of Government Employees (AFGE).

4. From July to December 2009, I was detailed to the ARS Headquarters and served as Deputy Assistant Administrator of the Office of Technology Transfer (OTT), overseeing cooperative research and development for all of USDA-ARS. When the OTT Assistant Administrator was not available, I attended the ARS Administrator's Counsel meetings, senior leadership meetings that discussed sensitive ARS business often including budgetary and personnel matters prescribed by appropriation law. In this position, I learned how ARS made decisions to fund and defund projects as well as the typical processes that occured when projects are defunded.

5. From 2014 through 2021, I served as the Research Leader for the Soybean Genomics & Improvement Laboratory. In this position, I supervised personnel and projects and administrated budgets within our laboratory, and I gained additional familiarity with the process by which BARC projects are funded and defunded.

6. I have reviewed the declaration that Dr. Scott Hutchins submitted in *AFGE v. USDA*, Case No. 3:26-cv-09976. This declaration identifies seventeen projects, including my project, which USDA claims "Congress deliberately" defunded in full or in part. Dkt. 111-3 ¶22.

7. I am aware that the Explanatory Statement for the Appropriations Act that funded USDA for Fiscal Year 2026 provides for the reduction in ARS Salaries and Expenses by approximately $32 million dollars across eight broad categories of research: "New Product Quality/Value Added," "Livestock Production, "Crop Production," "Food Safety," "Livestock Protection," "Crop Protection," "Human Nutrition," and "Environmental Stewardship."

8. My current project studies a particular rust fungus that affects soybeans and ways to create resistance to that fungus. This fits within the large category of "Crop Production." Nothing in the Appropriations Act nor in the Explanatory Statement, however, identifies my specific project for full or partial defunding. The same is true of the other sixteen projects that USDA claims "were partially or fully defunded *by Congress*." Dkt. 111-3 ¶22 (emphasis added). That is because Congress did not make the decision to defund my project. From my long experience with ARS budgeting, I understand that *ARS*, not Congress, would have decided the funding changes for specific projects that would need to occur to meet the total aggregate reductions that Congress directed across high-level categories. ARS makes the more granular decisions of how to apply overall funding changes across its research facilities, laboratories, and projects.

9. In past years, ARS would spread the totality of the reductions across locations around the entire country. In 2026, however, ARS targeted the majority of the budget reductions at BARC projects rather than spreading the reductions out among all ARS locations. The sum of BARC project funding reductions is $21.6 million dollars. Dkt. 111-3 ¶23. Thus, a little more than two-thirds of the categorized funding reductions in the 2026 Congression appropriation for ARS was applied by ARS specifically to BARC.

10. In past years, it was ARS's position that if Congress reduced general ARS levels of project funding, ARS would first use its discretionary authority to eliminate vacant positions in order to free funds while refraining from affecting working employees.

11. For example, in 2016, ARS received less money from Congress than it did in 2015. ARS directed a 5% budget reduction for the Soybean Genomics and Improvement

Laboratory. Eliminating a position can deobligate several hundreds of thousands of dollars required for salary and benefits. Knowing from practice that ARS eliminated vacant positions before eliminating active personnel or relocating personnel, however, I abolished a vacant position in the laboratory to solve the funding problem. While abolishing the vacant position leaves the laboratory unable to hire, it frees up the funding that had been obligated for that purpose and allows ARS to use those funds to cover spending (e.g., for existing personnel or research materials) that would otherwise need to be reduced.

12. In my experience, ARS has traditionally addressed real and proposed Congressional and Presidential budget reductions by abolishing vacant positions rather than closing labs or relocating employees. It was extremely rare that ARS would respond to a budget reduction by seeking to reassign employees to other research projects, let alone to reassign them to completely new laboratories. If budget reductions did require closing a position on a particular project, ARS would redirect the scientists to funded research projects at the same research location before ever relocating a scientist.

13. For instance, for two years when I served as Research Leader, a project for the Confocal and Electron Microscope Unit that I supervised was proposed to be eliminated in the President's budget proposals. In both years, Congress ultimately rejected the President's proposal and the jobs remained funded and unaffected. However, I was responsible for preparing for the possibility that the budget was reduced. It was ARS's position that the affected personnel would not lose their jobs and that ARS would not relocate budget-impacted employees, but instead reassign them to other vacant positions at the Beltsville Agricultural Research Center.

14. There are currently substantial vacancies at BARC, in large part because of the Deferred Resignation Program. BARC currently has approximately 260 employees, down from 450 employees two years ago and about 600 employees six to eight years ago. For instance, I am personally aware from my conversations with other scientists at BARC that there are vacant research scientist positions for a tomato pathologist and for a potato pathologist for which

scientists in the Soybean Genomics & Improvement Laboratory would be qualified, including myself. But ARS is reassigning me and other puportedly "budget impacted" scientists to laboratories across the country instead of either placing them in BARC vacancies that would permit them to remain at the same facility, or abolishing those BARC vacancies to free up funds to allow the impacted scientists to remain at BARC. Moreover, despite these vacancies, USDA is claiming that employees in budget-impacted positions are at risk of discontinued employment because ARS does not have sufficient funding to continue supporting the salaries of these researchers as long as they are at BARC. Dkt. 111-3 ¶22.

15. The funding for my project was reduced by $655,154. Dkt. 111-3 ¶22(q). The Management Directed Reassignment (MDR) letter that I received, however, did not reassign me because I was "budget-impacted." Instead, the letter says that I am being reassigned to Missouri based on the USDA reorganization. According to the Hutchins declaration, the remaining funding for my project ($1,179,279) will also be relocated to Missouri. Dkt. 111-3 ¶25(u).

16. Other projects that were partially defunded have been cancelled and their staff relocated, but ARS has failed to explain why those projects with reduced funding cannot continue while others like mine could continue at BARC or elsewhere for that matter. For instance, the Characterization and Utilization of Genetic Diversity in Soybean and Common Bean and Management and Utilization of The National Rhizobium Genetic Resource Collection project in our laboratory was defunded by a similar amount as my project. Yet, ARS canceled that entire project and issued MDR letters that split the team by reassigning personnel to separate locations across the country.

17. USDA generally claims that alternative locations are the "best" sites for BARC research projects. Dkt. 111-3 ¶25. However, around 2021-2022, ARS received Congressional appropriated funding for facility renovations and approximatly $43 million dollars was awarded to BARC to renovate Bldg. 005. The Soybean Genomics and Improvement Laboratory (including my own laboratory) was destined to move into that renovated Bldg. 005 from our current Bldg. 006 across the street. I spent 3 years performing architechtural planning with ARS

and the Army Corps of Engineers to design and build custom temperature-controlled rooms for seed storage, plant growth, and biochemistry research, as well as a positive-pressure containment laboratory and outdoor greenhouse specifically for our research projects. All contruction work for that modern BARC laboratory that was funded by Congress was halted by ARS in early 2026. Furthermore, other BARC scientists were stopped from moving into the separately Congressionally-funded and newly renovated BARC Bldg. 002. The amount of total renovated space of the two buildings is sufficient to wholly contain at least 5 BARC laboratory units.

18. I am aware of no BARC laboratory previously destined for Bldgs. 002 and 005 that is being relocated to a better ARS facility than the planned, custom-built accomodations at BARC Bldgs. 002 and 005. For example, ARS does not yet have its own building at Columbia, Missouri, the destination for my project. Instead, ARS is using swing-space from the University of Missouri until the dedicated ARS facility on campus is finished (more than two years from now). The swing-space that I would occupy includes windowless basement labs with unsuitable research equipment. Furthermore, it is questionable whether the facility can accommodate my project's pathogen containment requirements, and it is now clear that no assessment was made whether the Missouri facilities would appropriately accommodate my project or whether the future ARS facility would be modified to support my needs. ARS has not allowed me to visit the Missouri site. I do not agree that the Missouri location is the best option for my project with respect to research facilities. On the basis of the conversations that I have had with other BARC scientists, I understand that they also believe their projects are being relocated to destinations that are worse or not better than the newly-renovated or currently-being-renovated BARC laboratories.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed November 4, 2026, in Laurel, Maryland.

[signature]

Bret Cooper

11/4/2026