Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Corinne F. Johnson (SBN 287385)
Jessica M. Levy (SBN 368289)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
bchisholm@altber.com
dleonard@altber.com
cjohnson@altber.com
jlevy@altber.com

*Attorneys for All Union and Non-Profit Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture,<br><br>Defendants. | Case No. 3:26-cv-09976-VC<br><br>**SECOND DECLARATION OF DR. JOAN LUNNEY** |

**SECOND DECLARATION OF DR. JOAN LUNNEY**

I, Dr. Joan Lunney, declare as follows:

1. I am over 18 years old and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. As I have attested previously, see Dkt. 5-56, I worked at the Beltsville Agricultural Research Center (BARC) for 42 years before retiring in December 2025. I am a research scientist who studies swine immunology, and I hold a Ph.D. in Biochemistry from Johns Hopkins University. Before my retirement, I was a Supervisory Research Scientist at the Animal Parasitic Diseases Laboratory at BARC. I am a Distinguished Senior Research Scientist, a position colloquially known as a "supergrade" scientist,[1] and I continue to write and publish research in addition to actively mentoring and advising scientists at BARC and elsewhere.

3. I have reviewed the recent filings submitted by USDA in *AFGE v. USDA*, Case No. 3:26-cv-09976-VC, Dkts. 111-1 and 111-3 (the Hutchins Declaration), which make assertions about the process of how research, personnel, and facilities are funded at ARS and at BARC. The filings also make assertions about the condition of BARC and its impact on the research mission ARS is tasked with fulfilling. Based on my 42 years working as a scientist at BARC, I have relevant information and experience on these topics.

4. The Hutchins Declaration asserts that Congress "deliberately fully defunded" nine BARC research projects. In my 40+ years of working at BARC, I have not been aware of Congress treating ARS research funding that way. And nothing in the FY2026 appropriations language or accompanying explanatory statement suggests that Congress treated specific BARC research projects as line items in those appropriations. Rather, the FY2026 appropriations slightly decreased some overarching categories of ARS research funding (while increasing other categories). In my experience, when there are changes to ARS's budget for broad categories of research, ARS sometimes makes the decision to shift or revise research projects—just as ARS

[1] U.S. Dep't of Agric., Agric. Research Serv., *Meet the Distinguished Senior Research Scientists*, https://perma.cc/KW42-4WR2.

may shift or revise research projects to adjust to changes in policy focus or updates to the scientific field. But during those shifts, ARS has predominately kept researchers in place because their laboratory spaces are specifically designed to support the kind of work that they do based on their methods and fields of study, even if the specific focus of that work on a particular project might change. Shifts in research focus on certain projects do not equate to vacating a research facility, and never a location as large and significant as BARC. Instead, the researcher adapts the questions they're studying.

5. The Hutchins Declaration also paints a picture of the conditions at BARC that is deeply misleading. For several years, Congress has invested in the modernization of specific buildings on BARC's campus and ARS has been consolidating research staff into the newly renovated buildings. The BARC modernization project has focused on around eleven buildings, of which nine are complete: Building 001, 003, 004, 006, 010A, 306, 307, 307B, and 307C. Of the remaining two buildings subject to the modernization plan, one is nearly complete, Building 002. The $661.5 million the Declaration claims is needed for BARC is an outdated number that does not reflect the modernization project that has been underway for years and that is nearly finished.

6. Over the past 15 years, approximately $300 million in congressionally appropriated funds have been invested in BARC's physical infrastructure. Buildings that have been modernized and are in use reflect up-to-date research needs and include purpose-built infrastructure, equipment, and functionalities that took years to build and hundreds of millions of dollars to procure. Buildings that do not house researchers or research projects are not the subject of modernization investments and do not impose costs because they are not being used.

7. The Hutchins Declaration also claims that ARS has considered other research sites "to determine the best locations to assume BARC research projects[.]" But many of the listed sites are not able to support BARC research that ARS has said it will move. Instead, in the best case scenario, that research will shift to different species targets or will be hamstrung for as long as 2-5 years, because it will require financial investments, sophisticated equipment,

infrastructure adjustments, personnel training, certifications, and recruitment of replacement personnel before the new location will be capable of supporting research at the level BARC does currently. Moreover, there is no guarantee that ARS will provide these resources. In the worst case scenario, moving will permanently shutter research that has been in progress for decades, and whose contributions to scientific knowledge cannot be replicated or replaced.

a. For example, the Hutchins Declaration claims that research on molecular, immune, and microbiome approaches for mitigating gastrointestinal nematode infections of livestock will move from BARC to Utah. But that research requires a laboratory that has a Biosafety Level 2 rating and physical facilities to handle the livestock necessary for the infectious disease livestock research. The Utah facility has only a Biosafety Level 1 rating, which means it cannot physically or legally support the research that is slated to move there. In order to obtain a Biosafety Level 2 rating, there needs to be updated physical infrastructure and equipment, which is costly to build and obtain. The Animal Plant Health Inspection Service (APHIS) will need to inspect and authorize the lab, and the staff must undertake training. The Utah facility does not have the physical infrastructure or permits necessary to do live animal vaccine work. It is possible to obtain the physical investments needed to transform a Level 1 to a Level 2, but it takes significant money and time: 6-12 months. And because the facility cannot handle the livestock necessary for the research set to move there, ARS will have to pay a contractor to grow parasite strains in cattle at a private facility, at a cost of approximately $100,000 per strain. (I would expect the research to require 4-8 strains per year.) All told, I anticipate the move will cause a 2-3 year delay in the science in the best case scenario, and that is if ARS provides the financial investments needed to update the current facility and recruit and train appropriate support staff.

b. The Declaration says that research on fresh cut produce processing will move to Washington. The research done at BARC includes processing of leafy green vegetables, such as spinach, to remove foodborne pathogens such as *E. coli*. BARC's facility for this research includes a full-size processing plant that is the equivalent in size to four labs and includes industry donated equipment to monitor washing conditions and proper cold temperatures. The processing

plant is set to be abandoned at BARC; there is no plan and there are no means to move it to the Washington facility, which does not have any room for it. Though ARS says it is moving the research, in reality the research will simply stop when its personnel are relocated to a location without the facilities they need to do their work. Indeed, this will mean abandoning the fresh cut produce work that the Hutchins Declaration states is needed.

c. The Declaration says that research on optimizing agricultural systems will move to Indiana. This research studies the performance of five different crops under long-running surveillance—30 years of data so far. These long-term studies are critical to modelers who require long term data to test and validate their models. Because the factors being measured are site specific, moving the research will scrap the 30-year dataset and start from zero, wiping out decades of irreplaceable information. The existing research will not be replicated because it cannot be replicated at a new site. Stakeholders who rely on this research will lose valuable data and ARS advice and guidance needed for their cropping systems plans.

8. The Declaration suggests that research done at BARC is somehow less efficient than research done at other ARS locations, or that keeping research projects at BARC undermines the quality of research at ARS. That is not accurate. Scattering BARC's research projects to the locations ARS has designated will remove researchers from buildings that have received hundreds of millions of dollars in investments specifically for their needs, and disperse them to locations that do not have the infrastructure, space, technology, permitting, or physical conditions they need to do their work. The research ARS claims it is trying to enhance will be delayed by years in the best case and destroyed in the worst case.

9. It is particularly problematic that ARS has used the detection of contamination of fresh produce as an example of work that it says may be impeded by maintaining research at BARC. BARC's researchers include a team specifically working on protecting Americans from diarrhea caused by cyclospora. But pursuant to the USDA reorganization plan and the decision to close BARC, that team was told to stop its work. As a result, the team was sidelined, forbidden from doing their jobs, before and during the cyclospora outbreak in the summer that sickened

Americans across the country.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed November 3, 2026, in Bethesda, Maryland.



Dr. Joan Lunney, Ph.D.