JONATHAN D. GUYNN
Acting Assistant Attorney General
BRAD P. ROSENBERG
Chief Litigation Counsel
TAYLOR PITZ (CA Bar No. 332080)
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5200
Taylor.N.Pitz@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | Case No. 3:26-cv-09976-VC<br><br>**DEFENDANTS' MOTION FOR CLARIFICATION OF OCTOBER 13, 2026 STAY ORDER**<br><br>Judge: Hon. Vince Chhabria<br>Place: San Francisco Courthouse<br>Courtroom 3, 17th Floor |

Pursuant to the Court's Order, ECF No. 115, counsel for Defendants have conferred with counsel for Plaintiffs, but were unable to reach a stipulated agreement to modify the Court's Order Granting Motion for Stay Under 5 U.S.C. § 705, ECF No. 107 ("Stay Order"). Defendants maintain all of their objections with respect to the Stay Order, but Defendants respectfully request that the Court clarify certain provisions of that Stay Order as set forth below.[1] Even with these clarifications, the Stay Order continues to harm Defendants and the public interest. *See* Defs.' Opp. to Pls.' Mot. for Prelim. Inj. and Stay Under 5 U.S.C. § 705, ECF No. 71; Defs.' Mot. for Stay Pending Appeal, ECF No. 111-1. Because the clarification process will not alleviate these harms, Defendants intend to seek further review in the Ninth Circuit. As explained in the accompanying administrative motion to shorten time, Defendants request that the Court rule on this motion by December 3, 2026, so that the scope of the Court's Order is clear for purposes of seeking further review.

## I. Paragraph 4(b)

Current Text:

"Notwithstanding the foregoing, this order does not enjoin the defendants from:

a. ***;

b. reassigning a covered employee who applies or applied to a job announcement on USAJobs or other internal agency merit-hiring application processes, is selected for the position, and accepts the position, provided that the reassignment is unrelated to the reorganization activities stayed by paragraphs 1 through 3;"

USDA Position:

The reference back to "reorganization activities stayed by paragraphs 1 through 3" is ambiguous and can be read to preclude "relocating or reassigning employees or their positions or functions to different and/or new locations outside the local commuting area, including by issuing or enforcing MDR letters or any other notice or directive of reassignment or relocation," regardless

[1] This motion references the numbered paragraphs detailing the specific relief entered at pages 38-40 of the Stay Order.

of their relation to the reorganization. Stay Order at 39.

An elimination of this language would provide the most certainty and would allow USDA to proceed with reassignments outside of local commuting areas for employees applying to job announcements or through internal application processes regardless of commuting area. This ensures both that Plaintiff employees are eligible to apply and be considered for different positions within the agency, if they so choose, and that Defendants are able to perform their essential functions. Also, the current Stay Order is ambiguous as to its application to members of the Senior Executive Service ("SES"). SES employees are governed by different personnel rules, as that category of positions was specifically created by Congress to be a mobile cadre of leaders that can be deployed in roles and locations as needed. *See* OPM, *OPM Senior Executive Service Desk Guide*, https://perma.cc/48XB-PMTS ("[The] CSRA gave greater authority to agencies to manage their executive resources and stated the SES was to be administered to . . . assign executives where they will be most effective in accomplishing the agency's mission and where best use will be made of their talents[.]"). Therefore, the Court's Order should be clarified to exempt SES positions. Finally, an exclusion for life and safety positions within the U.S. Forest Service would eliminate ambiguities within the Stay Order regarding these positions, *see, e.g.*, ECF No. 114 at 6-7, and mitigate risks to wildland fire, avalanche, and law enforcement operations.

Alternatively, Defendants request that the Court provide further clarification on this section by modifying this language. The reference to paragraphs 1-3 creates ambiguities, as paragraphs 1-3 can be read to prevent all reassignments outside the local commuting area, regardless of their relation to the reorganization. Defendants request that, at a minimum, the Court modify its existing Stay Order to clarify this section to explain whether a reassignment must be related to the reorganization, and if so, what types of reassignments would be considered related to the reorganization.

<u>USDA Proposed Clarification</u>:

"Notwithstanding the foregoing, this order does not enjoin the defendants from:

a. ***;

b. reassigning or promoting a covered employee who applies or applied to a job announcement on USAJobs or other internal agency merit-hiring application

processes, is selected for the position, and accepts the position;

c. reassigning a member of the Senior Executive Service; or

d. permitting the United States Forest Service and other USDA Mission Areas and Staff Offices to reassign and/or relocate employees needed to perform life and safety functions including, but not limited to, wildland firefighting, avalanche safety, and law enforcement."

## II. Paragraph 7

Current Text:

"This order does not require the defendants to return employees who were relocated pursuant to the reorganization activities stayed by paragraphs 1 through 3 and began work at their new duty station prior to this Court's first administrative stay order on September 14, 2026, to their original duty station or enjoin the defendants from issuing any associated relocation incentive or payment entitlements to those employees."

USDA Position:

Because USDA's reorganization had already been underway when the Court entered its first administrative stay, some employees had already made decisions regarding the future of their employment. Some may have resigned and found alternate employment. And others had accepted their relocation offers, and in turn, may have sold their houses, or purchased homes or signed leases in the cities where they are being relocated. At their own election, some of these employees proceeded with relocation and started working at their new duty station after September 14, 2026. Because paragraph 7 of the Stay Order only allows employees to stay at their new duty station if they started working before September 14, 2026, the Order is ambiguous as applied to employees who choose to start work at a new duty station after September 14. This ambiguity creates potential confusion for the agency and further disrupts these employees' lives.

Of the approximately 2,000 employees subject to relocation, approximately 450 had already accepted reassignment, and those employees were in various stages of relocation. In the REE Mission Area alone, there are:

- Employees who had already sold their homes, terminated leases, or entered into purchase

agreements for housing near their new duty station.

- Employees whose household goods had already been packed, shipped, or placed in temporary storage as part of the relocation process.
- Employees whose spouses or partners resigned from jobs or made employment decisions based on the approved relocation.
- Employees who had incurred significant out-of-pocket relocation expenses, including travel, temporary lodging, utility deposits, and other moving-related costs. Because the stay was issued before relocation transactions could be finalized, employees were unable to submit or receive reimbursement for certain relocation expenses, including lump-sum relocation vouchers, resulting in financial hardship and uncertainty regarding repayment of costs already incurred.
- Employees who had received relocation authorizations, accepted reassignment offers, and established relocation timelines, but because they had not physically reported for duty by the specified date, their status became unclear.
- Employees who were temporarily housed near the new duty station while awaiting final guidance and were uncertain whether to continue relocation efforts or return to their original duty station.
- Supervisors and program offices faced workforce planning challenges because employees were neither fully assigned to the new location nor clearly returned to the original location, creating uncertainty regarding workspace, reporting relationships, and workload assignments.
- Employees who have already received relocation reimbursements or relocation-related benefits may face tax implications and report uncertainties if their relocations are paused, canceled, or reversed. This creates concerns regarding taxable relocation income, withholding adjustments, amended tax reporting, and potential out-of-pocket financial burdens associated with changes to their relocation status.
- Employees who relocated or were in the process of relocating were unable to update their health insurance coverage to reflect their new locality because their duty station changes could not be finalized. As a result, some employees were unable to access in-network providers or obtain covered medical care in their new location and were forced to either delay treatment or pay out-of-pocket for medical services while their duty station status remained unresolved.

Neither Plaintiffs nor Defendants benefit from subjecting these employees to months or even years of uncertainty while litigation continues, and Defendants want to make sure they are able to ensure that employees who proceeded with relocation to new duty stations are able to receive appropriate reimbursements and employment benefits.

<u>USDA Proposed Clarification</u>:

"This order does not require the defendants to return employees who relocated pursuant to the reorganization activities stayed by paragraphs 1 through 3 and have begun or choose to begin work at their new duty station, or enjoin the defendants from issuing any associated relocation

incentive or payment entitlements to those employees."

**III. Paragraph 6**

Current Text:

"For purposes of this order, 'offices' does not include physical locations that were empty of staff as of the date of the congressional notification letter for the relevant USDA component (which are either in April or June 2026)."

USDA Position:

The Stay Order is ambiguous in that it does not address offices which may have become empty of staff since June 2026. This ambiguity is problematic because it requires Defendants to continue funding the operation of those facilities without any benefit to staff or the public.

USDA Proposed Clarification:

"For purposes of this order, 'offices' does not include physical locations that were empty of staff as of the date of the congressional notification for the relevant USDA component (which are either in April or June 2026) or have become empty of staff as of the date of the Court's clarification Order."

Dated: November 24, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

BRAD P. ROSENBERG
Chief Litigation Counsel

*/s/ Taylor Pitz*
TAYLOR PITZ
CA Bar No. 332080
Trial Attorney
Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 305-5200
Taylor.N.Pitz@usdoj.gov

*Counsel for Defendants*